# STATUTORY AND REGULATORY ADDENDUM TO EPA RESPONSE BRIEF

# TABLE OF CONTENTS

**STATUTES**

5 U.S.C. § 553 ...................................................................ADD01

5 U.S.C. § 706...................................................................ADD02

42 U.S.C. § 7407 ...............................................................ADD04

42 U.S.C. § 7413 ...............................................................ADD09

42 U.S.C. § 7511a ............................................................. ADD15

42 U.S.C. § 7511c ............................................................. ADD26

42 U.S.C. § 7602 ...............................................................ADD28

42 U.S.C. § 7604 ...............................................................ADD31

**REGULATIONS**

40 C.F.R. § 51.1105 ........................................................... ADD34

40 C.F.R. § 81.339 ............................................................. ADD38

N.Y. Comp. R. and Regs. tit. 6, § 227-2.6 .................................... ADD58

out below] shall take effect 180 days after the date of its enactment [Sept. 13, 1976].

"(b) Subsection (g) of section 552b of title 5, United States Code, as added by section 3(a) of this Act, shall take effect upon enactment [Sept. 13, 1976].''

#### SHORT TITLE OF 1976 AMENDMENT

Pub. L. 94–409, § 1, Sept. 13, 1976, 90 Stat. 1241, provided: "That this Act [enacting this section, amending sections 551, 552, 556, and 557 of this title, section 10 of Pub. L. 92–463, set out in the Appendix to this title, and section 410 of Title 39, and enacting provisions set out as notes under this section] may be cited as the 'Government in the Sunshine Act'.''

#### TERMINATION OF REPORTING REQUIREMENTS

For termination, effective May 15, 2000, of provisions of law requiring submittal to Congress of any annual, semiannual, or other regular periodic report listed in House Document No. 103–7 in which the report required by subsec. (j) of this section is listed on page 151), see section 3003 of Pub. L. 104–66, as amended, set out as a note under section 1113 of Title 31, Money and Finance.

#### TERMINATION OF ADMINISTRATIVE CONFERENCE OF UNITED STATES

For termination of Administrative Conference of United States, see provision of title IV of Pub. L. 104–52, set out as a note preceding section 591 of this title.

#### DECLARATION OF POLICY AND STATEMENT OF PURPOSE

Pub. L. 94–409, § 2, Sept. 13, 1976, 90 Stat. 1241 provided that: "It is hereby declared to be the policy of the United States that the public is entitled to the fullest practicable information regarding the decisionmaking processes of the Federal Government. It is the purpose of this Act [see Short Title note set out above] to provide the public with such information while protecting the rights of individuals and the ability of the Government to carry out its responsibilities.''

### § 553. Rule making

(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

(1) a military or foreign affairs function of the United States; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 383.)

#### HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| ................. | 5 U.S.C. 1003. | June 11, 1946, ch. 324, § 4, 60 Stat. 238. |

In subsection (a)(1), the words "or naval" are omitted as included in "military".

In subsection (b), the word "when" is substituted for "in any situation in which".

In subsection (c), the words "for oral presentation" are substituted for "to present the same orally in any manner". The words "sections 556 and 557 of this title apply instead of this subsection" are substituted for "the requirements of sections 1006 and 1007 of this title shall apply in place of the provisions of this subsection".

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

#### CODIFICATION

Section 553 of former Title 5, Executive Departments and Government Officers and Employees, was transferred to section 2245 of Title 7, Agriculture.

#### EXECUTIVE ORDER NO. 12044

Ex. Ord. No. 12044, Mar. 23, 1978, 43 F.R. 12661, as amended by Ex. Ord. No. 12221, June 27, 1980, 45 F.R. 44249, which related to the improvement of Federal regulations, was revoked by Ex. Ord. No. 12291, Feb. 17, 1981, 46 F.R. 13193, formerly set out as a note under section 601 of this title.

### § 554. Adjudications

(a) This section applies, according to the provisions thereof, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, except to the extent that there is involved—

(1) a matter subject to a subsequent trial of the law and the facts de novo in a court;

### § 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392; Pub. L. 94–574, §1, Oct. 21, 1976, 90 Stat. 2721.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(b). | June 11, 1946, ch. 324, §10(b), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report.

AMENDMENTS

1976—Pub. L. 94–574 provided that if no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer as defendant.

### § 704. Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, §10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, §10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

### § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, §10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof,

that: ''This Act [see Tables for classification] shall not be construed to repeal or modify any provision of the Administrative Procedure Act [see Short Title note set out preceding section 551 of this title].''

## CHAPTER 8—CONGRESSIONAL REVIEW OF AGENCY RULEMAKING

Sec.
801.    Congressional review.
802.    Congressional disapproval procedure.
803.    Special rule on statutory, regulatory, and ju-
        dicial deadlines.
804.    Definitions.
805.    Judicial review.
806.    Applicability; severability.
807.    Exemption for monetary policy.
808.    Effective date of certain rules.

## § 801. Congressional review

(a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

(iii) the agency's actions relevant to sections 202, 203, 204, and 205 of the Unfunded Mandates Reform Act of 1995; and

(iv) any other relevant information or requirements under any other Act and any relevant Executive orders.

(C) Upon receipt of a report submitted under subparagraph (A), each House shall provide copies of the report to the chairman and ranking member of each standing committee with jurisdiction under the rules of the House of Representatives or the Senate to report a bill to amend the provision of law under which the rule is issued.

(2)(A) The Comptroller General shall provide a report on each major rule to the committees of jurisdiction in each House of the Congress by the end of 15 calendar days after the submission or publication date as provided in section 802(b)(2). The report of the Comptroller General shall include an assessment of the agency's compliance with procedural steps required by paragraph (1)(B).

(B) Federal agencies shall cooperate with the Comptroller General by providing information relevant to the Comptroller General's report under subparagraph (A).

(3) A major rule relating to a report submitted under paragraph (1) shall take effect on the latest of—

(A) the later of the date occurring 60 days after the date on which—

(i) the Congress receives the report submitted under paragraph (1); or

(ii) the rule is published in the Federal Register, if so published;

(B) if the Congress passes a joint resolution of disapproval described in section 802 relating to the rule, and the President signs a veto of such resolution, the earlier date—

(i) on which either House of Congress votes and fails to override the veto of the President; or

(ii) occurring 30 session days after the date on which the Congress received the veto and objections of the President; or

(C) the date the rule would have otherwise taken effect, if not for this section (unless a joint resolution of disapproval under section 802 is enacted).

(4) Except for a major rule, a rule shall take effect as otherwise provided by law after submission to Congress under paragraph (1).

(5) Notwithstanding paragraph (3), the effective date of a rule shall not be delayed by operation of this chapter beyond the date on which either House of Congress votes to reject a joint resolution of disapproval under section 802.

(b)(1) A rule shall not take effect (or continue), if the Congress enacts a joint resolution of disapproval, described under section 802, of the rule.

(2) A rule that does not take effect (or does not continue) under paragraph (1) may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.

(c)(1) Notwithstanding any other provision of this section (except subject to paragraph (3)), a rule that would not take effect by reason of subsection (a)(3) may take effect, if the President makes a determination under paragraph (2) and submits written notice of such determination to the Congress.

(2) Paragraph (1) applies to a determination made by the President by Executive order that the rule should take effect because such rule is—

(A) necessary because of an imminent threat to health or safety or other emergency;

(B) necessary for the enforcement of criminal laws;

(C) necessary for national security; or

(D) issued pursuant to any statute implementing an international trade agreement.

(3) An exercise by the President of the authority under this subsection shall have no effect on the procedures under section 802 or the effect of a joint resolution of disapproval under this section.

(d)(1) In addition to the opportunity for review otherwise provided under this chapter, in the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A) during the period beginning on the date occurring—

(A) in the case of the Senate, 60 session days, or

(B) in the case of the House of Representatives, 60 legislative days,

before the date the Congress adjourns a session of Congress through the date on which the same

ble of recommending plans for implementation of national primary and secondary ambient air quality standards, for provisions authorizing Federal grants for the purpose of expediting the establishment of air quality standards and provisions requiring the designated State agency to be capable of recommending standards of air quality and plans for implementation thereof, respectively, and struck out subsec. (b) which authorized establishment of air quality planning commissions.

## § 7407. Air quality control regions

### (a) Responsibility of each State for air quality; submission of implementation plan

Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State by submitting an implementation plan for such State which will specify the manner in which national primary and secondary ambient air quality standards will be achieved and maintained within each air quality control region in such State.

### (b) Designated regions

For purposes of developing and carrying out implementation plans under section 7410 of this title—

(1) an air quality control region designated under this section before December 31, 1970, or a region designated after such date under subsection (c), shall be an air quality control region; and

(2) the portion of such State which is not part of any such designated region shall be an air quality control region, but such portion may be subdivided by the State into two or more air quality control regions with the approval of the Administrator.

### (c) Authority of Administrator to designate regions; notification of Governors of affected States

The Administrator shall, within 90 days after December 31, 1970, after consultation with appropriate State and local authorities, designate as an air quality control region any interstate area or major intrastate area which he deems necessary or appropriate for the attainment and maintenance of ambient air quality standards. The Administrator shall immediately notify the Governors of the affected States of any designation made under this subsection.

### (d) Designations

#### (1) Designations generally

##### (A) Submission by Governors of initial designations following promulgation of new or revised standards

By such date as the Administrator may reasonably require, but not later than 1 year after promulgation of a new or revised national ambient air quality standard for any pollutant under section 7409 of this title, the Governor of each State shall (and at any other time the Governor of a State deems appropriate the Governor may) submit to the Administrator a list of all areas (or portions thereof) in the State, designating as—

(i) nonattainment, any area that does not meet (or that contributes to ambient air quality in a nearby area that does not meet) the national primary or secondary ambient air quality standard for the pollutant,

(ii) attainment, any area (other than an area identified in clause (i)) that meets the national primary or secondary ambient air quality standard for the pollutant, or

(iii) unclassifiable, any area that cannot be classified on the basis of available information as meeting or not meeting the national primary or secondary ambient air quality standard for the pollutant.

The Administrator may not require the Governor to submit the required list sooner than 120 days after promulgating a new or revised national ambient air quality standard.

##### (B) Promulgation by EPA of designations

(i) Upon promulgation or revision of a national ambient air quality standard, the Administrator shall promulgate the designations of all areas (or portions thereof) submitted under subparagraph (A) as expeditiously as practicable, but in no case later than 2 years from the date of promulgation of the new or revised national ambient air quality standard. Such period may be extended for up to one year in the event the Administrator has insufficient information to promulgate the designations.

(ii) In making the promulgations required under clause (i), the Administrator may make such modifications as the Administrator deems necessary to the designations of the areas (or portions thereof) submitted under subparagraph (A) (including to the boundaries of such areas or portions thereof). Whenever the Administrator intends to make a modification, the Administrator shall notify the State and provide such State with an opportunity to demonstrate why any proposed modification is inappropriate. The Administrator shall give such notification no later than 120 days before the date the Administrator promulgates the designation, including any modification thereto. If the Governor fails to submit the list in whole or in part, as required under subparagraph (A), the Administrator shall promulgate the designation that the Administrator deems appropriate for any area (or portion thereof) not designated by the State.

(iii) If the Governor of any State, on the Governor's own motion, under subparagraph (A), submits a list of areas (or portions thereof) in the State designated as nonattainment, attainment, or unclassifiable, the Administrator shall act on such designations in accordance with the procedures under paragraph (3) (relating to redesignation).

(iv) A designation for an area (or portion thereof) made pursuant to this subsection shall remain in effect until the area (or portion thereof) is redesignated pursuant to paragraph (3) or (4).

##### (C) Designations by operation of law

(i) Any area designated with respect to any air pollutant under the provisions of paragraph (1)(A), (B), or (C) of this subsection (as in effect immediately before November 15, 1990) is designated, by operation of law, as a nonattainment area for such pollutant within the meaning of subparagraph (A)(i).

(ii) Any area designated with respect to any air pollutant under the provisions of paragraph (1)(E) (as in effect immediately before November 15, 1990) is designated by operation of law, as an attainment area for such pollutant within the meaning of subparagraph (A)(ii).

(iii) Any area designated with respect to any air pollutant under the provisions of paragraph (1)(D) (as in effect immediately before November 15, 1990) is designated, by operation of law, as an unclassifiable area for such pollutant within the meaning of subparagraph (A)(iii).

**(2) Publication of designations and redesignations**

(A) The Administrator shall publish a notice in the Federal Register promulgating any designation under paragraph (1) or (5), or announcing any designation under paragraph (4), or promulgating any redesignation under paragraph (3).

(B) Promulgation or announcement of a designation under paragraph (1), (4) or (5) shall not be subject to the provisions of sections 553 through 557 of title 5 (relating to notice and comment), except nothing herein shall be construed as precluding such public notice and comment whenever possible.

**(3) Redesignation**

(A) Subject to the requirements of subparagraph (E), and on the basis of air quality data, planning and control considerations, or any other air quality-related considerations the Administrator deems appropriate, the Administrator may at any time notify the Governor of any State that available information indicates that the designation of any area or portion of an area within the State or interstate area should be revised. In issuing such notification, which shall be public, to the Governor, the Administrator shall provide such information as the Administrator may have available explaining the basis for the notice.

(B) No later than 120 days after receiving a notification under subparagraph (A), the Governor shall submit to the Administrator such redesignation, if any, of the appropriate area (or areas) or portion thereof within the State or interstate area, as the Governor considers appropriate.

(C) No later than 120 days after the date described in subparagraph (B) (or paragraph (1)(B)(iii)), the Administrator shall promulgate the redesignation, if any, of the area or portion thereof, submitted by the Governor in accordance with subparagraph (B), making such modifications as the Administrator may deem necessary, in the same manner and under the same procedure as is applicable under clause (ii) of paragraph (1)(B), except that the phrase "60 days" shall be substituted for the phrase "120 days" in that clause. If the Governor does not submit, in accordance with subparagraph (B), a redesignation for an area (or portion thereof) identified by the Administrator under subparagraph (A), the Administrator shall promulgate such redesignation, if any, that the Administrator deems appropriate.

(D) The Governor of any State may, on the Governor's own motion, submit to the Administrator a revised designation of any area or portion thereof within the State. Within 18 months of receipt of a complete State redesignation submittal, the Administrator shall approve or deny such redesignation. The submission of a redesignation by a Governor shall not affect the effectiveness or enforceability of the applicable implementation plan for the State.

(E) The Administrator may not promulgate a redesignation of a nonattainment area (or portion thereof) to attainment unless—

(i) the Administrator determines that the area has attained the national ambient air quality standard;

(ii) the Administrator has fully approved the applicable implementation plan for the area under section 7410(k) of this title;

(iii) the Administrator determines that the improvement in air quality is due to permanent and enforceable reductions in emissions resulting from implementation of the applicable implementation plan and applicable Federal air pollutant control regulations and other permanent and enforceable reductions;

(iv) the Administrator has fully approved a maintenance plan for the area as meeting the requirements of section 7505a of this title; and

(v) the State containing such area has met all requirements applicable to the area under section 7410 of this title and part D.

(F) The Administrator shall not promulgate any redesignation of any area (or portion thereof) from nonattainment to unclassifiable.

**(4) Nonattainment designations for ozone, carbon monoxide and particulate matter (PM–10)**

**(A) Ozone and carbon monoxide**

(i) Within 120 days after November 15, 1990, each Governor of each State shall submit to the Administrator a list that designates, affirms or reaffirms the designation of, or redesignates (as the case may be), all areas (or portions thereof) of the Governor's State as attainment, nonattainment, or unclassifiable with respect to the national ambient air quality standards for ozone and carbon monoxide.

(ii) No later than 120 days after the date the Governor is required to submit the list of areas (or portions thereof) required under clause (i) of this subparagraph, the Administrator shall promulgate such designations, making such modifications as the Administrator may deem necessary, in the same manner, and under the same procedure, as is applicable under clause (ii) of paragraph (1)(B), except that the phrase "60 days" shall be substituted for the phrase "120 days" in that clause. If the Governor does not submit, in accordance with clause (i) of this subparagraph, a designation for an area (or portion thereof), the Administrator shall promulgate the designation that the Administrator deems appropriate.

(iii) No nonattainment area may be redesignated as an attainment area under this subparagraph.

(iv) Notwithstanding paragraph (1)(C)(ii) of this subsection, if an ozone or carbon monoxide nonattainment area located within a metropolitan statistical area or consolidated metropolitan statistical area (as established by the Bureau of the Census) is classified under part D of this subchapter as a Serious, Severe, or Extreme Area, the boundaries of such area are hereby revised (on the date 45 days after such classification) by operation of law to include the entire metropolitan statistical area or consolidated metropolitan statistical area, as the case may be, unless within such 45-day period the Governor (in consultation with State and local air pollution control agencies) notifies the Administrator that additional time is necessary to evaluate the application of clause (v). Whenever a Governor has submitted such a notice to the Administrator, such boundary revision shall occur on the later of the date 8 months after such classification or 14 months after November 15, 1990, unless the Governor makes the finding referred to in clause (v), and the Administrator concurs in such finding, within such period. Except as otherwise provided in this paragraph, a boundary revision under this clause or clause (v) shall apply for purposes of any State implementation plan revision required to be submitted after November 15, 1990.

(v) Whenever the Governor of a State has submitted a notice under clause (iv), the Governor, in consultation with State and local air pollution control agencies, shall undertake a study to evaluate whether the entire metropolitan statistical area or consolidated metropolitan statistical area should be included within the nonattainment area. Whenever a Governor finds and demonstrates to the satisfaction of the Administrator, and the Administrator concurs in such finding, that with respect to a portion of a metropolitan statistical area or consolidated metropolitan statistical area, sources in the portion do not contribute significantly to violation of the national ambient air quality standard, the Administrator shall approve the Governor's request to exclude such portion from the nonattainment area. In making such finding, the Governor and the Administrator shall consider factors such as population density, traffic congestion, commercial development, industrial development, meteorological conditions, and pollution transport.

**(B) PM–10 designations**

By operation of law, until redesignation by the Administrator pursuant to paragraph (3)—

(i) each area identified in 52 Federal Register 29383 (Aug. 7, 1987) as a Group I area (except to the extent that such identification was modified by the Administrator before November 15, 1990) is designated nonattainment for PM–10;

(ii) any area containing a site for which air quality monitoring data show a violation of the national ambient air quality standard for PM–10 before January 1, 1989

(as determined under part 50, appendix K of title 40 of the Code of Federal Regulations) is hereby designated nonattainment for PM–10; and

(iii) each area not described in clause (i) or (ii) is hereby designated unclassifiable for PM–10.

Any designation for particulate matter (measured in terms of total suspended particulates) that the Administrator promulgated pursuant to this subsection (as in effect immediately before November 15, 1990) shall remain in effect for purposes of implementing the maximum allowable increases in concentrations of particulate matter (measured in terms of total suspended particulates) pursuant to section 7473(b) of this title, until the Administrator determines that such designation is no longer necessary for that purpose.

**(5) Designations for lead**

The Administrator may, in the Administrator's discretion at any time the Administrator deems appropriate, require a State to designate areas (or portions thereof) with respect to the national ambient air quality standard for lead in effect as of November 15, 1990, in accordance with the procedures under subparagraphs (A) and (B) of paragraph (1), except that in applying subparagraph (B)(i) of paragraph (1) the phrase "2 years from the date of promulgation of the new or revised national ambient air quality standard" shall be replaced by the phrase "1 year from the date the Administrator notifies the State of the requirement to designate areas with respect to the standard for lead".

**(6) Designations**

**(A) Submission**

Notwithstanding any other provision of law, not later than February 15, 2004, the Governor of each State shall submit designations referred to in paragraph (1) for the July 1997 $PM_{2.5}$ national ambient air quality standards for each area within the State, based on air quality monitoring data collected in accordance with any applicable Federal reference methods for the relevant areas.

**(B) Promulgation**

Notwithstanding any other provision of law, not later than December 31, 2004, the Administrator shall, consistent with paragraph (1), promulgate the designations referred to in subparagraph (A) for each area of each State for the July 1997 $PM_{2.5}$ national ambient air quality standards.

**(7) Implementation plan for regional haze**

**(A) In general**

Notwithstanding any other provision of law, not later than 3 years after the date on which the Administrator promulgates the designations referred to in paragraph (6)(B) for a State, the State shall submit, for the entire State, the State implementation plan revisions to meet the requirements promulgated by the Administrator under section

7492(e)(1) of this title (referred to in this paragraph as ''regional haze requirements'').

**(B) No preclusion of other provisions**

Nothing in this paragraph precludes the implementation of the agreements and recommendations stemming from the Grand Canyon Visibility Transport Commission Report dated June 1996, including the submission of State implementation plan revisions by the States of Arizona, California, Colorado, Idaho, Nevada, New Mexico, Oregon, Utah, or Wyoming by December 31, 2003, for implementation of regional haze requirements applicable to those States.

**(e) Redesignation of air quality control regions**

(1) Except as otherwise provided in paragraph (2), the Governor of each State is authorized, with the approval of the Administrator, to redesignate from time to time the air quality control regions within such State for purposes of efficient and effective air quality management. Upon such redesignation, the list under subsection (d) shall be modified accordingly.

(2) In the case of an air quality control region in a State, or part of such region, which the Administrator finds may significantly affect air pollution concentrations in another State, the Governor of the State in which such region, or part of a region, is located may redesignate from time to time the boundaries of so much of such air quality control region as is located within such State only with the approval of the Administrator and with the consent of all Governors of all States which the Administrator determines may be significantly affected.

(3) No compliance date extension granted under section 7413(d)(5)[1] of this title (relating to coal conversion) shall cease to be effective by reason of the regional limitation provided in section 7413(d)(5)[1] of this title if the violation of such limitation is due solely to a redesignation of a region under this subsection.

(July 14, 1955, ch. 360, title I, § 107, as added Pub. L. 91–604, § 4(a), Dec. 31, 1970, 84 Stat. 1678; amended Pub. L. 95–95, title I, § 103, Aug. 7, 1977, 91 Stat. 687; Pub. L. 101–549, title I, § 101(a), Nov. 15, 1990, 104 Stat. 2399; Pub. L. 108–199, div. G, title IV, § 425(a), Jan. 23, 2004, 118 Stat. 417.)

REFERENCES IN TEXT

Section 7413 of this title, referred to in subsec. (e)(3), was amended generally by Pub. L. 101–549, title VII, § 701, Nov. 15, 1990, 104 Stat. 2672, and, as so amended, subsec. (d) of section 7413 no longer relates to final compliance orders.

CODIFICATION

Section was formerly classified to section 1857c–2 of this title.

PRIOR PROVISIONS

A prior section 107 of act July 14, 1955, as added Nov. 21, 1967, Pub. L. 90–148, § 2, 81 Stat. 490, related to air quality control regions and was classified to section 1857c–2 of this title, prior to repeal by Pub. L. 91–604.

Another prior section 107 of act July 14, 1955, as added Dec. 17, 1963, Pub. L. 88–206, § 1, 77 Stat. 399, was renumbered section 111 by Pub. L. 90–148 and is classified to section 7411 of this title.

AMENDMENTS

2004—Subsec. (d)(6), (7). Pub. L. 108–199 added pars. (6) and (7).

1990—Subsec. (d). Pub. L. 101–549 amended subsec. (d) generally, substituting present provisions for provisions which required States to submit lists of regions not in compliance on Aug. 7, 1977, with certain air quality standards to be submitted to the Administrator, and which authorized States to revise and resubmit such lists from time to time.

1977—Subsecs. (d), (e). Pub. L. 95–95 added subsecs. (d) and (e).

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

OZONE AND PARTICULATE MATTER STANDARDS

Pub. L. 108–199, div. G, title IV, § 425(b), Jan. 23, 2004, 118 Stat. 417, provided that: ''Except as provided in paragraphs (6) and (7) of section 107(d) of the Clean Air Act [subsec. (d)(6), (7) of this section] (as added by subsection (a)), subsection 6101, subsections (a) and (b) of section 6102, and section 6103 of the Transportation Equity Act for the 21st Century [Pub. L. 105–178] (42 U.S.C. 7407 note; 112 Stat. 463), as in effect on the day before the date of enactment of this Act [Jan. 23, 2004], shall remain in effect.''

Pub. L. 105–178, title VI, June 9, 1998, 112 Stat. 463, as amended by Pub. L. 109–59, title VI, § 6012(a), Aug. 10, 2005, 119 Stat. 1882, provided that:

''SEC. 6101. FINDINGS AND PURPOSE.

''(a) The Congress finds that—

''(1) there is a lack of air quality monitoring data for fine particle levels, measured as $PM_{2.5}$, in the United States and the States should receive full funding for the monitoring efforts;

''(2) such data would provide a basis for designating areas as attainment or nonattainment for any $PM_{2.5}$ national ambient air quality standards pursuant to the standards promulgated in July 1997;

''(3) the President of the United States directed the Administrator of the Environmental Protection Agency (referred to in this title as the 'Administrator') in a memorandum dated July 16, 1997, to complete the next periodic review of the particulate matter national ambient air quality standards by July 2002 in order to determine 'whether to revise or maintain the standards';

''(4) the Administrator has stated that 3 years of air quality monitoring data for fine particle levels, measured as $PM_{2.5}$ and performed in accordance with any applicable Federal reference methods, is appropriate for designating areas as attainment or nonattainment pursuant to the July 1997 promulgated standards; and

''(5) the Administrator has acknowledged that in drawing boundaries for attainment and nonattainment areas for the July 1997 ozone national air quality standards, Governors would benefit from considering implementation guidance from EPA on drawing area boundaries.

''(b) The purposes of this title are—

''(1) to ensure that 3 years of air quality monitoring data regarding fine particle levels are gathered for use in the determination of area attainment or nonattainment designations respecting any $PM_{2.5}$ national ambient air quality standards;

''(2) to ensure that the Governors have adequate time to consider implementation guidance from EPA on drawing area boundaries prior to submitting area designations respecting the July 1997 ozone national ambient air quality standards;

''(3) to ensure that the schedule for implementation of the July 1997 revisions of the ambient air quality standards for particulate matter and the schedule for

---

[1] See References in Text note below.

the Environmental Protection Agency's visibility regulations related to regional haze are consistent with the timetable for implementation of such particulate matter standards as set forth in the President's Implementation Memorandum dated July 16, 1997.

"SEC. 6102. PARTICULATE MATTER MONITORING PROGRAM.

"(a) Through grants under section 103 of the Clean Air Act [42 U.S.C. 7403] the Administrator of the Environmental Protection Agency shall use appropriated funds no later than fiscal year 2000 to fund 100 percent of the cost of the establishment, purchase, operation and maintenance of a $PM_{2.5}$ monitoring network necessary to implement the national ambient air quality standards for $PM_{2.5}$ under section 109 of the Clean Air Act [42 U.S.C. 7409]. This implementation shall not result in a diversion or reprogramming of funds from other Federal, State or local Clean Air Act activities. Any funds previously diverted or reprogrammed from section 105 Clean Air Act [42 U.S.C. 7405] grants for $PM_{2.5}$ monitors must be restored to State or local air programs in fiscal year 1999.

"(b) EPA and the States, consistent with their respective authorities under the Clean Air Act [42 U.S.C. 7401 et seq.], shall ensure that the national network (designated in subsection (a)) which consists of the $PM_{2.5}$ monitors necessary to implement the national ambient air quality standards is established by December 31, 1999.

"(c)(1) The Governors shall be required to submit designations referred to in section 107(d)(1) of the Clean Air Act [42 U.S.C. 7407(d)(1)] for each area following promulgation of the July 1997 $PM_{2.5}$ national ambient air quality standard within 1 year after receipt of 3 years of air quality monitoring data performed in accordance with any applicable Federal reference methods for the relevant areas. Only data from the monitoring network designated in subsection (a) and other Federal reference method $PM_{2.5}$ monitors shall be considered for such designations. Nothing in the previous sentence shall be construed as affecting the Governor's authority to designate an area initially as nonattainment, and the Administrator's authority to promulgate the designation of an area as nonattainment, under section 107(d)(1) of the Clean Air Act, based on its contribution to ambient air quality in a nearby nonattainment area.

"(2) For any area designated as nonattainment for the July 1997 $PM_{2.5}$ national ambient air quality standard in accordance with the schedule set forth in this section, notwithstanding the time limit prescribed in paragraph (2) of section 169B(e) of the Clean Air Act [42 U.S.C. 7492(e)(2)], the Administrator shall require State implementation plan revisions referred to in such paragraph (2) to be submitted at the same time as State implementation plan revisions referred to in section 172 of the Clean Air Act [42 U.S.C. 7502] implementing the revised national ambient air quality standard for fine particulate matter are required to be submitted. For any area designated as attainment or unclassifiable for such standard, the Administrator shall require the State implementation plan revisions referred to in such paragraph (2) to be submitted 1 year after the area has been so designated. The preceding provisions of this paragraph shall not preclude the implementation of the agreements and recommendations set forth in the Grand Canyon Visibility Transport Commission Report dated June 1996.

"(d) The Administrator shall promulgate the designations referred to in section 107(d)(1) of the Clean Air Act [42 U.S.C. 7407(d)(1)] for each area following promulgation of the July 1997 $PM_{2.5}$ national ambient air quality standard by the earlier of 1 year after the initial designations required under subsection (c)(1) are required to be submitted or December 31, 2005.

"(e) FIELD STUDY.—Not later than 2 years after the date of enactment of the SAFETEA–LU [Aug. 10, 2005], the Administrator shall—

"(1) conduct a field study of the ability of the $PM_{2.5}$ Federal Reference Method to differentiate those particles that are larger than 2.5 micrometers in diameter;

"(2) develop a Federal reference method to measure directly particles that are larger than 2.5 micrometers in diameter without reliance on subtracting from coarse particle measurements those particles that are equal to or smaller than 2.5 micrometers in diameter;

"(3) develop a method of measuring the composition of coarse particles; and

"(4) submit a report on the study and responsibilities of the Administrator under paragraphs (1) through (3) to—

"(A) the Committee on Energy and Commerce of the House of Representatives; and

"(B) the Committee on Environment and Public Works of the Senate.

"SEC. 6103. OZONE DESIGNATION REQUIREMENTS.

"(a) The Governors shall be required to submit the designations referred to in section 107(d)(1) of the Clean Air Act [42 U.S.C. 7407(d)(1)] within 2 years following the promulgation of the July 1997 ozone national ambient air quality standards.

"(b) The Administrator shall promulgate final designations no later than 1 year after the designations required under subsection (a) are required to be submitted.

"SEC. 6104. ADDITIONAL PROVISIONS.

"Nothing in sections 6101 through 6103 shall be construed by the Administrator of Environmental Protection Agency or any court, State, or person to affect any pending litigation or to be a ratification of the ozone or $PM_{2.5}$ standards."

PENDING ACTIONS AND PROCEEDINGS

Suits, actions, and other proceedings lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under act July 14, 1955, the Clean Air Act, as in effect immediately prior to the enactment of Pub. L. 95–95 [Aug. 7, 1977], not to abate by reason of the taking effect of Pub. L. 95–95, see section 406(a) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

§ 7408. Air quality criteria and control techniques

(a) Air pollutant list; publication and revision by Administrator; issuance of air quality criteria for air pollutants

(1) For the purpose of establishing national primary and secondary ambient air quality standards, the Administrator shall within 30 days after December 31, 1970, publish, and shall from time to time thereafter revise, a list which includes each air pollutant—

(A) emissions of which, in his judgment, cause or contribute to air pollution which may

To address any concerns with respect to electric reliability while assuring MATS' public health benefits, I direct you to take the following actions:

1. Building on the information and guidance that you have provided to the public, relevant stakeholders, and permitting authorities in the preamble of the MATS Rule, work with State and local permitting authorities to make the additional year for compliance with the MATS Rule provided under section 112(i)(3)(B) of the Clean Air Act broadly available to sources, consistent with law, and to invoke this flexibility expeditiously where justified.

2. Promote early, coordinated, and orderly planning and execution of the measures needed to implement the MATS Rule while maintaining the reliability of the electric power system. Consistent with Executive Order 13563, this process should be designed to "promote predictability and reduce uncertainty," and should include engagement and coordination with DOE, the Federal Energy Regulatory Commission, State utility regulators, Regional Transmission Organizations, the North American Electric Reliability Corporation and regional electric reliability organizations, other grid planning authorities, electric utilities, and other stakeholders, as appropriate.

3. Make available to the public, including relevant stakeholders, information concerning any anticipated use of authorities: (a) under section 112(i)(3)(B) of the Clean Air Act in the event that additional time to comply with the MATS Rule is necessary for the installation of technology; and (b) under section 113(a) of the Clean Air Act in the event that additional time to comply with the MATS Rule is necessary to address a specific and documented electric reliability issue. This information should describe the process for working with entities with relevant expertise to identify circumstances where electric reliability concerns might justify allowing additional time to comply.

This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

You are hereby authorized and directed to publish this memorandum in the Federal Register.

BARACK OBAMA.

## § 7413. Federal enforcement

### (a) In general

#### (1) Order to comply with SIP

Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit, the Administrator shall notify the person and the State in which the plan applies of such finding. At any time after the expiration of 30 days following the date on which such notice of a violation is issued, the Administrator may, without regard to the period of violation (subject to section 2462 of title 28)—

(A) issue an order requiring such person to comply with the requirements or prohibitions of such plan or permit,

(B) issue an administrative penalty order in accordance with subsection (d), or

(C) bring a civil action in accordance with subsection (b).

#### (2) State failure to enforce SIP or permit program

Whenever, on the basis of information available to the Administrator, the Administrator finds that violations of an applicable implementation plan or an approved permit program under subchapter V are so widespread that such violations appear to result from a failure of the State in which the plan or permit program applies to enforce the plan or permit program effectively, the Administrator shall so notify the State. In the case of a permit program, the notice shall be made in accordance with subchapter V. If the Administrator finds such failure extends beyond the 30th day after such notice (90 days in the case of such permit program), the Administrator shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such plan or permit program (hereafter referred to in this section as "period of federally assumed enforcement"), the Administrator may enforce any requirement or prohibition of such plan or permit program with respect to any person by—

(A) issuing an order requiring such person to comply with such requirement or prohibition,

(B) issuing an administrative penalty order in accordance with subsection (d), or

(C) bringing a civil action in accordance with subsection (b).

#### (3) EPA enforcement of other requirements

Except for a requirement or prohibition enforceable under the preceding provisions of this subsection, whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of this subchapter, section 7603 of this title, subchapter IV–A, subchapter V, or subchapter VI, including, but not limited to, a requirement or prohibition of any rule, plan, order, waiver, or permit promulgated, issued, or approved under those provisions or subchapters, or for the payment of any fee owed to the United States under this chapter (other than subchapter II), the Administrator may—

(A) issue an administrative penalty order in accordance with subsection (d),

(B) issue an order requiring such person to comply with such requirement or prohibition,

(C) bring a civil action in accordance with subsection (b) or section 7605 of this title, or

(D) request the Attorney General to commence a criminal action in accordance with subsection (c).

#### (4) Requirements for orders

An order issued under this subsection (other than an order relating to a violation of section 7412 of this title) shall not take effect until the person to whom it is issued has had an opportunity to confer with the Administrator concerning the alleged violation. A copy of any order issued under this subsection shall be sent to the State air pollution control agency of any State in which the violation occurs. Any order issued under this subsection shall state with reasonable specificity the nature of the violation and specify a time for compli-

ance which the Administrator determines is reasonable, taking into account the seriousness of the violation and good faith efforts to comply with applicable requirements. In any case in which an order under this subsection (or notice to a violator under paragraph (1)) is issued to a corporation, a copy of such order (or notice) shall be issued to appropriate corporate officers. An order issued under this subsection shall require the person to whom it was issued to comply with the requirement as expeditiously as practicable, but in no event longer than one year after the date the order was issued, and shall be nonrenewable. No order issued under this subsection shall prevent the State or the Administrator from assessing any penalties nor otherwise affect or limit the State's or the United States authority to enforce under other provisions of this chapter, nor affect any person's obligations to comply with any section of this chapter or with a term or condition of any permit or applicable implementation plan promulgated or approved under this chapter.

**(5) Failure to comply with new source requirements**

Whenever, on the basis of any available information, the Administrator finds that a State is not acting in compliance with any requirement or prohibition of the chapter relating to the construction of new sources or the modification of existing sources, the Administrator may—

(A) issue an order prohibiting the construction or modification of any major stationary source in any area to which such requirement applies;[1]

(B) issue an administrative penalty order in accordance with subsection (d), or

(C) bring a civil action under subsection (b).

Nothing in this subsection shall preclude the United States from commencing a criminal action under subsection (c) at any time for any such violation.

**(b) Civil judicial enforcement**

The Administrator shall, as appropriate, in the case of any person that is the owner or operator of an affected source, a major emitting facility, or a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day for each violation, or both, in any of the following instances:

(1) Whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit. Such an action shall be commenced (A) during any period of federally assumed enforcement, or (B) more than 30 days following the date of the Administrator's notification under subsection (a)(1) that such person has violated, or is in violation of, such requirement or prohibition.

(2) Whenever such person has violated, or is in violation of, any other requirement or pro-

hibition of this subchapter, section 7603 of this title, subchapter IV–A, subchapter V, or subchapter VI, including, but not limited to, a requirement or prohibition of any rule, order, waiver or permit promulgated, issued, or approved under this chapter, or for the payment of any fee owed the United States under this chapter (other than subchapter II).

(3) Whenever such person attempts to construct or modify a major stationary source in any area with respect to which a finding under subsection (a)(5) has been made.

Any action under this subsection may be brought in the district court of the United States for the district in which the violation is alleged to have occurred, or is occurring, or in which the defendant resides, or where the defendant's principal place of business is located, and such court shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty, to collect any fees owed the United States under this chapter (other than subchapter II) and any noncompliance assessment and nonpayment penalty owed under section 7420 of this title, and to award any other appropriate relief. Notice of the commencement of such action shall be given to the appropriate State air pollution control agency. In the case of any action brought by the Administrator under this subsection, the court may award costs of litigation (including reasonable attorney and expert witness fees) to the party or parties against whom such action was brought if the court finds that such action was unreasonable.

**(c) Criminal penalties**

(1) Any person who knowingly violates any requirement or prohibition of an applicable implementation plan (during any period of federally assumed enforcement or more than 30 days after having been notified under subsection (a)(1) by the Administrator that such person is violating such requirement or prohibition), any order under subsection (a) of this section, requirement or prohibition of section 7411(e) of this title (relating to new source performance standards), section 7412 of this title, section 7414 of this title (relating to inspections, etc.), section 7429 of this title (relating to solid waste combustion), section 7475(a) of this title (relating to preconstruction requirements), an order under section 7477 of this title (relating to preconstruction requirements), an order under section 7603 of this title (relating to emergency orders), section 7661a(a) or 7661b(c) of this title (relating to permits), or any requirement or prohibition of subchapter IV–A (relating to acid deposition control), or subchapter VI (relating to stratospheric ozone control), including a requirement of any rule, order, waiver, or permit promulgated or approved under such sections or subchapters, and including any requirement for the payment of any fee owed the United States under this chapter (other than subchapter II) shall, upon conviction, be punished by a fine pursuant to title 18 or by imprisonment for not to exceed 5 years, or both. If a conviction of any person under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punish-

---

[1] So in original. The semicolon probably should be a comma.

ment shall be doubled with respect to both the fine and imprisonment.

(2) Any person who knowingly—

(A) makes any false material statement, representation, or certification in, or omits material information from, or knowingly alters, conceals, or fails to file or maintain any notice, application, record, report, plan, or other document required pursuant to this chapter to be either filed or maintained (whether with respect to the requirements imposed by the Administrator or by a State);

(B) fails to notify or report as required under this chapter; or

(C) falsifies, tampers with, renders inaccurate, or fails to install any monitoring device or method required to be maintained or followed under this chapter[2]

shall, upon conviction, be punished by a fine pursuant to title 18 or by imprisonment for not more than 2 years, or both. If a conviction of any person under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both the fine and imprisonment.

(3) Any person who knowingly fails to pay any fee owed the United States under this subchapter, subchapter III, IV–A, V, or VI shall, upon conviction, be punished by a fine pursuant to title 18 or by imprisonment for not more than 1 year, or both. If a conviction of any person under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both the fine and imprisonment.

(4) Any person who negligently releases into the ambient air any hazardous air pollutant listed pursuant to section 7412 of this title or any extremely hazardous substance listed pursuant to section 11002(a)(2) of this title that is not listed in section 7412 of this title, and who at the time negligently places another person in imminent danger of death or serious bodily injury shall, upon conviction, be punished by a fine under title 18 or by imprisonment for not more than 1 year, or both. If a conviction of any person under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both the fine and imprisonment.

(5)(A) Any person who knowingly releases into the ambient air any hazardous air pollutant listed pursuant to section 7412 of this title or any extremely hazardous substance listed pursuant to section 11002(a)(2) of this title that is not listed in section 7412 of this title, and who knows at the time that he thereby places another person in imminent danger of death or serious bodily injury shall, upon conviction, be punished by a fine under title 18 or by imprisonment of not more than 15 years, or both. Any person committing such violation which is an organization shall, upon conviction under this paragraph, be subject to a fine of not more than $1,000,000 for each violation. If a conviction of any person

under this paragraph is for a violation committed after a first conviction of such person under this paragraph, the maximum punishment shall be doubled with respect to both the fine and imprisonment. For any air pollutant for which the Administrator has set an emissions standard or for any source for which a permit has been issued under subchapter V, a release of such pollutant in accordance with that standard or permit shall not constitute a violation of this paragraph or paragraph (4).

(B) In determining whether a defendant who is an individual knew that the violation placed another person in imminent danger of death or serious bodily injury—

(i) the defendant is responsible only for actual awareness or actual belief possessed; and

(ii) knowledge possessed by a person other than the defendant, but not by the defendant, may not be attributed to the defendant;

except that in proving a defendant's possession of actual knowledge, circumstantial evidence may be used, including evidence that the defendant took affirmative steps to be shielded from relevant information.

(C) It is an affirmative defense to a prosecution that the conduct charged was freely consented to by the person endangered and that the danger and conduct charged were reasonably foreseeable hazards of—

(i) an occupation, a business, or a profession; or

(ii) medical treatment or medical or scientific experimentation conducted by professionally approved methods and such other person had been made aware of the risks involved prior to giving consent.

The defendant may establish an affirmative defense under this subparagraph by a preponderance of the evidence.

(D) All general defenses, affirmative defenses, and bars to prosecution that may apply with respect to other Federal criminal offenses may apply under subparagraph (A) of this paragraph and shall be determined by the courts of the United States according to the principles of common law as they may be interpreted in the light of reason and experience. Concepts of justification and excuse applicable under this section may be developed in the light of reason and experience.

(E) The term "organization" means a legal entity, other than a government, established or organized for any purpose, and such term includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, trust, society, union, or any other association of persons.

(F) The term "serious bodily injury" means bodily injury which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

(6) For the purpose of this subsection, the term "person" includes, in addition to the entities referred to in section 7602(e) of this title, any responsible corporate officer.

**(d) Administrative assessment of civil penalties**

(1) The Administrator may issue an administrative order against any person assessing a

---

[2] So in original. Probably should be followed by a comma.

civil administrative penalty of up to $25,000, per day of violation, whenever, on the basis of any available information, the Administrator finds that such person—

(A) has violated or is violating any requirement or prohibition of an applicable implementation plan (such order shall be issued (i) during any period of federally assumed enforcement, or (ii) more than thirty days following the date of the Administrator's notification under subsection (a)(1) of this section of a finding that such person has violated or is violating such requirement or prohibition); or

(B) has violated or is violating any other requirement or prohibition of this subchapter or subchapter III, IV–A, V, or VI, including, but not limited to, a requirement or prohibition of any rule, order, waiver, permit, or plan promulgated, issued, or approved under this chapter, or for the payment of any fee owed the United States under this chapter (other than subchapter II); or

(C) attempts to construct or modify a major stationary source in any area with respect to which a finding under subsection (a)(5) of this section has been made.

The Administrator's authority under this paragraph shall be limited to matters where the total penalty sought does not exceed $200,000 and the first alleged date of violation occurred no more than 12 months prior to the initiation of the administrative action, except where the Administrator and the Attorney General jointly determine that a matter involving a larger penalty amount or longer period of violation is appropriate for administrative penalty action. Any such determination by the Administrator and the Attorney General shall not be subject to judicial review.

(2)(A) An administrative penalty assessed under paragraph (1) shall be assessed by the Administrator by an order made after opportunity for a hearing on the record in accordance with sections 554 and 556 of title 5. The Administrator shall issue reasonable rules for discovery and other procedures for hearings under this paragraph. Before issuing such an order, the Administrator shall give written notice to the person to be assessed an administrative penalty of the Administrator's proposal to issue such order and provide such person an opportunity to request such a hearing on the order, within 30 days of the date the notice is received by such person.

(B) The Administrator may compromise, modify, or remit, with or without conditions, any administrative penalty which may be imposed under this subsection.

(3) The Administrator may implement, after consultation with the Attorney General and the States, a field citation program through regulations establishing appropriate minor violations for which field citations assessing civil penalties not to exceed $5,000 per day of violation may be issued by officers or employees designated by the Administrator. Any person to whom a field citation is assessed may, within a reasonable time as prescribed by the Administrator through regulation, elect to pay the penalty assessment or to request a hearing on the field citation. If a request for a hearing is not made within the time specified in the regulation, the penalty assessment in the field citation shall be final. Such hearing shall not be subject to section 554 or 556 of title 5, but shall provide a reasonable opportunity to be heard and to present evidence. Payment of a civil penalty required by a field citation shall not be a defense to further enforcement by the United States or a State to correct a violation, or to assess the statutory maximum penalty pursuant to other authorities in the chapter, if the violation continues.

(4) Any person against whom a civil penalty is assessed under paragraph (3) of this subsection or to whom an administrative penalty order is issued under paragraph (1) of this subsection may seek review of such assessment in the United States District Court for the District of Columbia or for the district in which the violation is alleged to have occurred, in which such person resides, or where such person's principal place of business is located, by filing in such court within 30 days following the date the administrative penalty order becomes final under paragraph (2), the assessment becomes final under paragraph (3), or a final decision following a hearing under paragraph (3) is rendered, and by simultaneously sending a copy of the filing by certified mail to the Administrator and the Attorney General. Within 30 days thereafter, the Administrator shall file in such court a certified copy, or certified index, as appropriate, of the record on which the administrative penalty order or assessment was issued. Such court shall not set aside or remand such order or assessment unless there is not substantial evidence in the record, taken as a whole, to support the finding of a violation or unless the order or penalty assessment constitutes an abuse of discretion. Such order or penalty assessment shall not be subject to review by any court except as provided in this paragraph. In any such proceedings, the United States may seek to recover civil penalties ordered or assessed under this section.

(5) If any person fails to pay an assessment of a civil penalty or fails to comply with an administrative penalty order—

(A) after the order or assessment has become final, or

(B) after a court in an action brought under paragraph (4) has entered a final judgment in favor of the Administrator,

the Administrator shall request the Attorney General to bring a civil action in an appropriate district court to enforce the order or to recover the amount ordered or assessed (plus interest at rates established pursuant to section 6621(a)(2) of title 26 from the date of the final order or decision or the date of the final judgment, as the case may be). In such action, the validity, amount, and appropriateness of such order or assessment shall not be subject to review. Any person who fails to pay on a timely basis a civil penalty ordered or assessed under this section shall be required to pay, in addition to such penalty and interest, the United States enforcement expenses, including but not limited to attorneys fees and costs incurred by the United States for collection proceedings and a quarterly nonpayment penalty for each quarter during which such failure to pay persists. Such nonpayment penalty shall be 10 percent of the ag-

gregate amount of such person's outstanding penalties and nonpayment penalties accrued as of the beginning of such quarter.

**(e) Penalty assessment criteria**

(1) In determining the amount of any penalty to be assessed under this section or section 7604(a) of this title, the Administrator or the court, as appropriate, shall take into consideration (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence (including evidence other than the applicable test method), payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation. The court shall not assess penalties for noncompliance with administrative subpoenas under section 7607(a) of this title, or actions under section 7414 of this title, where the violator had sufficient cause to violate or fail or refuse to comply with such subpoena or action.

(2) A penalty may be assessed for each day of violation. For purposes of determining the number of days of violation for which a penalty may be assessed under subsection (b) or (d)(1) of this section, or section 7604(a) of this title, or an assessment may be made under section 7420 of this title, where the Administrator or an air pollution control agency has notified the source of the violation, and the plaintiff makes a prima facie showing that the conduct or events giving rise to the violation are likely to have continued or recurred past the date of notice, the days of violation shall be presumed to include the date of such notice and each and every day thereafter until the violator establishes that continuous compliance has been achieved, except to the extent that the violator can prove by a preponderance of the evidence that there were intervening days during which no violation occurred or that the violation was not continuing in nature.

**(f) Awards**

The Administrator may pay an award, not to exceed $10,000, to any person who furnishes information or services which lead to a criminal conviction or a judicial or administrative civil penalty for any violation of this subchapter or subchapter III, IV–A, V, or VI of this chapter enforced under this section. Such payment is subject to available appropriations for such purposes as provided in annual appropriation Acts. Any officer,[3] or employee of the United States or any State or local government who furnishes information or renders service in the performance of an official duty is ineligible for payment under this subsection. The Administrator may, by regulation, prescribe additional criteria for eligibility for such an award.

**(g) Settlements; public participation**

At least 30 days before a consent order or settlement agreement of any kind under this chapter to which the United States is a party (other than enforcement actions under this section, section 7420 of this title, or subchapter II, whether or not involving civil or criminal penalties, or judgments subject to Department of Justice policy on public participation) is final or filed with a court, the Administrator shall provide a reasonable opportunity by notice in the Federal Register to persons who are not named as parties or intervenors to the action or matter to comment in writing. The Administrator or the Attorney General, as appropriate, shall promptly consider any such written comments and may withdraw or withhold his consent to the proposed order or agreement if the comments disclose facts or considerations which indicate that such consent is inappropriate, improper, inadequate, or inconsistent with the requirements of this chapter. Nothing in this subsection shall apply to civil or criminal penalties under this chapter.

**(h) Operator**

For purposes of the provisions of this section and section 7420 of this title, the term "operator", as used in such provisions, shall include any person who is senior management personnel or a corporate officer. Except in the case of knowing and willful violations, such term shall not include any person who is a stationary engineer or technician responsible for the operation, maintenance, repair, or monitoring of equipment and facilities and who often has supervisory and training duties but who is not senior management personnel or a corporate officer. Except in the case of knowing and willful violations, for purposes of subsection (c)(4) of this section, the term "a person" shall not include an employee who is carrying out his normal activities and who is not a part of senior management personnel or a corporate officer. Except in the case of knowing and willful violations, for purposes of paragraphs (1), (2), (3), and (5) of subsection (c) of this section the term "a person" shall not include an employee who is carrying out his normal activities and who is acting under orders from the employer.

(July 14, 1955, ch. 360, title I, §113, as added Pub. L. 91–604, §4(a), Dec. 31, 1970, 84 Stat. 1686; amended Pub. L. 92–157, title III, §302(b), (c), Nov. 18, 1971, 85 Stat. 464; Pub. L. 93–319, §6(a)(1)–(3), June 22, 1974, 88 Stat. 259; Pub. L. 95–95, title I, §§111, 112(a), Aug. 7, 1977, 91 Stat. 704, 705; Pub. L. 95–190, §14(a)(10)–(21), (b)(1), Nov. 16, 1977, 91 Stat. 1400, 1404; Pub. L. 97–23, §2, July 17, 1981, 95 Stat. 139; Pub. L. 101–549, title VII, §701, Nov. 15, 1990, 104 Stat. 2672.)

CODIFICATION

Section was formerly classified to section 1857c–8 of this title.

AMENDMENTS

1990—Pub. L. 101–549 amended section generally, substituting present provisions for provisions which related to: in subsec. (a), finding of violation, notice, compliance order, civil action, State failure to enforce plan, and construction or modification of major stationary sources; in subsec. (b), violations by owners or operators of major stationary sources; in subsec. (c), penalties; in subsec. (d), final compliance orders; and in subsec. (e), steel industry compliance extension.

1981—Subsec. (e). Pub. L. 97–23 added subsec. (e).

---

[3] So in original. The comma probably should not appear.

1977—Subsec. (a)(5). Pub. L. 95–95, §111(a), added par. (5).

Subsec. (b). Pub. L. 95–95, §111(b), (c), substituted "shall, in the case of any person which is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day of violation, or both, whenever such person" for "may commence a civil action for appropriate relief, including a permanent or temporary injunction, whenever any person" in provisions preceding par. (1), inserted references to subsec. (d)(5) of this section, sections 7419 and 7620 of this title, and regulations under part in par. (3), inserted reference to subsec. (d) of this section in par. (4), added par. (5), and, in provisions following par. (5), authorized the commencement of civil actions to recover noncompliance penalties and nonpayment penalties under section 7420 of this title, expanded jurisdictional provisions to authorize actions in districts in which the violation occurred and to authorize the district court to restrain violations, to require compliance, to assess civil penalties, and to collect penalties under section 7420 of this title, enumerated factors to be taken into consideration in determining the amount of civil penalties, and authorized awarding of costs to the party or parties against whom the action was brought in cases where the court finds that the action was unreasonable.

Subsec. (b)(3). Pub. L. 95–190, §14(a)(10), (11), inserted "or" after "ozone;", and substituted "7624" for "7620", "conversion, section" for "conversion section", and "orders, or" for "orders) or".

Subsec. (c)(1). Pub. L. 95–95, §111(d)(1), (2), substituted "any order issued under section 7419 of this title or under subsection (a) or (d) of this section" for "any order issued by the Administrator under subsection (a)" in subpar. (B), struck out reference to section 119(g) (as in effect before the date of the enactment of Pub. L. 95–95) in subpar. (C), and added subpar. (D).

Subsec. (c)(1)(B). Pub. L. 95–190, §14(a)(12), inserted "or" after "section,".

Subsec. (c)(1)(D). Pub. L. 95–190, §14(a)(13), substituted "1977 subsection" for "1977) subsection" and "penalties), or" for "penalties) or".

Subsec. (c)(3). Pub. L. 95–95, §111(d)(3), added par. (3).

Subsec. (d). Pub. L. 95–95, §112(a), added subsec. (d).

Subsec. (d)(1). Pub. L. 95–190, §14(a)(14), substituted "to any stationary source which is unable to comply with any requirement of an applicable implementation plan an order" for "an order for any stationary source" and "such requirement" for "any requirement of an applicable implementation plan".

Subsec. (d)(1)(E). Pub. L. 95–190, §14(a)(15), inserted provision relating to exemption under section 7420(a)(2)(B) or (C) of this title, provision relating to noncompliance penalties effective July 1, 1979, and reference to subsec. (b)(3) or (g) of section 7420 of this title.

Subsec. (d)(2). Pub. L. 95–190, §14(a)(16), inserted provisions relating to determinations by the Administrator of compliance with requirements of this chapter of State orders issued under this subsection.

Subsec. (d)(4)(A). Pub. L. 95–190, §14(a)(17), substituted "title upon" for "title upon".

Subsec. (d)(5)(A). Pub. L. 95–190, §14(a)(18), substituted "an additional period for" for "an additional period of".

Subsec. (d)(8). Pub. L. 95–190, §14(a)(19), struck out reference to par. (3) of this subsection.

Subsec. (d)(10). Pub. L. 95–190, §14(a)(20), substituted "in effect" for "issued", "Federal" for "other", and "and no action under" for "or".

Subsec. (d)(11). Pub. L. 95–190, §14(a)(21), substituted "and in effect" for "(and approved by the Administrator)".

1974—Subsec. (a)(3). Pub. L. 93–319, §6(a)(1), inserted reference to section 1857c–10(g) of this title (relating to energy-related authorities).

Subsecs. (b)(3), (c)(1)(C). Pub. L. 93–319, §6(a)(2), (3), inserted reference to section 1857c–10(g) of this title.

1971—Subsec. (b)(2). Pub. L. 92–157, §302(b), inserted "(A)" before "during" and ", or (B)" after "assumed enforcement".

Subsec. (c)(1)(A). Pub. L. 92–157, §302(c), inserted "(i)" before "during" and ", or (ii)" after "assumed enforcement".

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

PENDING ACTIONS AND PROCEEDINGS

Suits, actions, and other proceedings lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under act July 14, 1955, the Clean Air Act, as in effect immediately prior to the enactment of Pub. L. 95–95 [Aug. 7, 1977], not to abate by reason of the taking effect of Pub. L. 95–95, see section 406(a) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

TRANSFER OF FUNCTIONS

Federal Power Commission terminated and its functions, personnel, property, funds, etc., transferred to Secretary of Energy (except for certain functions transferred to Federal Energy Regulatory Commission) by sections 7151(b), 7171(a), 7172(a), 7291, and 7293 of this title.

## § 7414. Recordkeeping, inspections, monitoring, and entry

### (a) Authority of Administrator or authorized representative

For the purpose (i) of developing or assisting in the development of any implementation plan under section 7410 or section 7411(d) of this title, any standard of performance under section 7411 of this title, any emission standard under section 7412 of this title,[1] or any regulation of solid waste combustion under section 7429 of this title, or any regulation under section 7429 of this title (relating to solid waste combustion), (ii) of determining whether any person is in violation of any such standard or any requirement of such a plan, or (iii) carrying out any provision of this chapter (except a provision of subchapter II with respect to a manufacturer of new motor vehicles or new motor vehicle engines)—

(1) the Administrator may require any person who owns or operates any emission source, who manufactures emission control equipment or process equipment, who the Administrator believes may have information necessary for

---

[1] So in original.



ent air quality standard, a design value or other indicator comparable to 0.140 in terms of its relationship to the standard shall be used in lieu of 0.140 for purposes of applying the provisions of subparagraphs (B) and (C).

**(c) References to terms**

(1) Any reference in this subpart to a "Marginal Area", a "Moderate Area", a "Serious Area", a "Severe Area", or an "Extreme Area" shall be considered a reference to a Marginal Area, a Moderate Area, a Serious Area, a Severe Area, or an Extreme Area as respectively classified under this section.

(2) Any reference in this subpart to "next higher classification" or comparable terms shall be considered a reference to the classification related to the next higher set of design values in table 1.

(July 14, 1955, ch. 360, title I, § 181, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2423.)

EXEMPTIONS FOR STRIPPER WELLS

Pub. L. 101–549, title VIII, § 819, Nov. 15, 1990, 104 Stat. 2698, provided that: "Notwithstanding any other provision of law, the amendments to the Clean Air Act made by section 103 of the Clean Air Act Amendments of 1990 [enacting this section and sections 7511a to 7511f of this title] (relating to additional provisions for ozone nonattainment areas), by section 104 of such amendments [enacting sections 7512 and 7512a of this title] (relating to additional provisions for carbon monoxide nonattainment areas), by section 105 of such amendments [enacting sections 7513 to 7513b of this title and amending section 7476 of this title] (relating to additional provisions for PM–10 nonattainment areas), and by section 106 of such amendments [enacting sections 7514 and 7514a of this title] (relating to additional provisions for areas designated as nonattainment for sulfur oxides, nitrogen dioxide, and lead) shall not apply with respect to the production of and equipment used in the exploration, production, development, storage or processing of—

"(1) oil from a stripper well property, within the meaning of the June 1979 energy regulations (within the meaning of section 4996(b)(7) of the Internal Revenue Code of 1986 [26 U.S.C. 4996(b)(7)], as in effect before the repeal of such section); and

"(2) stripper well natural gas, as defined in section 108(b) of the Natural Gas Policy Act of 1978 (15 U.S.C. 3318(b)).[,]

except to the extent that provisions of such amendments cover areas designated as Serious pursuant to part D of title I of the Clean Air Act [this part] and having a population of 350,000 or more, or areas designated as Severe or Extreme pursuant to such part D."

## § 7511a. Plan submissions and requirements

**(a) Marginal Areas**

Each State in which all or part of a Marginal Area is located shall, with respect to the Marginal Area (or portion thereof, to the extent specified in this subsection), submit to the Administrator the State implementation plan revisions (including the plan items) described under this subsection except to the extent the State has made such submissions as of November 15, 1990.

**(1) Inventory**

Within 2 years after November 15, 1990, the State shall submit a comprehensive, accurate, current inventory of actual emissions from all sources, as described in section 7502(c)(3) of this title, in accordance with guidance provided by the Administrator.

**(2) Corrections to the State implementation plan**

Within the periods prescribed in this paragraph, the State shall submit a revision to the State implementation plan that meets the following requirements—

**(A) Reasonably available control technology corrections**

For any Marginal Area (or, within the Administrator's discretion, portion thereof) the State shall submit, within 6 months of the date of classification under section 7511(a) of this title, a revision that includes such provisions to correct requirements in (or add requirements to) the plan concerning reasonably available control technology as were required under section 7502(b) of this title (as in effect immediately before November 15, 1990), as interpreted in guidance issued by the Administrator under section 7408 of this title before November 15, 1990.

**(B) Savings clause for vehicle inspection and maintenance**

(i) For any Marginal Area (or, within the Administrator's discretion, portion thereof), the plan for which already includes, or was required by section 7502(b)(11)(B) of this title (as in effect immediately before November 15, 1990) to have included, a specific schedule for implementation of a vehicle emission control inspection and maintenance program, the State shall submit, immediately after November 15, 1990, a revision that includes any provisions necessary to provide for a vehicle inspection and maintenance program of no less stringency than that of either the program defined in House Report Numbered 95–294, 95th Congress, 1st Session, 281–291 (1977) as interpreted in guidance of the Administrator issued pursuant to section 7502(b)(11)(B) of this title (as in effect immediately before November 15, 1990) or the program already included in the plan, whichever is more stringent.

(ii) Within 12 months after November 15, 1990, the Administrator shall review, revise, update, and republish in the Federal Register the guidance for the States for motor vehicle inspection and maintenance programs required by this chapter, taking into consideration the Administrator's investigations and audits of such program. The guidance shall, at a minimum, cover the frequency of inspections, the types of vehicles to be inspected (which shall include leased vehicles that are registered in the nonattainment area), vehicle maintenance by owners and operators, audits by the State, the test method and measures, including whether centralized or decentralized, inspection methods and procedures, quality of inspection, components covered, assurance that a vehicle subject to a recall notice from a manufacturer has complied with that notice, and effective implementation and enforcement, including ensuring that any re-

testing of a vehicle after a failure shall include proof of corrective action and providing for denial of vehicle registration in the case of tampering or misfueling. The guidance which shall be incorporated in the applicable State implementation plans by the States shall provide the States with continued reasonable flexibility to fashion effective, reasonable, and fair programs for the affected consumer. No later than 2 years after the Administrator promulgates regulations under section 7521(m)(3) of this title (relating to emission control diagnostics), the State shall submit a revision to such program to meet any requirements that the Administrator may prescribe under that section.

**(C) Permit programs**

Within 2 years after November 15, 1990, the State shall submit a revision that includes each of the following:

(i) Provisions to require permits, in accordance with sections 7502(c)(5) and 7503 of this title, for the construction and operation of each new or modified major stationary source (with respect to ozone) to be located in the area.

(ii) Provisions to correct requirements in (or add requirements to) the plan concerning permit programs as were required under section 7502(b)(6) of this title (as in effect immediately before November 15, 1990), as interpreted in regulations of the Administrator promulgated as of November 15, 1990.

**(3) Periodic inventory**

**(A) General requirement**

No later than the end of each 3-year period after submission of the inventory under paragraph (1) until the area is redesignated to attainment, the State shall submit a revised inventory meeting the requirements of subsection (a)(1).

**(B) Emissions statements**

(i) Within 2 years after November 15, 1990, the State shall submit a revision to the State implementation plan to require that the owner or operator of each stationary source of oxides of nitrogen or volatile organic compounds provide the State with a statement, in such form as the Administrator may prescribe (or accept an equivalent alternative developed by the State), for classes or categories of sources, showing the actual emissions of oxides of nitrogen and volatile organic compounds from that source. The first such statement shall be submitted within 3 years after November 15, 1990. Subsequent statements shall be submitted at least every year thereafter. The statement shall contain a certification that the information contained in the statement is accurate to the best knowledge of the individual certifying the statement.

(ii) The State may waive the application of clause (i) to any class or category of stationary sources which emit less than 25 tons per year of volatile organic compounds or oxides of nitrogen if the State, in its submissions

under subparagraphs[1] (1) or (3)(A), provides an inventory of emissions from such class or category of sources, based on the use of the emission factors established by the Administrator or other methods acceptable to the Administrator.

**(4) General offset requirement**

For purposes of satisfying the emission offset requirements of this part, the ratio of total emission reductions of volatile organic compounds to total increased emissions of such air pollutant shall be at least 1.1 to 1.

The Administrator may, in the Administrator's discretion, require States to submit a schedule for submitting any of the revisions or other items required under this subsection. The requirements of this subsection shall apply in lieu of any requirement that the State submit a demonstration that the applicable implementation plan provides for attainment of the ozone standard by the applicable attainment date in any Marginal Area. Section 7502(c)(9) of this title (relating to contingency measures) shall not apply to Marginal Areas.

**(b) Moderate Areas**

Each State in which all or part of a Moderate Area is located shall, with respect to the Moderate Area, make the submissions described under subsection (a) of this section (relating to Marginal Areas), and shall also submit the revisions to the applicable implementation plan described under this subsection.

**(1) Plan provisions for reasonable further progress**

**(A) General rule**

(i) By no later than 3 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to provide for volatile organic compound emission reductions, within 6 years after November 15, 1990, of at least 15 percent from baseline emissions, accounting for any growth in emissions after 1990. Such plan shall provide for such specific annual reductions in emissions of volatile organic compounds and oxides of nitrogen as necessary to attain the national primary ambient air quality standard for ozone by the attainment date applicable under this chapter. This subparagraph shall not apply in the case of oxides of nitrogen for those areas for which the Administrator determines (when the Administrator approves the plan or plan revision) that additional reductions of oxides of nitrogen would not contribute to attainment.

(ii) A percentage less than 15 percent may be used for purposes of clause (i) in the case of any State which demonstrates to the satisfaction of the Administrator that—

(I) new source review provisions are applicable in the nonattainment areas in the same manner and to the same extent as required under subsection (e) in the case of Extreme Areas (with the exception that, in applying such provisions, the terms "major source" and "major stationary

[1] So in original. Probably should be "subparagraph".

source'' shall include (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 5 tons per year of volatile organic compounds);

(II) reasonably available control technology is required for all existing major sources (as defined in subclause (I)); and

(III) the plan reflecting a lesser percentage than 15 percent includes all measures that can feasibly be implemented in the area, in light of technological achievability.

To qualify for a lesser percentage under this clause, a State must demonstrate to the satisfaction of the Administrator that the plan for the area includes the measures that are achieved in practice by sources in the same source category in nonattainment areas of the next higher category.

**(B) Baseline emissions**

For purposes of subparagraph (A), the term ''baseline emissions'' means the total amount of actual VOC or $NO_x$ emissions from all anthropogenic sources in the area during the calendar year 1990, excluding emissions that would be eliminated under the regulations described in clauses (i) and (ii) of subparagraph (D).

**(C) General rule for creditability of reductions**

Except as provided under subparagraph (D), emissions reductions are creditable toward the 15 percent required under subparagraph (A) to the extent they have actually occurred, as of 6 years after November 15, 1990, from the implementation of measures required under the applicable implementation plan, rules promulgated by the Administrator, or a permit under subchapter V.

**(D) Limits on creditability of reductions**

Emission reductions from the following measures are not creditable toward the 15 percent reductions required under subparagraph (A):

(i) Any measure relating to motor vehicle exhaust or evaporative emissions promulgated by the Administrator by January 1, 1990.

(ii) Regulations concerning Reid Vapor Pressure promulgated by the Administrator by November 15, 1990, or required to be promulgated under section 7545(h) of this title.

(iii) Measures required under subsection (a)(2)(A) (concerning corrections to implementation plans prescribed under guidance by the Administrator).

(iv) Measures required under subsection (a)(2)(B) to be submitted immediately after November 15, 1990 (concerning corrections to motor vehicle inspection and maintenance programs).

**(2) Reasonably available control technology**

The State shall submit a revision to the applicable implementation plan to include provisions to require the implementation of reasonably available control technology under section 7502(c)(1) of this title with respect to each of the following:

(A) Each category of VOC sources in the area covered by a CTG document issued by the Administrator between November 15, 1990, and the date of attainment.

(B) All VOC sources in the area covered by any CTG issued before November 15, 1990.

(C) All other major stationary sources of VOCs that are located in the area.

Each revision described in subparagraph (A) shall be submitted within the period set forth by the Administrator in issuing the relevant CTG document. The revisions with respect to sources described in subparagraphs (B) and (C) shall be submitted by 2 years after November 15, 1990, and shall provide for the implementation of the required measures as expeditiously as practicable but no later than May 31, 1995.

**(3) Gasoline vapor recovery**

**(A) General rule**

Not later than 2 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to require all owners or operators of gasoline dispensing systems to install and operate, by the date prescribed under subparagraph (B), a system for gasoline vapor recovery of emissions from the fueling of motor vehicles. The Administrator shall issue guidance as appropriate as to the effectiveness of such system. This subparagraph shall apply only to facilities which sell more than 10,000 gallons of gasoline per month (50,000 gallons per month in the case of an independent small business marketer of gasoline as defined in section 7625–1 [2] of this title).

**(B) Effective date**

The date required under subparagraph (A) shall be—

(i) 6 months after the adoption date, in the case of gasoline dispensing facilities for which construction commenced after November 15, 1990;

(ii) one year after the adoption date, in the case of gasoline dispensing facilities which dispense at least 100,000 gallons of gasoline per month, based on average monthly sales for the 2-year period before the adoption date; or

(iii) 2 years after the adoption date, in the case of all other gasoline dispensing facilities.

Any gasoline dispensing facility described under both clause (i) and clause (ii) shall meet the requirements of clause (i).

**(C) Reference to terms**

For purposes of this paragraph, any reference to the term ''adoption date'' shall be considered a reference to the date of adoption by the State of requirements for the installation and operation of a system for gasoline vapor recovery of emissions from the fueling of motor vehicles.

_____

[2] So in original. Probably should be section ''7625''.

#### (4) Motor vehicle inspection and maintenance

For all Moderate Areas, the State shall submit, immediately after November 15, 1990, a revision to the applicable implementation plan that includes provisions necessary to provide for a vehicle inspection and maintenance program as described in subsection (a)(2)(B) (without regard to whether or not the area was required by section 7502(b)(11)(B) of this title (as in effect immediately before November 15, 1990) to have included a specific schedule for implementation of such a program).

#### (5) General offset requirement

For purposes of satisfying the emission offset requirements of this part, the ratio of total emission reductions of volatile organic compounds to total increase [3] emissions of such air pollutant shall be at least 1.15 to 1.

### (c) Serious Areas

Except as otherwise specified in paragraph (4), each State in which all or part of a Serious Area is located shall, with respect to the Serious Area (or portion thereof, to the extent specified in this subsection), make the submissions described under subsection (b) (relating to Moderate Areas), and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection. For any Serious Area, the terms "major source" and "major stationary source" include (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 50 tons per year of volatile organic compounds.

#### (1) Enhanced monitoring

In order to obtain more comprehensive and representative data on ozone air pollution, not later than 18 months after November 15, 1990, the Administrator shall promulgate rules, after notice and public comment, for enhanced monitoring of ozone, oxides of nitrogen, and volatile organic compounds. The rules shall, among other things, cover the location and maintenance of monitors. Immediately following the promulgation of rules by the Administrator relating to enhanced monitoring, the State shall commence such actions as may be necessary to adopt and implement a program based on such rules, to improve monitoring for ambient concentrations of ozone, oxides of nitrogen and volatile organic compounds and to improve monitoring of emissions of oxides of nitrogen and volatile organic compounds. Each State implementation plan for the area shall contain measures to improve the ambient monitoring of such air pollutants.

#### (2) Attainment and reasonable further progress demonstrations

Within 4 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan that includes each of the following:

##### (A) Attainment demonstration

A demonstration that the plan, as revised, will provide for attainment of the ozone national ambient air quality standard by the applicable attainment date. This attainment demonstration must be based on photochemical grid modeling or any other analytical method determined by the Administrator, in the Administrator's discretion, to be at least as effective.

##### (B) Reasonable further progress demonstration

A demonstration that the plan, as revised, will result in VOC emissions reductions from the baseline emissions described in subsection (b)(1)(B) equal to the following amount averaged over each consecutive 3-year period beginning 6 years after November 15, 1990, until the attainment date:

(i) at least 3 percent of baseline emissions each year; or

(ii) an amount less than 3 percent of such baseline emissions each year, if the State demonstrates to the satisfaction of the Administrator that the plan reflecting such lesser amount includes all measures that can feasibly be implemented in the area, in light of technological achievability.

To lessen the 3 percent requirement under clause (ii), a State must demonstrate to the satisfaction of the Administrator that the plan for the area includes the measures that are achieved in practice by sources in the same source category in nonattainment areas of the next higher classification. Any determination to lessen the 3 percent requirement shall be reviewed at each milestone under subsection (g) and revised to reflect such new measures (if any) achieved in practice by sources in the same category in any State, allowing a reasonable time to implement such measures. The emission reductions described in this subparagraph shall be calculated in accordance with subsection (b)(1)(C) and (D) (concerning creditability of reductions). The reductions creditable for the period beginning 6 years after November 15, 1990, shall include reductions that occurred before such period, computed in accordance with subsection (b)(1), that exceed the 15-percent amount of reductions required under subsection (b)(1)(A).

##### (C) NO$_x$ control

The revision may contain, in lieu of the demonstration required under subparagraph (B), a demonstration to the satisfaction of the Administrator that the applicable implementation plan, as revised, provides for reductions of emissions of VOC's and oxides of nitrogen (calculated according to the creditability provisions of subsection (b)(1)(C) and (D)), that would result in a reduction in ozone concentrations at least equivalent to that which would result from the amount of VOC emission reductions required under subparagraph (B). Within 1 year after November 15, 1990, the Administrator shall issue guidance concerning the conditions under which NO$_x$ control may be substituted for VOC control or may be combined with VOC control in order to maximize the reduction in ozone air pollution. In accord with such guidance,

[3] So in original. Probably should be "increased".

a lesser percentage of VOCs may be accepted as an adequate demonstration for purposes of this subsection.

**(3) Enhanced vehicle inspection and maintenance program**

**(A) Requirement for submission**

Within 2 years after November 15, 1990, the State shall submit a revision to the applicable implementation plan to provide for an enhanced program to reduce hydrocarbon emissions and $NO_x$ emissions from in-use motor vehicles registered in each urbanized area (in the nonattainment area), as defined by the Bureau of the Census, with a 1980 population of 200,000 or more.

**(B) Effective date of State programs; guidance**

The State program required under subparagraph (A) shall take effect no later than 2 years from November 15, 1990, and shall comply in all respects with guidance published in the Federal Register (and from time to time revised) by the Administrator for enhanced vehicle inspection and maintenance programs. Such guidance shall include—

(i) a performance standard achievable by a program combining emission testing, including on-road emission testing, with inspection to detect tampering with emission control devices and misfueling for all light-duty vehicles and all light-duty trucks subject to standards under section 7521 of this title; and

(ii) program administration features necessary to reasonably assure that adequate management resources, tools, and practices are in place to attain and maintain the performance standard.

Compliance with the performance standard under clause (i) shall be determined using a method to be established by the Administrator.

**(C) State program**

The State program required under subparagraph (A) shall include, at a minimum, each of the following elements—

(i) Computerized emission analyzers, including on-road testing devices.

(ii) No waivers for vehicles and parts covered by the emission control performance warranty as provided for in section 7541(b) of this title unless a warranty remedy has been denied in writing, or for tampering-related repairs.

(iii) In view of the air quality purpose of the program, if, for any vehicle, waivers are permitted for emissions-related repairs not covered by warranty, an expenditure to qualify for the waiver of an amount of $450 or more for such repairs (adjusted annually as determined by the Administrator on the basis of the Consumer Price Index in the same manner as provided in subchapter V).

(iv) Enforcement through denial of vehicle registration (except for any program in operation before November 15, 1990, whose enforcement mechanism is demonstrated to the Administrator to be more effective than the applicable vehicle registration program in assuring that noncomplying vehicles are not operated on public roads).

(v) Annual emission testing and necessary adjustment, repair, and maintenance, unless the State demonstrates to the satisfaction of the Administrator that a biennial inspection, in combination with other features of the program which exceed the requirements of this chapter, will result in emission reductions which equal or exceed the reductions which can be obtained through such annual inspections.

(vi) Operation of the program on a centralized basis, unless the State demonstrates to the satisfaction of the Administrator that a decentralized program will be equally effective. An electronically connected testing system, a licensing system, or other measures (or any combination thereof) may be considered, in accordance with criteria established by the Administrator, as equally effective for such purposes.

(vii) Inspection of emission control diagnostic systems and the maintenance or repair of malfunctions or system deterioration identified by or affecting such diagnostics systems.

Each State shall biennially prepare a report to the Administrator which assesses the emission reductions achieved by the program required under this paragraph based on data collected during inspection and repair of vehicles. The methods used to assess the emission reductions shall be those established by the Administrator.

**(4) Clean-fuel vehicle programs**

(A) Except to the extent that substitute provisions have been approved by the Administrator under subparagraph (B), the State shall submit to the Administrator, within 42 months of November 15, 1990, a revision to the applicable implementation plan for each area described under part C of subchapter II to include such measures as may be necessary to ensure the effectiveness of the applicable provisions of the clean-fuel vehicle program prescribed under part C of subchapter II, including all measures necessary to make the use of clean alternative fuels in clean-fuel vehicles (as defined in part C of subchapter II) economic from the standpoint of vehicle owners. Such a revision shall also be submitted for each area that opts into the clean fuel-vehicle program as provided in part C of subchapter II.

(B) The Administrator shall approve, as a substitute for all or a portion of the clean-fuel vehicle program prescribed under part C of subchapter II, any revision to the relevant applicable implementation plan that in the Administrator's judgment will achieve long-term reductions in ozone-producing and toxic air emissions equal to those achieved under part C of subchapter II, or the percentage thereof attributable to the portion of the clean-fuel vehicle program for which the revision is to substitute. The Administrator may approve such

revision only if it consists exclusively of provisions other than those required under this chapter for the area. Any State seeking approval of such revision must submit the revision to the Administrator within 24 months of November 15, 1990. The Administrator shall approve or disapprove any such revision within 30 months of November 15, 1990. The Administrator shall publish the revision submitted by a State in the Federal Register upon receipt. Such notice shall constitute a notice of proposed rulemaking on whether or not to approve such revision and shall be deemed to comply with the requirements concerning notices of proposed rulemaking contained in sections 553 through 557 of title 5 (related to notice and comment). Where the Administrator approves such revision for any area, the State need not submit the revision required by subparagraph (A) for the area with respect to the portions of the Federal clean-fuel vehicle program for which the Administrator has approved the revision as a substitute.

(C) If the Administrator determines, under section 7509 of this title, that the State has failed to submit any portion of the program required under subparagraph (A), then, in addition to any sanctions available under section 7509 of this title, the State may not receive credit, in any demonstration of attainment or reasonable further progress for the area, for any emission reductions from implementation of the corresponding aspects of the Federal clean-fuel vehicle requirements established in part C of subchapter II.

**(5) Transportation control**

(A)[4] Beginning 6 years after November 15, 1990, and each third year thereafter, the State shall submit a demonstration as to whether current aggregate vehicle mileage, aggregate vehicle emissions, congestion levels, and other relevant parameters are consistent with those used for the area's demonstration of attainment. Where such parameters and emissions levels exceed the levels projected for purposes of the area's attainment demonstration, the State shall within 18 months develop and submit a revision of the applicable implementation plan that includes a transportation control measures program consisting of measures from, but not limited to, section 7408(f) of this title that will reduce emissions to levels that are consistent with emission levels projected in such demonstration. In considering such measures, the State should ensure adequate access to downtown, other commercial, and residential areas and should avoid measures that increase or relocate emissions and congestion rather than reduce them. Such revision shall be developed in accordance with guidance issued by the Administrator pursuant to section 7408(e) of this title and with the requirements of section 7504(b) of this title and shall include implementation and funding schedules that achieve expeditious emissions reductions in accordance with implementation plan projections.

**(6) De minimis rule**

The new source review provisions under this part shall ensure that increased emissions of volatile organic compounds resulting from any physical change in, or change in the method of operation of, a stationary source located in the area shall not be considered de minimis for purposes of determining the applicability of the permit requirements established by this chapter unless the increase in net emissions of such air pollutant from such source does not exceed 25 tons when aggregated with all other net increases in emissions from the source over any period of 5 consecutive calendar years which includes the calendar year in which such increase occurred.

**(7) Special rule for modifications of sources emitting less than 100 tons**

In the case of any major stationary source of volatile organic compounds located in the area (other than a source which emits or has the potential to emit 100 tons or more of volatile organic compounds per year), whenever any change (as described in section 7411(a)(4) of this title) at that source results in any increase (other than a de minimis increase) in emissions of volatile organic compounds from any discrete operation, unit, or other pollutant emitting activity at the source, such increase shall be considered a modification for purposes of section 7502(c)(5) of this title and section 7503(a) of this title, except that such increase shall not be considered a modification for such purposes if the owner or operator of the source elects to offset the increase by a greater reduction in emissions of volatile organic compounds concerned from other operations, units, or activities within the source at an internal offset ratio of at least 1.3 to 1. If the owner or operator does not make such election, such change shall be considered a modification for such purposes, but in applying section 7503(a)(2) of this title in the case of any such modification, the best available control technology (BACT), as defined in section 7479 of this title, shall be substituted for the lowest achievable emission rate (LAER). The Administrator shall establish and publish policies and procedures for implementing the provisions of this paragraph.

**(8) Special rule for modifications of sources emitting 100 tons or more**

In the case of any major stationary source of volatile organic compounds located in the area which emits or has the potential to emit 100 tons or more of volatile organic compounds per year, whenever any change (as described in section 7411(a)(4) of this title) at that source results in any increase (other than a de minimis increase) in emissions of volatile organic compounds from any discrete operation, unit, or other pollutant emitting activity at the source, such increase shall be considered a modification for purposes of section 7502(c)(5) of this title and section 7503(a) of this title, except that if the owner or operator of the source elects to offset the increase by a greater reduction in emissions of volatile organic compounds from other operations, units, or

---

[4] So in original. No subpar. (B) has been enacted.

activities within the source at an internal off-set ratio of at least 1.3 to 1, the requirements of section 7503(a)(2) of this title (concerning the lowest achievable emission rate (LAER)) shall not apply.

**(9) Contingency provisions**

In addition to the contingency provisions required under section 7502(c)(9) of this title, the plan revision shall provide for the implementation of specific measures to be undertaken if the area fails to meet any applicable milestone. Such measures shall be included in the plan revision as contingency measures to take effect without further action by the State or the Administrator upon a failure by the State to meet the applicable milestone.

**(10) General offset requirement**

For purposes of satisfying the emission offset requirements of this part, the ratio of total emission reductions of volatile organic compounds to total increase emissions of such air pollutant shall be at least 1.2 to 1.

Any reference to ''attainment date'' in subsection (b), which is incorporated by reference into this subsection, shall refer to the attainment date for serious areas.

**(d) Severe Areas**

Each State in which all or part of a Severe Area is located shall, with respect to the Severe Area, make the submissions described under subsection (c) (relating to Serious Areas), and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection. For any Severe Area, the terms ''major source'' and ''major stationary source'' include (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 25 tons per year of volatile organic compounds.

**(1) Vehicle miles traveled**

(A) Within 2 years after November 15, 1990, the State shall submit a revision that identifies and adopts specific enforceable transportation control strategies and transportation control measures to offset any growth in emissions from growth in vehicle miles traveled or numbers of vehicle trips in such area and to attain reduction in motor vehicle emissions as necessary, in combination with other emission reduction requirements of this subpart, to comply with the requirements of subsection[5] (b)(2)(B) and (c)(2)(B) (pertaining to periodic emissions reduction requirements). The State shall consider measures specified in section 7408(f) of this title, and choose from among and implement such measures as necessary to demonstrate attainment with the national ambient air quality standards; in considering such measures, the State should ensure adequate access to downtown, other commercial, and residential areas and should avoid meas-

ures that increase or relocate emissions and congestion rather than reduce them.

(B) The State may also, in its discretion, submit a revision at any time requiring employers in such area to implement programs to reduce work-related vehicle trips and miles travelled by employees. Such revision shall be developed in accordance with guidance issued by the Administrator pursuant to section 7408(f) of this title and may require that employers in such area increase average passenger occupancy per vehicle in commuting trips between home and the workplace during peak travel periods. The guidance of the Administrator may specify average vehicle occupancy rates which vary for locations within a nonattainment area (suburban, center city, business district) or among nonattainment areas reflecting existing occupancy rates and the availability of high occupancy modes. Any State required to submit a revision under this subparagraph (as in effect before December 23, 1995) containing provisions requiring employers to reduce work-related vehicle trips and miles travelled by employees may, in accordance with State law, remove such provisions from the implementation plan, or withdraw its submission, if the State notifies the Administrator, in writing, that the State has undertaken, or will undertake, one or more alternative methods that will achieve emission reductions equivalent to those to be achieved by the removed or withdrawn provisions.

**(2) Offset requirement**

For purposes of satisfying the offset requirements pursuant to this part, the ratio of total emission reductions of VOCs to total increased emissions of such air pollutant shall be at least 1.3 to 1, except that if the State plan requires all existing major sources in the nonattainment area to use best available control technology (as defined in section 7479(3) of this title) for the control of volatile organic compounds, the ratio shall be at least 1.2 to 1.

**(3) Enforcement under section 7511d**

By December 31, 2000, the State shall submit a plan revision which includes the provisions required under section 7511d of this title.

Any reference to the term ''attainment date'' in subsection (b) or (c), which is incorporated by reference into this subsection (d), shall refer to the attainment date for Severe Areas.

**(e) Extreme Areas**

Each State in which all or part of an Extreme Area is located shall, with respect to the Extreme Area, make the submissions described under subsection (d) (relating to Severe Areas), and shall also submit the revisions to the applicable implementation plan (including the plan items) described under this subsection. The provisions of clause (ii) of subsection (c)(2)(B) (relating to reductions of less than 3 percent), the provisions of paragraphs[6] (6), (7) and (8) of subsection (c) (relating to de minimus[7] rule and modification of sources), and the provisions of clause (ii) of subsection (b)(1)(A) (relating to re-

---

[5] So in original. Probably should be ''subsections''.

[6] So in original. Probably should be ''paragraphs''.

[7] So in original. Probably should be ''de minimis''.

ductions of less than 15 percent) shall not apply in the case of an Extreme Area. For any Extreme Area, the terms "major source" and "major stationary source" includes[8] (in addition to the sources described in section 7602 of this title) any stationary source or group of sources located within a contiguous area and under common control that emits, or has the potential to emit, at least 10 tons per year of volatile organic compounds.

**(1) Offset requirement**

For purposes of satisfying the offset requirements pursuant to this part, the ratio of total emission reductions of VOCs to total increased emissions of such air pollutant shall be at least 1.5 to 1, except that if the State plan requires all existing major sources in the nonattainment area to use best available control technology (as defined in section 7479(3) of this title) for the control of volatile organic compounds, the ratio shall be at least 1.2 to 1.

**(2) Modifications**

Any change (as described in section 7411(a)(4) of this title) at a major stationary source which results in any increase in emissions from any discrete operation, unit, or other pollutant emitting activity at the source shall be considered a modification for purposes of section 7502(c)(5) of this title and section 7503(a) of this title, except that for purposes of complying with the offset requirement pursuant to section 7503(a)(1) of this title, any such increase shall not be considered a modification if the owner or operator of the source elects to offset the increase by a greater reduction in emissions of the air pollutant concerned from other discrete operations, units, or activities within the source at an internal offset ratio of at least 1.3 to 1. The offset requirements of this part shall not be applicable in Extreme Areas to a modification of an existing source if such modification consists of installation of equipment required to comply with the applicable implementation plan, permit, or this chapter.

**(3) Use of clean fuels or advanced control technology**

For Extreme Areas, a plan revision shall be submitted within 3 years after November 15, 1990, to require, effective 8 years after November 15, 1990, that each new, modified, and existing electric utility and industrial and commercial boiler which emits more than 25 tons per year of oxides of nitrogen—

  (A) burn as its primary fuel natural gas, methanol, or ethanol (or a comparably low polluting fuel), or

  (B) use advanced control technology (such as catalytic control technology or other comparably effective control methods) for reduction of emissions of oxides of nitrogen.

For purposes of this subsection, the term "primary fuel" means the fuel which is used 90 percent or more of the operating time. This paragraph shall not apply during any natural gas supply emergency (as defined in title III of the Natural Gas Policy Act of 1978 [15 U.S.C. 3361 et seq.]).

**(4) Traffic control measures during heavy traffic hours**

For Extreme Areas, each implementation plan revision under this subsection may contain provisions establishing traffic control measures applicable during heavy traffic hours to reduce the use of high polluting vehicles or heavy-duty vehicles, notwithstanding any other provision of law.

**(5) New technologies**

The Administrator may, in accordance with section 7410 of this title, approve provisions of an implementation plan for an Extreme Area which anticipate development of new control techniques or improvement of existing control technologies, and an attainment demonstration based on such provisions, if the State demonstrates to the satisfaction of the Administrator that—

  (A) such provisions are not necessary to achieve the incremental emission reductions required during the first 10 years after November 15, 1990; and

  (B) the State has submitted enforceable commitments to develop and adopt contingency measures to be implemented as set forth herein if the anticipated technologies do not achieve planned reductions.

Such contingency measures shall be submitted to the Administrator no later than 3 years before proposed implementation of the plan provisions and approved or disapproved by the Administrator in accordance with section 7410 of this title. The contingency measures shall be adequate to produce emission reductions sufficient, in conjunction with other approved plan provisions, to achieve the periodic emission reductions required by subsection (b)(1) or (c)(2) and attainment by the applicable dates. If the Administrator determines that an Extreme Area has failed to achieve an emission reduction requirement set forth in subsection (b)(1) or (c)(2), and that such failure is due in whole or part to an inability to fully implement provisions approved pursuant to this subsection, the Administrator shall require the State to implement the contingency measures to the extent necessary to assure compliance with subsections (b)(1) and (c)(2).

Any reference to the term "attainment date" in subsection (b), (c), or (d) which is incorporated by reference into this subsection, shall refer to the attainment date for Extreme Areas.

**(f) $NO_x$ requirements**

(1) The plan provisions required under this subpart for major stationary sources of volatile organic compounds shall also apply to major stationary sources (as defined in section 7602 of this title and subsections (c), (d), and (e) of this section) of oxides of nitrogen. This subsection shall not apply in the case of oxides of nitrogen for those sources for which the Administrator determines (when the Administrator approves a plan or plan revision) that net air quality benefits are greater in the absence of reductions of oxides of nitrogen from the sources concerned.

---

[8] So in original. Probably should be "include".

This subsection shall also not apply in the case of oxides of nitrogen for—

(A) nonattainment areas not within an ozone transport region under section 7511c of this title, if the Administrator determines (when the Administrator approves a plan or plan revision) that additional reductions of oxides of nitrogen would not contribute to attainment of the national ambient air quality standard for ozone in the area, or

(B) nonattainment areas within such an ozone transport region if the Administrator determines (when the Administrator approves a plan or plan revision) that additional reductions of oxides of nitrogen would not produce net ozone air quality benefits in such region.

The Administrator shall, in the Administrator's determinations, consider the study required under section 7511f of this title.

(2)(A) If the Administrator determines that excess reductions in emissions of $NO_x$ would be achieved under paragraph (1), the Administrator may limit the application of paragraph (1) to the extent necessary to avoid achieving such excess reductions.

(B) For purposes of this paragraph, excess reductions in emissions of $NO_x$ are emission reductions for which the Administrator determines that net air quality benefits are greater in the absence of such reductions. Alternatively, for purposes of this paragraph, excess reductions in emissions of $NO_x$ are, for—

(i) nonattainment areas not within an ozone transport region under section 7511c of this title, emission reductions that the Administrator determines would not contribute to attainment of the national ambient air quality standard for ozone in the area, or

(ii) nonattainment areas within such ozone transport region, emission reductions that the Administrator determines would not produce net ozone air quality benefits in such region.

(3) At any time after the final report under section 7511f of this title is submitted to Congress, a person may petition the Administrator for a determination under paragraph (1) or (2) with respect to any nonattainment area or any ozone transport region under section 7511c of this title. The Administrator shall grant or deny such petition within 6 months after its filing with the Administrator.

**(g) Milestones**

**(1) Reductions in emissions**

6 years after November 15, 1990, and at intervals of every 3 years thereafter, the State shall determine whether each nonattainment area (other than an area classified as Marginal or Moderate) has achieved a reduction in emissions during the preceding intervals equivalent to the total emission reductions required to be achieved by the end of such interval pursuant to subsection (b)(1) and the corresponding requirements of subsections (c)(2)(B) and (C), (d), and (e). Such reduction shall be referred to in this section as an applicable milestone.

**(2) Compliance demonstration**

For each nonattainment area referred to in paragraph (1), not later than 90 days after the date on which an applicable milestone occurs (not including an attainment date on which a milestone occurs in cases where the attainment date has been attained), each State in which all or part of such area is located shall submit to the Administrator a demonstration that the milestone has been met. A demonstration under this paragraph shall be submitted in such form and manner, and shall contain such information and analysis, as the Administrator shall require, by rule. The Administrator shall determine whether or not a State's demonstration is adequate within 90 days after the Administrator's receipt of a demonstration which contains the information and analysis required by the Administrator.

**(3) Serious and Severe Areas; State election**

If a State fails to submit a demonstration under paragraph (2) for any Serious or Severe Area within the required period or if the Administrator determines that the area has not met any applicable milestone, the State shall elect, within 90 days after such failure or determination—

(A) to have the area reclassified to the next higher classification,

(B) to implement specific additional measures adequate, as determined by the Administrator, to meet the next milestone as provided in the applicable contingency plan, or

(C) to adopt an economic incentive program as described in paragraph (4).

If the State makes an election under subparagraph (B), the Administrator shall, within 90 days after the election, review such plan and shall, if the Administrator finds the contingency plan inadequate, require further measures necessary to meet such milestone. Once the State makes an election, it shall be deemed accepted by the Administrator as meeting the election requirement. If the State fails to make an election required under this paragraph within the required 90-day period or within 6 months thereafter, the area shall be reclassified to the next higher classification by operation of law at the expiration of such 6-month period. Within 12 months after the date required for the State to make an election, the State shall submit a revision of the applicable implementation plan for the area that meets the requirements of this paragraph. The Administrator shall review such plan revision and approve or disapprove the revision within 9 months after the date of its submission.

**(4) Economic incentive program**

(A) An economic incentive program under this paragraph shall be consistent with rules published by the Administrator and sufficient, in combination with other elements of the State plan, to achieve the next milestone. The State program may include a nondiscriminatory system, consistent with applicable law regarding interstate commerce, of State established emissions fees or a system of marketable permits, or a system of State fees on sale or manufacture of products the use of which contributes to ozone formation, or any combination of the foregoing or other similar meas-

ures. The program may also include incentives and requirements to reduce vehicle emissions and vehicle miles traveled in the area, including any of the transportation control measures identified in section 7408(f) of this title.

(B) Within 2 years after November 15, 1990, the Administrator shall publish rules for the programs to be adopted pursuant to subparagraph (A). Such rules shall include model plan provisions which may be adopted for reducing emissions from permitted stationary sources, area sources, and mobile sources. The guidelines shall require that any revenues generated by the plan provisions adopted pursuant to subparagraph (A) shall be used by the State for any of the following:

(i) Providing incentives for achieving emission reductions.

(ii) Providing assistance for the development of innovative technologies for the control of ozone air pollution and for the development of lower-polluting solvents and surface coatings. Such assistance shall not provide for the payment of more than 75 percent of either the costs of any project to develop such a technology or the costs of development of a lower-polluting solvent or surface coating.

(iii) Funding the administrative costs of State programs under this chapter. Not more than 50 percent of such revenues may be used for purposes of this clause.

**(5) Extreme Areas**

If a State fails to submit a demonstration under paragraph (2) for any Extreme Area within the required period, or if the Administrator determines that the area has not met any applicable milestone, the State shall, within 9 months after such failure or determination, submit a plan revision to implement an economic incentive program which meets the requirements of paragraph (4). The Administrator shall review such plan revision and approve or disapprove the revision within 9 months after the date of its submission.

**(h) Rural transport areas**

(1) Notwithstanding any other provision of section 7511 of this title or this section, a State containing an ozone nonattainment area that does not include, and is not adjacent to, any part of a Metropolitan Statistical Area or, where one exists, a Consolidated Metropolitan Statistical Area (as defined by the United States Bureau of the Census), which area is treated by the Administrator, in the Administrator's discretion, as a rural transport area within the meaning of paragraph (2), shall be treated by operation of law as satisfying the requirements of this section if it makes the submissions required under subsection (a) of this section (relating to marginal areas).

(2) The Administrator may treat an ozone nonattainment area as a rural transport area if the Administrator finds that sources of VOC (and, where the Administrator determines relevant, $NO_x$) emissions within the area do not make a significant contribution to the ozone concentrations measured in the area or in other areas.

**(i) Reclassified areas**

Each State containing an ozone nonattainment area reclassified under section 7511(b)(2) of this title shall meet such requirements of subsections (b) through (d) of this section as may be applicable to the area as reclassified, according to the schedules prescribed in connection with such requirements, except that the Administrator may adjust any applicable deadlines (other than attainment dates) to the extent such adjustment is necessary or appropriate to assure consistency among the required submissions.

**(j) Multi-State ozone nonattainment areas**

**(1) Coordination among States**

Each State in which there is located a portion of a single ozone nonattainment area which covers more than one State (hereinafter in this section referred to as a "multi-State ozone nonattainment area") shall—

(A) take all reasonable steps to coordinate, substantively and procedurally, the revisions and implementation of State implementation plans applicable to the nonattainment area concerned; and

(B) use photochemical grid modeling or any other analytical method determined by the Administrator, in his discretion, to be at least as effective.

The Administrator may not approve any revision of a State implementation plan submitted under this part for a State in which part of a multi-State ozone nonattainment area is located if the plan revision for that State fails to comply with the requirements of this subsection.

**(2) Failure to demonstrate attainment**

If any State in which there is located a portion of a multi-State ozone nonattainment area fails to provide a demonstration of attainment of the national ambient air quality standard for ozone in that portion within the required period, the State may petition the Administrator to make a finding that the State would have been able to make such demonstration but for the failure of one or more other States in which other portions of the area are located to commit to the implementation of all measures required under this section (relating to plan submissions and requirements for ozone nonattainment areas). If the Administrator makes such finding, the provisions of section 7509 of this title (relating to sanctions) shall not apply, by reason of the failure to make such demonstration, in the portion of the multi-State ozone nonattainment area within the State submitting such petition.

(July 14, 1955, ch. 360, title I, § 182, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2426; amended Pub. L. 104–70, § 1, Dec. 23, 1995, 109 Stat. 773.)

REFERENCES IN TEXT

The Natural Gas Policy Act of 1978, referred to in subsec. (e)(3), is Pub. L. 95–621, Nov. 9, 1978, 92 Stat. 3350, as amended. Title III of the Act is classified generally to subchapter III (§ 3361 et seq.) of chapter 60 of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 3301 of Title 15 and Tables.

AMENDMENTS

1995—Subsec. (d)(1)(B). Pub. L. 104–70 amended subpar. (B) generally. Prior to amendment, subpar. (B) read as

follows: "Within 2 years after November 15, 1990, the State shall submit a revision requiring employers in such area to implement programs to reduce work-related vehicle trips and miles traveled by employees. Such revision shall be developed in accordance with guidance issued by the Administrator pursuant to section 7408(f) of this title and shall, at a minimum, require that each employer of 100 or more persons in such area increase average passenger occupancy per vehicle in commuting trips between home and the workplace during peak travel periods by not less than 25 percent above the average vehicle occupancy for all such trips in the area at the time the revision is submitted. The guidance of the Administrator may specify average vehicle occupancy rates which vary for locations within a nonattainment area (suburban, center city, business district) or among nonattainment areas reflecting existing occupancy rates and the availability of high occupancy modes. The revision shall provide that each employer subject to a vehicle occupancy requirement shall submit a compliance plan within 2 years after the date the revision is submitted which shall convincingly demonstrate compliance with the requirements of this paragraph not later than 4 years after such date."

MORATORIUM ON CERTAIN EMISSIONS TESTING
REQUIREMENTS

Pub. L. 104–59, title III, §348, Nov. 28, 1995, 109 Stat. 617, provided that:

"(a) IN GENERAL.—The Administrator of the Environmental Protection Agency (hereinafter in this section referred to as the 'Administrator') shall not require adoption or implementation by a State of a test-only I/M240 enhanced vehicle inspection and maintenance program as a means of compliance with section 182 or 187 of the Clean Air Act (42 U.S.C. 7511a; 7512a), but the Administrator may approve such a program if a State chooses to adopt the program as a means of compliance with such section.

"(b) LIMITATION ON PLAN DISAPPROVAL.—The Administrator shall not disapprove or apply an automatic discount to a State implementation plan revision under section 182 or 187 of the Clean Air Act (42 U.S.C. 7511a; 7512a) on the basis of a policy, regulation, or guidance providing for a discount of emissions credits because the inspection and maintenance program in such plan revision is decentralized or a test-and-repair program.

"(c) EMISSIONS REDUCTION CREDITS.—

"(1) STATE PLAN REVISION; APPROVAL.—Within 120 days of the date of the enactment of this subsection [Nov. 28, 1995], a State may submit an implementation plan revision proposing an interim inspection and maintenance program under section 182 or 187 of the Clean Air Act (42 U.S.C. 7511a; 7512a). The Administrator shall approve the program based on the full amount of credits proposed by the State for each element of the program if the proposed credits reflect good faith estimates by the State and the revision is otherwise in compliance with such Act. If, within such 120-day period, the State submits to the Administrator proposed revisions to the implementation plan, has all of the statutory authority necessary to implement the revisions, and has proposed a regulation to make the revisions, the Administrator may approve the revisions without regard to whether or not such regulation has been issued as a final regulation by the State.

"(2) EXPIRATION OF INTERIM APPROVAL.—The interim approval shall expire on the earlier of (A) the last day of the 18-month period beginning on the date of the interim approval, or (B) the date of final approval. The interim approval may not be extended.

"(3) FINAL APPROVAL.—The Administrator shall grant final approval of the revision based on the credits proposed by the State during or after the period of interim approval if data collected on the operation of the State program demonstrates that the credits are appropriate and the revision is otherwise in compliance with the Clean Air Act [42 U.S.C. 7401 et seq.].

"(4) BASIS OF APPROVAL; NO AUTOMATIC DISCOUNT.— Any determination with respect to interim or full approval shall be based on the elements of the program and shall not apply any automatic discount because the program is decentralized or a test-and-repair program."

## § 7511b. Federal ozone measures

### (a) Control techniques guidelines for VOC sources

Within 3 years after November 15, 1990, the Administrator shall issue control techniques guidelines, in accordance with section 7408 of this title, for 11 categories of stationary sources of VOC emissions for which such guidelines have not been issued as of November 15, 1990, not including the categories referred to in paragraphs (3) and (4) of subsection (b) of this section. The Administrator may issue such additional control techniques guidelines as the Administrator deems necessary.

### (b) Existing and new CTGS

(1) Within 36 months after November 15, 1990, and periodically thereafter, the Administrator shall review and, if necessary, update control technique guidance issued under section 7408 of this title before November 15, 1990.

(2) In issuing the guidelines the Administrator shall give priority to those categories which the Administrator considers to make the most significant contribution to the formation of ozone air pollution in ozone nonattainment areas, including hazardous waste treatment, storage, and disposal facilities which are permitted under subtitle C of the Solid Waste Disposal Act [42 U.S.C. 6921 et seq.]. Thereafter the Administrator shall periodically review and, if necessary, revise such guidelines.

(3) Within 3 years after November 15, 1990, the Administrator shall issue control techniques guidelines in accordance with section 7408 of this title to reduce the aggregate emissions of volatile organic compounds into the ambient air from aerospace coatings and solvents. Such control techniques guidelines shall, at a minimum, be adequate to reduce aggregate emissions of volatile organic compounds into the ambient air from the application of such coatings and solvents to such level as the Administrator determines may be achieved through the adoption of best available control measures. Such control technology guidance shall provide for such reductions in such increments and on such schedules as the Administrator determines to be reasonable, but in no event later than 10 years after the final issuance of such control technology guidance. In developing control technology guidance under this subsection, the Administrator shall consult with the Secretary of Defense, the Secretary of Transportation, and the Administrator of the National Aeronautics and Space Administration with regard to the establishment of specifications for such coatings. In evaluating VOC reduction strategies, the guidance shall take into account the applicable requirements of section 7412 of this title and the need to protect stratospheric ozone.

(4) Within 3 years after November 15, 1990, the Administrator shall issue control techniques guidelines in accordance with section 7408 of this title to reduce the aggregate emissions of volatile organic compounds and PM–10 into the


2018, 132 Stat. 4264. See Transitional and Savings Provisions note preceding section 101 of Title 46, Shipping, and section 70011 of Title 46.

### AMENDMENTS

1998—Subsec. (h). Pub. L. 105–286 added subsec. (h).

### EFFECTIVE DATE OF 1998 AMENDMENT; PUBLICATION OF PROHIBITION

Pub. L. 105–286, § 3, Oct. 27, 1998, 112 Stat. 2774, provided that:

"(a) IN GENERAL.—The amendment made by section 2 [amending this section] takes effect 180 days after the date of the enactment of this Act [Oct. 27, 1998]. Nothing in that amendment shall require action that is inconsistent with the obligations of the United States under any international agreement.

"(b) INFORMATION.—As soon as practicable after the date of the enactment of this Act, the appropriate agency of the United States shall distribute information to publicize the prohibition set forth in the amendment made by section 2."

### TRANSFER OF FUNCTIONS

For transfer of authorities, functions, personnel, and assets of the Coast Guard, including the authorities and functions of the Secretary of Transportation relating thereto, to the Department of Homeland Security, and for treatment of related references, see sections 468(b), 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under section 542 of Title 6.

## § 7511c. Control of interstate ozone air pollution

### (a) Ozone transport regions

A single transport region for ozone (within the meaning of section 7506a(a) of this title), comprised of the States of Connecticut, Delaware, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, and the Consolidated Metropolitan Statistical Area that includes the District of Columbia, is hereby established by operation of law. The provisions of section 7506a(a)(1) and (2) of this title shall apply with respect to the transport region established under this section and any other transport region established for ozone, except to the extent inconsistent with the provisions of this section. The Administrator shall convene the commission required (under section 7506a(b) of this title) as a result of the establishment of such region within 6 months of November 15, 1990.

### (b) Plan provisions for States in ozone transport regions

(1) In accordance with section 7410 of this title, not later than 2 years after November 15, 1990 (or 9 months after the subsequent inclusion of a State in a transport region established for ozone), each State included within a transport region established for ozone shall submit a State implementation plan or revision thereof to the Administrator which requires the following—

(A) that each area in such State that is in an ozone transport region, and that is a metropolitan statistical area or part thereof with a population of 100,000 or more comply with the provisions of section 7511a(c)(2)(A) of this title (pertaining to enhanced vehicle inspection and maintenance programs); and

(B) implementation of reasonably available control technology with respect to all sources

of volatile organic compounds in the State covered by a control techniques guideline issued before or after November 15, 1990.

(2) Within 3 years after November 15, 1990, the Administrator shall complete a study identifying control measures capable of achieving emission reductions comparable to those achievable through vehicle refueling controls contained in section 7511a(b)(3) of this title, and such measures or such vehicle refueling controls shall be implemented in accordance with the provisions of this section. Notwithstanding other deadlines in this section, the applicable implementation plan shall be revised to reflect such measures within 1 year of completion of the study. For purposes of this section any stationary source that emits or has the potential to emit at least 50 tons per year of volatile organic compounds shall be considered a major stationary source and subject to the requirements which would be applicable to major stationary sources if the area were classified as a Moderate nonattainment area.

### (c) Additional control measures

#### (1) Recommendations

Upon petition of any State within a transport region established for ozone, and based on a majority vote of the Governors on the Commission[1] (or their designees), the Commission[1] may, after notice and opportunity for public comment, develop recommendations for additional control measures to be applied within all or a part of such transport region if the commission determines such measures are necessary to bring any area in such region into attainment by the dates provided by this subpart. The commission shall transmit such recommendations to the Administrator.

#### (2) Notice and review

Whenever the Administrator receives recommendations prepared by a commission pursuant to paragraph (1) (the date of receipt of which shall hereinafter in this section be referred to as the "receipt date"), the Administrator shall—

(A) immediately publish in the Federal Register a notice stating that the recommendations are available and provide an opportunity for public hearing within 90 days beginning on the receipt date; and

(B) commence a review of the recommendations to determine whether the control measures in the recommendations are necessary to bring any area in such region into attainment by the dates provided by this subpart and are otherwise consistent with this chapter.

#### (3) Consultation

In undertaking the review required under paragraph (2)(B), the Administrator shall consult with members of the commission of the affected States and shall take into account the data, views, and comments received pursuant to paragraph (2)(A).

#### (4) Approval and disapproval

Within 9 months after the receipt date, the Administrator shall (A) determine whether to

---

[1] So in original. Probably should not be capitalized.

approve, disapprove, or partially disapprove and partially approve the recommendations; (B) notify the commission in writing of such approval, disapproval, or partial disapproval; and (C) publish such determination in the Federal Register. If the Administrator disapproves or partially disapproves the recommendations, the Administrator shall specify—

(i) why any disapproved additional control measures are not necessary to bring any area in such region into attainment by the dates provided by this subpart or are otherwise not consistent with the [2] chapter; and

(ii) recommendations concerning equal or more effective actions that could be taken by the commission to conform the disapproved portion of the recommendations to the requirements of this section.

**(5) Finding**

Upon approval or partial approval of recommendations submitted by a commission, the Administrator shall issue to each State which is included in the transport region and to which a requirement of the approved plan applies, a finding under section 7410(k)(5) of this title that the implementation plan for such State is inadequate to meet the requirements of section 7410(a)(2)(D) of this title. Such finding shall require each such State to revise its implementation plan to include the approved additional control measures within one year after the finding is issued.

**(d) Best available air quality monitoring and modeling**

For purposes of this section, not later than 6 months after November 15, 1990, the Administrator shall promulgate criteria for purposes of determining the contribution of sources in one area to concentrations of ozone in another area which is a nonattainment area for ozone. Such criteria shall require that the best available air quality monitoring and modeling techniques be used for purposes of making such determinations.

(July 14, 1955, ch. 360, title I, § 184, as added Pub. L. 101–549, title I, § 103, Nov. 15, 1990, 104 Stat. 2448.)

**§ 7511d. Enforcement for Severe and Extreme ozone nonattainment areas for failure to attain**

**(a) General rule**

Each implementation plan revision required under section 7511a(d) and (e) of this title (relating to the attainment plan for Severe and Extreme ozone nonattainment areas) shall provide that, if the area to which such plan revision applies has failed to attain the national primary ambient air quality standard for ozone by the applicable attainment date, each major stationary source of VOCs located in the area shall, except as otherwise provided under subsection (c), pay a fee to the State as a penalty for such failure, computed in accordance with subsection (b), for each calendar year beginning after the attainment date, until the area is redesignated as

an attainment area for ozone. Each such plan revision should include procedures for assessment and collection of such fees.

**(b) Computation of fee**

**(1) Fee amount**

The fee shall equal $5,000, adjusted in accordance with paragraph (3), per ton of VOC emitted by the source during the calendar year in excess of 80 percent of the baseline amount, computed under paragraph (2).

**(2) Baseline amount**

For purposes of this section, the baseline amount shall be computed, in accordance with such guidance as the Administrator may provide, as the lower of the amount of actual VOC emissions (''actuals'') or VOC emissions allowed under the permit applicable to the source (or, if no such permit has been issued for the attainment year, the amount of VOC emissions allowed under the applicable implementation plan (''allowables'')) during the attainment year. Notwithstanding the preceding sentence, the Administrator may issue guidance authorizing the baseline amount to be determined in accordance with the lower of average actuals or average allowables, determined over a period of more than one calendar year. Such guidance may provide that such average calculation for a specific source may be used if that source's emissions are irregular, cyclical, or otherwise vary significantly from year to year.

**(3) Annual adjustment**

The fee amount under paragraph (1) shall be adjusted annually, beginning in the year beginning after 1990, in accordance with section 7661a(b)(3)(B)(v) of this title (relating to inflation adjustment).

**(c) Exception**

Notwithstanding any provision of this section, no source shall be required to pay any fee under subsection (a) with respect to emissions during any year that is treated as an Extension Year under section 7511a(a)(5) of this title.

**(d) Fee collection by Administrator**

If the Administrator has found that the fee provisions of the implementation plan do not meet the requirements of this section, or if the Administrator makes a finding that the State is not administering and enforcing the fee required under this section, the Administrator shall, in addition to any other action authorized under this subchapter, collect, in accordance with procedures promulgated by the Administrator, the unpaid fees required under subsection (a). If the Administrator makes such a finding under section 7509(a)(4) of this title, the Administrator may collect fees for periods before the determination, plus interest computed in accordance with section 6621(a)(2) of title 26 (relating to computation of interest on underpayment of Federal taxes), to the extent the Administrator finds such fees have not been paid to the State. The provisions of clauses (ii) through (iii) of section 7661a(b)(3)(C) of this title (relating to penalties and use of the funds, respectively) shall apply with respect to fees collected under this subsection.

---

[2] So in original. Probably should be ''this''.

## CODIFICATION

Section was formerly classified to section 1857g of this title.

## AMENDMENTS

1990—Subsec. (a)(1). Pub. L. 101–549, §108(i), inserted "subject to section 7607(d) of this title" after "regulations".

Subsec. (d). Pub. L. 101–549, §107(d), added subsec. (d).

1977—Subsec. (a). Pub. L. 95–95 designated existing provisions as par. (1) and added par. (2).

1970—Subsec. (a). Pub. L. 91–604, §15(c)(2), substituted "Administrator" for "Secretary" and "Environmental Protection Agency" for "Department of Health, Education, and Welfare".

Subsec. (b). Pub. L. 91–604, §3(b)(2), substituted "Environmental Protection Agency" for "Public Health Service" and struck out provisions covering the payment of salaries and allowances.

Subsec. (c). Pub. L. 91–604, §15(c)(2), substituted "Administrator" for "Secretary".

1967—Pub. L. 90–148 reenacted section without change.

## EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

## MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

## DISADVANTAGED BUSINESS CONCERNS; USE OF QUOTAS PROHIBITED

Pub. L. 101–549, title X, Nov. 15, 1990, 104 Stat. 2708, provided that:

"SEC. 1001. DISADVANTAGED BUSINESS CONCERNS.

"(a) IN GENERAL.—In providing for any research relating to the requirements of the amendments made by the Clean Air Act Amendments of 1990 [Pub. L. 101–549, see Tables for classification] which uses funds of the Environmental Protection Agency, the Administrator of the Environmental Protection Agency shall, to the extent practicable, require that not less than 10 percent of total Federal funding for such research will be made available to disadvantaged business concerns.

"(b) DEFINITION.—

"(1)(A) For purposes of subsection (a), the term 'disadvantaged business concern' means a concern—

"(i) which is at least 51 percent owned by one or more socially and economically disadvantaged individuals or, in the case of a publicly traded company, at least 51 percent of the stock of which is owned by one or more socially and economically disadvantaged individuals; and

"(ii) the management and daily business operations of which are controlled by such individuals.

"(B)(i) A for-profit business concern is presumed to be a disadvantaged business concern for purposes of subsection (a) if it is at least 51 percent owned by, or in the case of a concern which is a publicly traded company at least 51 percent of the stock of the company is owned by, one or more individuals who are members of the following groups:

"(I) Black Americans.
"(II) Hispanic Americans.
"(III) Native Americans.
"(IV) Asian Americans.
"(V) Women.
"(VI) Disabled Americans.

"(ii) The presumption established by clause (i) may be rebutted with respect to a particular business concern if it is reasonably established that the individual or individuals referred to in that clause with respect to that business concern are not experiencing impediments to establishing or developing such concern as a result of the individual's identification as a member of a group specified in that clause.

"(C) The following institutions are presumed to be disadvantaged business concerns for purposes of subsection (a):

"(i) Historically black colleges and universities, and colleges and universities having a student body in which 40 percent of the students are Hispanic.

"(ii) Minority institutions (as that term is defined by the Secretary of Education pursuant to the General Education Provision Act (20 U.S.C. 1221 et seq.)).

"(iii) Private and voluntary organizations controlled by individuals who are socially and economically disadvantaged.

"(D) A joint venture may be considered to be a disadvantaged business concern under subsection (a), notwithstanding the size of such joint venture, if—

"(i) a party to the joint venture is a disadvantaged business concern; and

"(ii) that party owns at least 51 percent of the joint venture.

A person who is not an economically disadvantaged individual or a disadvantaged business concern, as a party to a joint venture, may not be a party to more than 2 awarded contracts in a fiscal year solely by reason of this subparagraph.

"(E) Nothing in this paragraph shall prohibit any member of a racial or ethnic group that is not listed in subparagraph (B)(i) from establishing that they have been impeded in establishing or developing a business concern as a result of racial or ethnic discrimination.

"SEC. 1002. USE OF QUOTAS PROHIBITED.—Nothing in this title shall permit or require the use of quotas or a requirement that has the effect of a quota in determining eligibility under section 1001."

## § 7602. Definitions

When used in this chapter—

(a) The term "Administrator" means the Administrator of the Environmental Protection Agency.

(b) The term "air pollution control agency" means any of the following:

(1) A single State agency designated by the Governor of that State as the official State air pollution control agency for purposes of this chapter.

(2) An agency established by two or more States and having substantial powers or duties pertaining to the prevention and control of air pollution.

(3) A city, county, or other local government health authority, or, in the case of any city, county, or other local government in which there is an agency other than the health authority charged with responsibility for enforcing ordinances or laws relating to the prevention and control of air pollution, such other agency.

(4) An agency of two or more municipalities located in the same State or in different States and having substantial powers or duties

pertaining to the prevention and control of air pollution.

(5) An agency of an Indian tribe.

(c) The term "interstate air pollution control agency" means—

(1) an air pollution control agency established by two or more States, or

(2) an air pollution control agency of two or more municipalities located in different States.

(d) The term "State" means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa and includes the Commonwealth of the Northern Mariana Islands.

(e) The term "person" includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof.

(f) The term "municipality" means a city, town, borough, county, parish, district, or other public body created by or pursuant to State law.

(g) The term "air pollutant" means any air pollution agent or combination of such agents, including any physical, chemical, biological, radioactive (including source material, special nuclear material, and byproduct material) substance or matter which is emitted into or otherwise enters the ambient air. Such term includes any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the term "air pollutant" is used.

(h) All language referring to effects on welfare includes, but is not limited to, effects on soils, water, crops, vegetation, manmade materials, animals, wildlife, weather, visibility, and climate, damage to and deterioration of property, and hazards to transportation, as well as effects on economic values and on personal comfort and well-being, whether caused by transformation, conversion, or combination with other air pollutants.

(i) The term "Federal land manager" means, with respect to any lands in the United States, the Secretary of the department with authority over such lands.

(j) Except as otherwise expressly provided, the terms "major stationary source" and "major emitting facility" mean any stationary facility or source of air pollutants which directly emits, or has the potential to emit, one hundred tons per year or more of any air pollutant (including any major emitting facility or source of fugitive emissions of any such pollutant, as determined by rule by the Administrator).

(k) The terms "emission limitation" and "emission standard" mean a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter..[1]

(l) The term "standard of performance" means a requirement of continuous emission reduction, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction.

(m) The term "means of emission limitation" means a system of continuous emission reduction (including the use of specific technology or fuels with specified pollution characteristics).

(n) The term "primary standard attainment date" means the date specified in the applicable implementation plan for the attainment of a national primary ambient air quality standard for any air pollutant.

(o) The term "delayed compliance order" means an order issued by the State or by the Administrator to an existing stationary source, postponing the date required under an applicable implementation plan for compliance by such source with any requirement of such plan.

(p) The term "schedule and timetable of compliance" means a schedule of required measures including an enforceable sequence of actions or operations leading to compliance with an emission limitation, other limitation, prohibition, or standard.

(q) For purposes of this chapter, the term "applicable implementation plan" means the portion (or portions) of the implementation plan, or most recent revision thereof, which has been approved under section 7410 of this title, or promulgated under section 7410(c) of this title, or promulgated or approved pursuant to regulations promulgated under section 7601(d) of this title and which implements the relevant requirements of this chapter.

(r) INDIAN TRIBE.—The term "Indian tribe" means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village, which is Federally recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

(s) VOC.—The term "VOC" means volatile organic compound, as defined by the Administrator.

(t) PM–10.—The term "PM–10" means particulate matter with an aerodynamic diameter less than or equal to a nominal ten micrometers, as measured by such method as the Administrator may determine.

(u) NAAQS AND CTG.—The term "NAAQS" means national ambient air quality standard. The term "CTG" means a Control Technique Guideline published by the Administrator under section 7408 of this title.

(v) $NO_x$.—The term "$NO_x$" means oxides of nitrogen.

(w) CO.—The term "CO" means carbon monoxide.

(x) SMALL SOURCE.—The term "small source" means a source that emits less than 100 tons of regulated pollutants per year, or any class of persons that the Administrator determines, through regulation, generally lack technical ability or knowledge regarding control of air pollution.

(y) FEDERAL IMPLEMENTATION PLAN.—The term "Federal implementation plan" means a plan (or portion thereof) promulgated by the Administrator to fill all or a portion of a gap or

[1] So in original.

otherwise correct all or a portion of an inadequacy in a State implementation plan, and which includes enforceable emission limitations or other control measures, means or techniques (including economic incentives, such as marketable permits or auctions of emissions allowances), and provides for attainment of the relevant national ambient air quality standard.

(z) STATIONARY SOURCE.—The term "stationary source" means generally any source of an air pollutant except those emissions resulting directly from an internal combustion engine for transportation purposes or from a nonroad engine or nonroad vehicle as defined in section 7550 of this title.

(July 14, 1955, ch. 360, title III, § 302, formerly § 9, as added Pub. L. 88–206, § 1, Dec. 17, 1963, 77 Stat. 400, renumbered Pub. L. 89–272, title I, § 101(4), Oct. 20, 1965, 79 Stat. 992; amended Pub. L. 90–148, § 2, Nov. 21, 1967, 81 Stat. 504; Pub. L. 91–604, § 15(a)(1), (c)(1), Dec. 31, 1970, 84 Stat. 1710, 1713; Pub. L. 95–95, title II, § 218(c), title III, § 301, Aug. 7, 1977, 91 Stat. 761, 769; Pub. L. 95–190, § 14(a)(76), Nov. 16, 1977, 91 Stat. 1404; Pub. L. 101–549, title I, §§ 101(d)(4), 107(a), (b), 108(j), 109(b), title III, § 302(e), title VII, § 709, Nov. 15, 1990, 104 Stat. 2409, 2464, 2468, 2470, 2574, 2684.)

CODIFICATION

Section was formerly classified to section 1857h of this title.

PRIOR PROVISIONS

Provisions similar to those in subsecs. (b) and (d) of this section were contained in a section 1857e of this title, act July 14, 1955, ch. 360, § 6, 69 Stat. 323, prior to the general amendment of this chapter by Pub. L. 88–206.

AMENDMENTS

1990—Subsec. (b)(1) to (3). Pub. L. 101–549, § 107(a)(1), (2), struck out "or" at end of par. (3) and substituted periods for semicolons at end of pars. (1) to (3).

Subsec. (b)(5). Pub. L. 101–549, § 107(a)(3), added par. (5).

Subsec. (g). Pub. L. 101–549, § 108(j)(2), inserted at end "Such term includes any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the term 'air pollutant' is used.''

Subsec. (h). Pub. L. 101–549, § 109(b), inserted before period at end '', whether caused by transformation, conversion, or combination with other air pollutants''.

Subsec. (k). Pub. L. 101–549, § 303(e), inserted before period at end '', and any design, equipment, work practice or operational standard promulgated under this chapter.''

Subsec. (q). Pub. L. 101–549, § 101(d)(4), added subsec. (q).

Subsec. (r). Pub. L. 101–549, § 107(b), added subsec. (r).

Subsecs. (s) to (y). Pub. L. 101–549, § 108(j)(1), added subsecs. (s) to (y).

Subsec. (z). Pub. L. 101–549, § 709, added subsec. (z).

1977—Subsec. (d). Pub. L. 95–95, § 218(c), inserted "and includes the Commonwealth of the Northern Mariana Islands'' after "American Samoa''.

Subsec. (e). Pub. L. 95–190 substituted "individual, corporation'' for "individual corporation''.

Pub. L. 95–95, § 301(b), expanded definition of "person'' to include agencies, departments, and instrumentalities of the United States and officers, agents, and employees thereof.

Subsec. (g). Pub. L. 95–95, § 301(c), expanded definition of "air pollutant'' so as, expressly, to include physical, chemical, biological, and radioactive substances or

matter emitted into or otherwise entering the ambient air.

Subsecs. (i) to (p). Pub. L. 95–95, § 301(a), added subsecs. (i) to (p).

1970—Subsec. (a). Pub. L. 91–604, § 15(c)(1), substituted definition of "Administrator'' as meaning Administrator of the Environmental Protection Agency for definition of "Secretary'' as meaning Secretary of Health, Education, and Welfare.

Subsecs. (g), (h). Pub. L. 91–604, § 15(a)(1), added subsec. (g) defining "air pollutant'', redesignated former subsec. (g) as (h) and substituted references to effects on soil, water, crops, vegetation, manmade materials, animals, wildlife, weather, visibility, and climate for references to injury to agricultural crops and livestock, and inserted references to effects on economic values and on personal comfort and well being.

1967—Pub. L. 90–148 reenacted section without change.

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

§ 7603. Emergency powers

Notwithstanding any other provision of this chapter, the Administrator, upon receipt of evidence that a pollution source or combination of sources (including moving sources) is presenting an imminent and substantial endangerment to public health or welfare, or the environment, may bring suit on behalf of the United States in the appropriate United States district court to immediately restrain any person causing or contributing to the alleged pollution to stop the emission of air pollutants causing or contributing to such pollution or to take such other action as may be necessary. If it is not practicable to assure prompt protection of public health or welfare or the environment by commencement of such a civil action, the Administrator may issue such orders as may be necessary to protect public health or welfare or the environment. Prior to taking any action under this section, the Administrator shall consult with appropriate State and local authorities and attempt to confirm the accuracy of the information on which the action proposed to be taken is based. Any order issued by the Administrator under this section shall be effective upon issuance and shall remain in effect for a period of not more than 60 days, unless the Administrator brings an action pursuant to the first sentence of this section before the expiration of that period. Whenever the Administrator brings such an action within the 60-day period, such order shall remain in effect for an additional 14 days or for such longer period as may be authorized by the court in which such action is brought.

(July 14, 1955, ch. 360, title III, § 303, as added Pub. L. 91–604, § 12(a), Dec. 31, 1970, 84 Stat. 1705; amended Pub. L. 95–95, title III, § 302(a), Aug. 7, 1977, 91 Stat. 770; Pub. L. 101–549, title VII, § 704, Nov. 15, 1990, 104 Stat. 2681.)

CODIFICATION

Section was formerly classified to section 1857h–1 of this title.

PRIOR PROVISIONS

A prior section 303 of act July 14, 1955, was renumbered section 310 by Pub. L. 91–604 and is classified to section 7610 of this title.


AMENDMENTS

1990—Pub. L. 101–549, §704(2)–(5), struck out subsec. (a) designation before "Notwithstanding any other", struck out subsec. (b) which related to violation of or failure or refusal to comply with subsec. (a) orders, and substituted new provisions for provisions following first sentence which read as follows: "If it is not practicable to assure prompt protection of the health of persons solely by commencement of such a civil action, the Administrator may issue such orders as may be necessary to protect the health of persons who are, or may be, affected by such pollution source (or sources). Prior to taking any action under this section, the Administrator shall consult with the State and local authorities in order to confirm the correctness of the information on which the action proposed to be taken is based and to ascertain the action which such authorities are, or will be, taking. Such order shall be effective for a period of not more than twenty-four hours unless the Administrator brings an action under the first sentence of this subsection before the expiration of such period. Whenever the Administrator brings such an action within such period, such order shall be effective for a period of forty-eight hours or such longer period as may be authorized by the court pending litigation or thereafter."

Pub. L. 101–549, §704(1), which directed that "public health or welfare, or the environment" be substituted for "the health of persons and that appropriate State or local authorities have not acted to abate such sources", was executed by making the substitution for "the health of persons, and that appropriate State or local authorities have not acted to abate such sources" to reflect the probable intent of Congress.

1977—Pub. L. 95–95 designated existing provisions as subsec. (a), inserted provisions that, if it is not practicable to assure prompt protection of the health of persons solely by commencement of a civil action, the Administrator may issue such orders as may be necessary to protect the health of persons who are, or may be, affected by such pollution source (or sources), that, prior to taking any action under this section, the Administrator consult with the State and local authorities in order to confirm the correctness of the information on which the action proposed to be taken is based and to ascertain the action which such authorities are, or will be, taking, that the order be effective for a period of not more than twenty-four hours unless the Administrator brings an action under the first sentence of this subsection before the expiration of such period, and that, whenever the Administrator brings such an action within such period, such order be effective for a period of forty-eight hours or such longer period as may be authorized by the court pending litigation or thereafter, and added subsec. (b).

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

PENDING ACTIONS AND PROCEEDINGS

Suits, actions, and other proceedings lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under act July 14, 1955, the Clean Air Act, as in effect immediately prior to the enactment of Pub. L. 95–95 [Aug. 7, 1977], not to abate by reason of the taking effect of Pub. L. 95–95, see section 406(a) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

## § 7604. Citizen suits

### (a) Authority to bring civil action; jurisdiction

Except as provided in subsection (b), any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I (relating to significant deterioration of air quality) or part D of subchapter I (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties (except for actions under paragraph (2)). The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed, except that an action to compel agency action referred to in section 7607(b) of this title which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b) of this title. In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) shall be provided 180 days before commencing such action.

### (b) Notice

No action may be commenced—

(1) under subsection (a)(1)—

(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil

action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.[1]

(2) under subsection (a)(2) prior to 60 days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 7412(i)(3)(A) or (f)(4) of this title or an order issued by the Administrator pursuant to section 7413(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

**(c) Venue; intervention by Administrator; service of complaint; consent judgment**

(1) Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located.

(2) In any action under this section, the Administrator, if not a party, may intervene as a matter of right at any time in the proceeding. A judgment in an action under this section to which the United States is not a party shall not, however, have any binding effect upon the United States.

(3) Whenever any action is brought under this section the plaintiff shall serve a copy of the complaint on the Attorney General of the United States and on the Administrator. No consent judgment shall be entered in an action brought under this section in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator during which time the Government may submit its comments on the proposed consent judgment to the court and parties or may intervene as a matter of right.

**(d) Award of costs; security**

The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

**(e) Nonrestriction of other rights**

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—

(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or

(2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,

against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in the same manner as nongovernmental entities, see section 7418 of this title.

**(f) "Emission standard or limitation under this chapter" defined**

For purposes of this section, the term "emission standard or limitation under this chapter" means—

(1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,

(2) a control or prohibition respecting a motor vehicle fuel or fuel additive, or[2]

(3) any condition or requirement of a permit under part C of subchapter I (relating to significant deterioration of air quality) or part D of subchapter I (relating to nonattainment),,[3] section 7419 of this title (relating to primary nonferrous smelter orders), any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements, section 7545(e) and (f) of this title (relating to fuels and fuel additives), section 7491 of this title (relating to visibility protection), any condition or requirement under subchapter VI (relating to ozone protection), or any requirement under section 7411 or 7412 of this title (without regard to whether such requirement is expressed as an emission standard or otherwise);[4] or

(4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.[5]

which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

**(g) Penalty fund**

(1) Penalties received under subsection (a) shall be deposited in a special fund in the United States Treasury for licensing and other services. Amounts in such fund are authorized to be appropriated and shall remain available until expended, for use by the Administrator to finance air compliance and enforcement activities. The Administrator shall annually report to the Congress about the sums deposited into the fund,

---

[1] So in original. The period probably should be ", or".

[2] So in original. The word "or" probably should not appear.
[3] So in original.
[4] So in original. The semicolon probably should be a comma.
[5] So in original. The period probably should be a comma.

TITLE 42—THE PUBLIC HEALTH AND WELFARE

the sources thereof, and the actual and proposed uses thereof.

(2) Notwithstanding paragraph (1) the court in any action under this subsection[6] to apply civil penalties shall have discretion to order that such civil penalties, in lieu of being deposited in the fund referred to in paragraph (1), be used in beneficial mitigation projects which are consistent with this chapter and enhance the public health or the environment. The court shall obtain the view of the Administrator in exercising such discretion and selecting any such projects. The amount of any such payment in any such action shall not exceed $100,000.

(July 14, 1955, ch. 360, title III, § 304, as added Pub. L. 91–604, § 12(a), Dec. 31, 1970, 84 Stat. 1706; amended Pub. L. 95–95, title III, § 303(a)–(c), Aug. 7, 1977, 91 Stat. 771, 772; Pub. L. 95–190, § 14(a) (77), (78), Nov. 16, 1977, 91 Stat. 1404; Pub. L. 101–549, title III, § 302(f), title VII, § 707(a)–(g), Nov. 15, 1990, 104 Stat. 2574, 2682, 2683.)

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in subsec. (d), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

CODIFICATION

Section was formerly classified to section 1857h–2 of this title.

PRIOR PROVISIONS

A prior section 304 of act July 14, 1955, was renumbered section 311 by Pub. L. 91–604 and is classified to section 7611 of this title.

AMENDMENTS

1990—Subsec. (a). Pub. L. 101–549, § 707(a), (f), in closing provisions, inserted before period at end '', and to apply any appropriate civil penalties (except for actions under paragraph (2))'' and inserted sentences at end giving courts jurisdiction to compel agency action unreasonably delayed and requiring 180 days notice prior to commencement of action.

Subsec. (a)(1), (3). Pub. L. 101–549, § 707(g), inserted ''to have violated (if there is evidence that the alleged violation has been repeated) or'' before ''to be in violation''.

Subsec. (b). Pub. L. 101–549, § 302(f), substituted ''section 7412(i)(3)(A) or (f)(4)'' for ''section 7412(c)(1)(B)'' in closing provisions.

Subsec. (c)(2). Pub. L. 101–549, § 707(c), amended par. (2) generally. Prior to amendment, par. (2) read as follows: ''In such action under this section, the Administrator, if not a party, may intervene as a matter of right.''

Subsec. (c)(3). Pub. L. 101–549, § 707(d), added subsec. (c)(3).

Subsec. (f)(3). Pub. L. 101–549, § 707(e), struck out ''any condition or requirement of section 7413(d) of this title (relating to certain enforcement orders)'' before '', section 7419 of this title'', substituted ''subchapter VI'' for ''part B of subchapter I'', and substituted ''; or'' for period at end.

Subsec. (f)(4). Pub. L. 101–549, § 707(e), which directed that par. (4) be added at end of subsec. (f), was executed by adding par. (4) after par. (3), to reflect the probable intent of Congress.

Subsec. (g). Pub. L. 101–549, § 707(b), added subsec. (g).

1977—Subsec. (a)(3). Pub. L. 95–190, § 14(a)(77), inserted ''or modified'' after ''new''.

Pub. L. 95–95, § 303(a), added subsec. (a)(3).

Subsec. (e). Pub. L. 95–95, § 303(c), inserted provisions which prohibited any construction of this section or

any other law of the United States which would prohibit, exclude, or restrict any State, local, or interstate authority from bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court against the United States or bringing any administrative enforcement action or obtaining any administrative remedy or sanction against the United States in any State or local administrative agency, department, or instrumentality under State or local law.

Subsec. (f)(3). Pub. L. 95–190, § 14(a)(78), inserted '', or'' after ''(relating to ozone protection)'', substituted ''any condition or requirement under an'' for ''requirements under an'', and struck out ''or'' before ''section 7491''.

Pub. L. 95–95, § 303(b), added par. (3).

EFFECTIVE DATE OF 1990 AMENDMENT

Pub. L. 101–549, title VII, § 707(g), Nov. 15, 1990, 104 Stat. 2683, provided that: ''The amendment made by this subsection [amending this section] shall take effect with respect to actions brought after the date 2 years after the enactment of the Clean Air Act Amendments of 1990 [Nov. 15, 1990].''

EFFECTIVE DATE OF 1977 AMENDMENT

Amendment by Pub. L. 95–95 effective Aug. 7, 1977, except as otherwise expressly provided, see section 406(d) of Pub. L. 95–95, set out as a note under section 7401 of this title.

TERMINATION OF REPORTING REQUIREMENTS

For termination, effective May 15, 2000, of reporting provisions in subsec. (g)(1) of this section, see section 3003 of Pub. L. 104–66, as amended, set out as a note under section 1113 of Title 31, Money and Finance, and the 6th item on page 165 of House Document No. 103–7.

PENDING ACTIONS AND PROCEEDINGS

Suits, actions, and other proceedings lawfully commenced by or against the Administrator or any other officer or employee of the United States in his official capacity or in relation to the discharge of his official duties under act July 14, 1955, the Clean Air Act, as in effect immediately prior to the enactment of Pub. L. 95–95 [Aug. 7, 1977], not to abate by reason of the taking effect of Pub. L. 95–95, see section 406(a) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

MODIFICATION OR RESCISSION OF RULES, REGULATIONS, ORDERS, DETERMINATIONS, CONTRACTS, CERTIFICATIONS, AUTHORIZATIONS, DELEGATIONS, AND OTHER ACTIONS

All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued made, or taken by or pursuant to act July 14, 1955, the Clean Air Act, as in effect immediately prior to the date of enactment of Pub. L. 95–95 [Aug. 7, 1977] to continue in full force and effect until modified or rescinded in accordance with act July 14, 1955, as amended by Pub. L. 95–95 [this chapter], see section 406(b) of Pub. L. 95–95, set out as an Effective Date of 1977 Amendment note under section 7401 of this title.

§ 7605. Representation in litigation

(a) Attorney General; attorneys appointed by Administrator

The Administrator shall request the Attorney General to appear and represent him in any civil action instituted under this chapter to which the Administrator is a party. Unless the Attorney General notifies the Administrator that he will appear in such action, within a reasonable time, attorneys appointed by the Administrator shall appear and represent him.

[6]So in original. Probably should be ''this section''.

**Environmental Protection Agency**                    **§ 51.1105**

**§ 51.1102  Classification and nonattainment area planning provisions.**

An area designated nonattainment for the 2008 ozone NAAQS will be classified in accordance with CAA section 181, as interpreted in § 51.1103(a), and will be subject to the requirements of subpart 2 of part D of title I of the CAA that apply for that classification.

**§ 51.1103  Application of classification and attainment date provisions in CAA section 181 to areas subject to § 51.1102.**

(a) In accordance with CAA section 181(a)(1), each area designated nonattainment for the 2008 ozone NAAQS shall be classified by operation of law at the time of designation. The classification shall be based on the 8-hour design value for the area at the time of designation, in accordance with Table 1 below. A state may request a higher or lower classification as provided in paragraphs (b) and (c) of this section. For each area classified under this section, the attainment date for the 2008 NAAQS shall be as expeditious as practicable but not later than the date provided in Table 1 as follows:

TABLE 1—CLASSIFICATIONS AND ATTAINMENT DATES FOR 2008 8-HOUR OZONE NAAQS (0.075 PPM) FOR AREAS SUBJECT TO CFR SECTION 51.1102

| Area class | | 8-hour design value (ppm ozone) | Primary standard attainment date (years after the effective date of designation for 2008 primary NAAQS) |
|---|---|---|---|
| Marginal | from | 0.076 | 3 |
| | up to* | 0.086 | |
| Moderate | from | 0.086 | 6 |
| | up to* | 0.100 | |
| Serious | from | 0.100 | 9 |
| | up to* | 0.113 | |
| Severe-15 | from | 0.113 | 15 |
| | up to* | 0.119 | |
| Severe-17 | from | 0.119 | 17 |
| | up to* | 0.175 | |
| Extreme | equal to or above | 0.175 | 20 |

*But not including

(b) A state may request, and the Administrator must approve, a higher classification for any reason in accordance with CAA section 181(b)(3).

(c) A state may request, and the Administrator may in the Administrator's discretion approve, a higher or lower classification in accordance with CAA section 181(a)(4).

(d) The following nonattainment areas are reclassified for the 2008 ozone NAAQS as follows: Serious—Ventura County, CA; Severe—Los Angeles-San Bernardino Counties (West Mojave Desert), Riverside County (Coachella Valley), and Sacramento Metro, CA; Extreme—Los Angeles-South Coast Air Basin, and San Joaquin Valley, CA.

[77 FR 30170, May 21, 2012, as amended at 80 FR 12313, Mar. 6, 2015]

**§ 51.1104  [Reserved]**

**§ 51.1105  Transition from the 1997 ozone NAAQS to the 2008 ozone NAAQS and anti-backsliding.**

(a) *Requirements that continue to apply after revocation of the 1997 ozone NAAQS*—(1) *2008 ozone NAAQS nonattainment and 1997 ozone NAAQS nonattainment.* The following requirements apply to an area designated nonattainment for the 2008 ozone NAAQS and also designated nonattainment for the 1997 ozone NAAQS, or nonattainment for both the 1997 and 1-hour ozone NAAQS, at the time of revocation of the respective ozone NAAQS: The area remains subject to the obligation to adopt and implement the applicable requirements of § 51.1100(o), for any ozone NAAQS for which it was designated

423

nonattainment at the time of revocation, in accordance with its classification for that NAAQS at the time of that revocation, except as provided in paragraph (b) of this section.

(2) *2008 ozone NAAQS nonattainment and 1997 ozone NAAQS maintenance.* For an area designated nonattainment for the 2008 ozone NAAQS that was redesignated to attainment for the 1997 ozone NAAQS prior to April 6, 2015 (hereinafter a ''maintenance area'') the SIP, including the maintenance plan, is considered to satisfy the applicable requirements of 40 CFR 51.1100(o) for the revoked NAAQS. The measures in the SIP and maintenance plan shall continue to be implemented in accordance with the terms in the SIP. Any measures associated with applicable requirements that were shifted to contingency measures prior to April 6, 2015 may remain in that form. After April 6, 2015, and to the extent consistent with any SIP for the 2008 ozone NAAQS and with CAA sections 110(l) and 193, the state may request that obligations under the applicable requirements of § 51.1100(o) be shifted to the SIP's list of maintenance plan contingency measures for the area.

(3) *2008 ozone NAAQS attainment and 1997 ozone NAAQS nonattainment.* For an area designated attainment for the 2008 ozone NAAQS, and designated nonattainment for the 1997 ozone NAAQS as of April 6, 2015 or for both the 1997 and the 1-hour ozone NAAQS as of the respective dates of their revocations, the area is no longer subject to nonattainment NSR and the state may at any time request that the nonattainment NSR provisions applicable to the area be removed from the SIP. The state may request, consistent with CAA sections 110(l) and 193, that SIP measures adopted to satisfy other applicable requirements of § 51.1100(o) be shifted to the SIP's list of maintenance plan contingency measures for the area. The area's approved PSD SIP shall be considered to satisfy the state's obligations with respect to the area's maintenance of the 2008 ozone NAAQS pursuant to CAA section 110(a)(1).

(4) *2008 ozone NAAQS attainment and 1997 ozone NAAQS maintenance.* An area designated attainment for the 2008

ozone NAAQS with an approved CAA section 175A maintenance plan for the 1997 ozone NAAQS is considered to satisfy the applicable requirements of 40 CFR 51.1100(o) through implementation of the SIP and maintenance plan provisions for the area. After April 6, 2015, and to the extent consistent with CAA sections 110(l) and 193, the state may request that obligations under the applicable requirements of 40 CFR 51.1100(o) be shifted to the list of maintenance plan contingency measures for the area. For an area that is initially designated attainment for the 2008 ozone NAAQS and which has been redesignated to attainment for the 1997 ozone NAAQS with an approved CAA section 175A maintenance plan and an approved PSD SIP, the area's approved maintenance plan and the state's approved PSD SIP for the area are considered to satisfy the state's obligations with respect to the area's maintenance of the 2008 ozone NAAQS pursuant to CAA section 110(a)(1).

(b) *Effect of Redesignation or Redesignation Substitute.* (1) An area remains subject to the anti-backsliding obligations for a revoked NAAQS under paragraphs (a)(1) and (2) of this section until either EPA approves a redesignation to attainment for the area for the 2008 ozone NAAQS; or EPA approves a demonstration for the area in a redesignation substitute procedure for a revoked NAAQS. Under this redesignation substitute procedure for a revoked NAAQS, and for this limited anti-backsliding purpose, the demonstration must show that the area has attained that revoked NAAQS due to permanent and enforceable emission reductions and that the area will maintain that revoked NAAQS for 10 years from the date of EPA's approval of this showing.

(2) If EPA, after notice-and-comment rulemaking, approves a redesignation to attainment, the state may request that provisions for nonattainment NSR be removed from the SIP, and that other anti-backsliding obligations be shifted to contingency measures provided that such action is consistent with CAA sections 110(l) and 193. If EPA, after notice and comment rulemaking, approves a redesignation substitute for a revoked NAAQS, the state

may request that provisions for nonattainment NSR for that revoked NAAQS be removed, and that other anti-backsliding obligations for that revoked NAAQS be shifted to contingency measures provided that such action is consistent with CAA sections 110(l) and 193.

(c) *Portions of an area designated nonattainment or attainment for the 2008 ozone NAAQS that remain subject to the obligations identified in paragraph (a) of this section.* Only that portion of the designated nonattainment or attainment area for the 2008 ozone NAAQS that was required to adopt the applicable requirements in § 51.1100(o) for purposes of the 1-hour or 1997 ozone NAAQS is subject to the obligations identified in paragraph (a) of this section. Subpart C of 40 CFR part 81 identifies the areas designated nonattainment and associated area boundaries for the 1997 ozone NAAQS at the time of revocation. Areas that are designated nonattainment for the 1997 ozone NAAQS at the time of designation for the 2008 ozone NAAQS may be redesignated to attainment prior to the effective date of revocation of that ozone NAAQS.

(d) *Obligations under the 1997 ozone NAAQS that no longer apply after revocation of the 1997 ozone NAAQS*—(1) *Second 10-year Maintenance plans.* As of April 6, 2015, an area with an approved 1997 ozone NAAQS maintenance plan under CAA section 175A is not required to submit a second 10-year maintenance plan for the 1997 ozone NAAQS 8 years after approval of the initial 1997 ozone NAAQS maintenance plan.

(2) *Determinations of failure to attain the 1997 and/or 1-hour NAAQS.* (i) As of April 6, 2015, the EPA is no longer obligated to determine pursuant to CAA section 181(b)(2) or section 179(c) whether an area attained the 1997 ozone NAAQS by that area's attainment date for the 1997 ozone NAAQS.

(ii) As of April 6, 2015, the EPA is no longer obligated to reclassify an area to a higher classification for the 1997 ozone NAAQS based upon a determination that the area failed to attain the 1997 ozone NAAQS by the area's attainment date for the 1997 ozone NAAQS.

(iii) For the revoked 1-hour and 1997 ozone NAAQS, the EPA is required to determine whether an area attained the 1-hour or 1997 ozone NAAQS by the area's attainment date solely for anti-backsliding purposes to address an applicable requirement for nonattainment contingency measures and CAA section 185 fee programs. In making such a determination, the EPA may consider and apply the provisions of CAA section 181(a)(5) and former 40 CFR 51.907 in interpreting whether a 1-year extension of the attainment date is applicable under CAA section 172(a)(2)(C).

(e) *Continued applicability of the FIP and SIP requirements pertaining to interstate transport under CAA section 110(a)(2)(D)(i) and (ii) after revocation of the 1997 ozone NAAQS.* All control requirements associated with a FIP or approved SIP in effect for an area as of April 6, 2015, such as the $NO_X$ SIP Call, the CAIR, or the CSAPR shall continue to apply after revocation of the 1997 ozone NAAQS. Control requirements approved into the SIP pursuant to obligations arising from CAA section 110(a)(2)(D)(i) and (ii), including 40 CFR 51.121, 51.122, 51.123 and 51.124, may be modified by the state only if the requirements of §§ 51.121, 51.122, 51.123 and 51.124, including statewide $NO_X$ emission budgets continue to be in effect. Any such modification must meet the requirements of CAA section 110(l).

(f) *New source review.* An area designated nonattainment for the 2008 ozone NAAQS and designated nonattainment for the 1997 ozone NAAQS on April 6, 2015 remains subject to the obligation to adopt and implement the major source threshold and offset requirements for nonattainment NSR that apply or applied to the area pursuant to CAA sections 172(c)(5), 173 and 182 based on the highest of: (i) The area's classification under CAA section 181(a)(1) for the 1-hour NAAQS as of the effective date of revocation of the 1-hour ozone NAAQS; (ii) the area's classification under 40 CFR 51.903 for the 1997 ozone NAAQS as of the date a permit is issued or as of April 6, 2015, whichever is earlier; and (iii) the area's classification under § 51.1103 for the 2008 ozone NAAQS. Upon removal of nonattainment NSR obligations for a revoked NAAQS under § 51.1105(b), the state remains subject to the obligation

to adopt and implement the major source threshold and offset requirements for nonattainment NSR that apply or applied to the area for the remaining applicable NAAQS consistent with this paragraph.

[80 FR 12314, Mar. 6, 2015]

**§ 51.1106 Redesignation to nonattainment following initial designations.**

For any area that is initially designated attainment for the 2008 ozone NAAQS and that is subsequently redesignated to nonattainment for the 2008 ozone NAAQS, any absolute, fixed date applicable in connection with the requirements of this part other than an attainment date is extended by a period of time equal to the length of time between the effective date of the initial designation for the 2008 ozone NAAQS and the effective date of redesignation, except as otherwise provided in this subpart. The maximum attainment date for a redesignated area would be based on the area's classification, consistent with Table 1 in § 51.1103.

[80 FR 12314, Mar. 6, 2015]

**§ 51.1107 Determining eligibility for 1-year attainment date extensions for the 2008 ozone NAAQS under CAA section 181(a)(5).**

(a) A nonattainment area will meet the requirement of CAA section 181(a)(5)(B) pertaining to 1-year extensions of the attainment date if:

(1) For the first 1-year extension, the area's 4th highest daily maximum 8 hour average in the attainment year is 0.075 ppm or less.

(2) For the second 1-year extension, the area's 4th highest daily maximum 8 hour value, averaged over both the original attainment year and the first extension year, is 0.075 ppm or less.

(b) For purposes of paragraph (a) of this section, the area's 4th highest daily maximum 8 hour average for a year shall be from the monitor with the highest 4th highest daily maximum 8 hour average for that year of all the monitors that represent that area.

[80 FR 12314, Mar. 6, 2015]

**§ 51.1108 Modeling and attainment demonstration requirements.**

(a) An area classified as Moderate under § 51.1103(a) shall be subject to the attainment demonstration requirement applicable for that classification under CAA section 182(b), and such demonstration is due no later than 36 months after the effective date of the area's designation for the 2008 ozone NAAQS.

(b) An area classified as Serious or higher under § 51.1103(a) shall be subject to the attainment demonstration requirement applicable for that classification under CAA section 182(c), and such demonstration is due no later than 48 months after the effective date of the area's designation for the 2008 ozone NAAQS.

(c) Attainment demonstration criteria. An attainment demonstration due pursuant to paragraph (a) or (b) of this section must meet the requirements of § 51.112; the adequacy of an attainment demonstration shall be demonstrated by means of a photochemical grid model or any other analytical method determined by the Administrator, in the Administrator's discretion, to be at least as effective.

(d) Implementation of control measures. For each nonattainment area, the state must provide for implementation of all control measures needed for attainment no later than the beginning of the attainment year ozone season.

[80 FR 12314, Mar. 6, 2015]

**§ 51.1109 [Reserved]**

**§ 51.1110 Requirements for reasonable further progress (RFP).**

(a) *RFP for nonattainment areas classified pursuant to § 51.1103.* The RFP requirements specified in CAA section 182 for that area's classification shall apply.

(1) *Submission deadline.* For each area classified as Moderate or higher pursuant to § 51.1103, the state shall submit a SIP revision no later than 36 months after the effective date of designation as nonattainment for the 2008 ozone NAAQS that provides for RFP as described in paragraphs (a)(2) through (4) of this section.

(2) *RFP requirements for areas with an approved 1-hour or 1997 ozone NAAQS 15*


## Environmental Protection Agency §81.339

### §81.339 Pennsylvania.

PENNSYLVANIA—TSP

| Designated area | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|
| I. Metropolitan Philadelphia Interstate AQCR: | | | | |
| (A) City of Philadelphia: | | | | |
| Census tracts 1–12, 125–142, 144–157, 162–177, 190–205, 293, 294, 298–302, 315–321, 323, 325, 326, 329–332 | | X | | |
| Census tracts 13–75, 143, 158–161, 178–189, 295–297, 322, 324, 327 | | | X | |
| Balance of city | | | | X |
| (B) Montgomery County: | | | | |
| Conshohocken Boro | | | | X |
| Pottstown Boro | | X | | |
| West Pottsgrove Township | | | X | |
| Upper Pottsgrove Township | | | X | |
| (C) Chester County: | | | | |
| South Coatesville Boro | | X | | |
| City of Coatesville | | | X | |
| (D) Bucks County: Doylestown Township | | | X | |
| (E) Remaining Pennsylvania Portions of AQCR | | | | X |
| II. Northeast Pennsylvania Interstate AQCR: | | | | |
| (A) Scranton, W-B Air Basin: | | | | |
| Lackawanna County: Throop Boro | | | | X |
| Luzerne County: City of Wilkes-Barre | | | | X |
| (B) A-B-E Air Basin: | | | | |
| Lehigh County: | | | | |
| Coplay Boro | X | | | |
| Whitehall Township | X | | | |
| Northampton County: | | | | |
| Northampton Boro | X | | | |
| Allen Township | X | | | |
| (C) Reading Air Basin | | | | X |
| (D) Carbon County | | | | X |
| (E) Remaining Portions of AQCR | | | | X |
| III. South Central Pennsylvania Intrastate AQCR: | | | | |
| (A) Harrisburg Air Basin | | | | X |
| (B) Lancaster Air Basin: | | | | |
| Lancaster County: | | | | |
| City of Lancaster | | X | | |
| Manheim Township | | X | | |
| (C) York Air Basin: | | | | |
| York County: | | | | |
| City of York | | | | X |
| West York Boro | | X | | |
| West Manchester Township | | X | | |
| (D) Remaining Portions of AQCR | | | | X |
| IV. Central Pennsylvania Intrastate AQCR: | | | | |
| (A) Johnstown Air Basin: Cambria County: | | | | |
| City of Johnstown | | | | X |
| Dale Boro | | | | X |
| East Conemaugh Boro | | | | X |
| Franklin Boro | | | | X |
| East Taylor Twp | | | | X |
| Middle Taylor Twp | | | | X |
| West Taylor Twp | | | | X |
| (B) Blair County: | | | | |
| City of Altoona | | X | | |
| Allegheny Township | | | X | |
| Logan Township | | | X | |
| (C) Remaining Portions of AQCR | | | | X |
| (D) Remaining Portions of AQCR | | | | X |
| V. Southwest Pennsylvania Intrastate AQCR: | | | | |
| (A) Monongahela Valley Air Basin: | | | | |
| Fayette County | | | | X |
| Washington County | | | | X |
| Westmoreland County: | | | | |
| City of Monessen | X | | | |
| Rostraver Township | X | | | |

707

§ 81.339                                                    40 CFR Ch. I (7–1–19 Edition)

PENNSYLVANIA—TSP—Continued

| Designated area | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|
| (B) Allegheny County Air Basin: | | | | |
| (1) A three mile wide strip which is within a perpendicular distance two miles north and east and one mile south and west of the river center line with terminus points as follows: | | | | |
| (a) The Beaver County line to the I–79 Bridge on the Ohio River | | | | X |
| (b) I–79 to the McKees Rocks Bridge on the Ohio River | | | | X |
| (c) McKees Rocks Bridge to the Birmingham Bridge on the Ohio and Monongahela Rivers | | X | | |
| (d) Birmingham Bridge to the Glenwood Bridge on the Monongahela River | X | | | |
| (e) Glenwood Bridge to the Mansfield Bridge (Dravosburg) on the Monongahela River | X | | | |
| (f) Mansfield Bridge to the Westmoreland County line on the Monongahela River | X | | | |
| (2) The area within a half-mile radius of the Greater Pittsburgh Airport monitor | | X | | |
| (3) The one mile wide strip centered on Turtle Creek running from area (V)(B)(1)(e) above to the Westmoreland County line | X | | | |
| (4) The Area #9 within Allegheny County within a radius of 2 miles of the Springdale Monitor | | | | X |
| (5) The remaining portions of the Allegheny County Air Basin | | | | X |
| (C) Lower Beaver Valley Air Basin: | | | | |
| (1) Aliquippa Boro | X | | | |
| (2) Baden Boro | X | | | |
| (3) Midland Boro | X | | | |
| (4) Remaining Portions | | X | | |
| (D) Westmoreland County | | | | X |
| (E) Remaining Portions of AQCR | | | | X |
| VI. Northwest Penna. Interstate AQCR: | | | | |
| (A) Upper Beaver Valley Air Basin: | | | | |
| (1) Ellwood City Boro | X | | | |
| (2) City of New Castle | X | | | |
| (3) Remaining Portions | | X | | |
| (B) Erie Air Basin: | | | | |
| City of Erie | | X | | |
| Wesleyville Boro | | X | | |
| Lawrence Park Township | | X | | |
| (C) Mercer County: | | | | |
| City of Sharon | X | | | |
| City of Farrell | X | | | |
| Sharpsville Boro | | | X | |
| Wheatland Boro | | | X | |
| Hickory Township | | | X | |
| (D) Remaining Portions of AQCR | | | | X |

PENNSYLVANIA—1971 SULFUR DIOXIDE NAAQS (PRIMARY AND SECONDARY)

| Designated area | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|
| I. Metropolitan Philadelphia Interstate AQCR: | | | | |
| (A) City of Philadelphia | | | | X |
| (B) Delaware County | | | | X |
| (C) Remaining Pennsylvania Portion of AQCR | | | | X |
| II. Northeast Pennsylvania Intrastate AQCR | | | | X |
| III. South Central Pennsylvania Intrastate AQCR | | | | X |
| IV. Central Pennsylvania Intrastate AQCR: | | | | X |
| V. Southwest Pennsylvania Intrastate AQCR:. | | | | |

708

**Environmental Protection Agency** §81.339

PENNSYLVANIA—1971 SULFUR DIOXIDE NAAQS (PRIMARY AND SECONDARY)—Continued

| Designated area | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|
| (A) Monongahela Valley Air Basin .......................................... | .................... | .................... | X | |
| (B) Allegheny County Air Basin:. | | | | |
| (1) The areas within a two-mile radius of the Hazelwood monitor ........................................................................ | .................... | .................... | .................... | X |
| (2) That portion of Allegheny County within an eight-mile radius of the Duquesne Golf Association Club House in West Mifflin excluding the nonattainment area (#1) .......... | .................... | .................... | .................... | X |
| (3) The area within a two-mile radius of the Bellevue monitor ........................................................................ | .................... | .................... | X | |
| (4) The remaining portions of the Allegheny County Air Basin ......................................................................... | .................... | .................... | .................... | X |
| (C) Beaver Valley Air Basin (Beaver County) ...................... | .................... | .................... | .................... | X |
| (D) Armstrong County:. | | | | |
| Madison Twp ......................................................................... | X | | | |
| Mahoning Twp ....................................................................... | X | | | |
| Boggs Twp ............................................................................ | X | | | |
| Washington Twp .................................................................... | X | | | |
| Pine Twp ............................................................................... | X | | | |
| (E) Remainder of AQCR ........................................................ | .................... | .................... | .................... | X |
| VI. Northwest Pennsylvania Intrastate AQCR:. | | | | |
| (A) Warren County:. | | | | |
| Conewango Twp .................................................................... | .................... | .................... | .................... | X |
| Mead Twp ............................................................................. | .................... | .................... | .................... | X |
| Clarendon Boro .................................................................... | .................... | .................... | .................... | X |
| Warren Boro .......................................................................... | .................... | .................... | .................... | X |
| Pleasant Township ................................................................ | .................... | .................... | .................... | X |
| Glade Township ..................................................................... | .................... | .................... | .................... | X |
| (B) Beaver Valley Air Basin (Lawrence County) ................... | .................... | .................... | X | |
| (C) Remaining Pennsylvania Portion of the AQCR ............... | .................... | .................... | .................... | X |

PENNSYLVANIA—2010 SULFUR DIOXIDE NAAQS (PRIMARY)

| Designated area [1] [3] | Designation | |
|---|---|---|
| | Date [2] | Type |
| Allegheny, PA | | |
| Allegheny County (part) ................................................................ | 10/4/13 | Nonattainment. |
| The area consisting of: | | |
| Borough of Braddock | | |
| Borough of Dravosburg | | |
| Borough of East McKeesport | | |
| Borough of East Pittsburgh | | |
| Borough of Elizabeth | | |
| Borough of Glassport | | |
| Borough of Jefferson Hills | | |
| Borough of Liberty | | |
| Borough of Lincoln | | |
| Borough of North Braddock | | |
| Borough of Pleasant Hills | | |
| Borough of Port Vue | | |
| Borough of Versailles | | |
| Borough of Wall | | |
| Borough of West Elizabeth | | |
| Borough of West Mifflin | | |
| City of Clairton | | |
| City of Duquesne | | |
| City of McKeesport | | |
| Elizabeth Township | | |
| Forward Township | | |
| North Versailles Township | | |
| Beaver, PA | | |
| Beaver County (part) ..................................................................... | 10/4/13 | Nonattainment. |
| Area consisting of Industry Borough, Shippingport Borough, Midland Borough, Brighton Township, Potter Township and Vanport Township | | |
| Indiana, PA ......................................................................................... | 10/4/13 | Nonattainment. |

709

**§ 81.339**                                      **40 CFR Ch. I (7–1–19 Edition)**

PENNSYLVANIA—2010 SULFUR DIOXIDE NAAQS (PRIMARY)—Continued

| Designated area [1] [3] | Designation | |
|---|---|---|
| | Date [2] | Type |
| Indiana County | | |
| Armstrong County (part) | | |
|     Area consisting of Plumcreek Township, South Bend Township, and Elderton Borough | | |
| Warren, PA | | |
|     Warren County (part) | 10/4/13 | Nonattainment. |
|         Area consisting of Conewango Township, Glade Township, Pleasant Township, and the City of Warren | | |
| Allegheny (part) | ...................... | Unclassifiable. |
|     Remainder of County | | |
| Cambria County | ...................... | Unclassifiable. |
| Carbon-Schuylkill Area | ...................... | Unclassifiable. |
|     Carbon County | | |
|     Schuylkill County | | |
| Clearfield County | ...................... | Unclassifiable. |
| Lawrence County | ...................... | Unclassifiable. |
| Lehigh-Northampton Area | ...................... | Unclassifiable. |
|     Lehigh County | | |
|     Northampton County | | |
| Adams County | ...................... | Attainment/Unclassifiable. |
| Armstrong County (part) | ...................... | Attainment/Unclassifiable. |
|     Remainder of County | | |
| Beaver County (part) | ...................... | Attainment/Unclassifiable. |
|     Remainder of County | | |
| Bedford County | ...................... | Attainment/Unclassifiable. |
| Berks County | ...................... | Attainment/Unclassifiable. |
| Blair County | ...................... | Attainment/Unclassifiable. |
| Bradford County | ...................... | Attainment/Unclassifiable. |
| Bucks County | ...................... | Attainment/Unclassifiable. |
| Butler County | ...................... | Attainment/Unclassifiable. |
| Cameron County | ...................... | Attainment/Unclassifiable. |
| Centre County | ...................... | Attainment/Unclassifiable. |
| Chester County | ...................... | Attainment/Unclassifiable. |
| Clarion County | ...................... | Attainment/Unclassifiable. |
| Clinton County | ...................... | Attainment/Unclassifiable. |
| Columbia County | ...................... | Attainment/Unclassifiable. |
| Crawford County | ...................... | Attainment/Unclassifiable. |
| Cumberland County | ...................... | Attainment/Unclassifiable. |
| Dauphin County | ...................... | Attainment/Unclassifiable. |
| Elk County | ...................... | Attainment/Unclassifiable. |
| Erie County | ...................... | Attainment/Unclassifiable. |
| Fayette County | ...................... | Attainment/Unclassifiable. |
| Forest County | ...................... | Attainment/Unclassifiable. |
| Franklin County | ...................... | Attainment/Unclassifiable. |
| Fulton County | ...................... | Attainment/Unclassifiable. |
| Greene County | ...................... | Attainment/Unclassifiable. |
| Huntingdon County | ...................... | Attainment/Unclassifiable. |
| Jefferson County | ...................... | Attainment/Unclassifiable. |
| Juniata County | ...................... | Attainment/Unclassifiable. |
| Lackawanna County | ...................... | Attainment/Unclassifiable. |
| Lancaster County | ...................... | Attainment/Unclassifiable. |
| Lebanon County | ...................... | Attainment/Unclassifiable. |
| Luzerne County | ...................... | Attainment/Unclassifiable. |
| Lycoming County | ...................... | Attainment/Unclassifiable. |
| McKean County | ...................... | Attainment/Unclassifiable. |
| Mercer County | ...................... | Attainment/Unclassifiable. |
| Mifflin County | ...................... | Attainment/Unclassifiable. |
| Monroe County | ...................... | Attainment/Unclassifiable. |
| Montgomery County | ...................... | Attainment/Unclassifiable. |
| Montour County | ...................... | Attainment/Unclassifiable. |
| Northumberland County | ...................... | Attainment/Unclassifiable. |
| Perry County | ...................... | Attainment/Unclassifiable. |
| Philadelphia-Delaware | ...................... | Attainment/Unclassifiable. |
|     Delaware County | | |
|     Philadelphia County | | |
| Pike County | ...................... | Attainment/Unclassifiable. |
| Potter County | ...................... | Attainment/Unclassifiable. |
| Snyder County | ...................... | Attainment/Unclassifiable. |
| Somerset County | ...................... | Attainment/Unclassifiable. |
| Sullivan County | ...................... | Attainment/Unclassifiable. |

710

**Environmental Protection Agency** §81.339

PENNSYLVANIA—2010 SULFUR DIOXIDE NAAQS (PRIMARY)—Continued

| Designated area [1] [3] | Designation | |
|---|---|---|
| | Date [2] | Type |
| Susquehanna County ............................................................. | ...................... | Attainment/Unclassifiable. |
| Tioga County ......................................................................... | ...................... | Attainment/Unclassifiable. |
| Union County ........................................................................ | ...................... | Attainment/Unclassifiable. |
| Venango County .................................................................... | ...................... | Attainment/Unclassifiable. |
| Warren County (part) ............................................................ | ...................... | Attainment/Unclassifiable. |
| Remainder of County | | |
| Washington County ............................................................... | ...................... | Attainment/Unclassifiable. |
| Wayne County ...................................................................... | ...................... | Attainment/Unclassifiable. |
| Westmoreland County ........................................................... | ...................... | Attainment/Unclassifiable. |
| Wyoming County ................................................................... | ...................... | Attainment/Unclassifiable. |

[1] Includes any Indian country in each county or area, unless otherwise specified. EPA is not determining the boundaries of any area of Indian country in this table, including any area of Indian country located in the larger designation area. The inclusion of any Indian country in the designation area is not a determination that the state has regulatory authority under the Clean Air Act for such Indian country.
[2] This date is April 9, 2018, unless otherwise noted.
[3] York County will be designated by December 31, 2020.

PENNSYLVANIA—CARBON MONOXIDE

| Designated Area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Philadelphia-Camden County Area | | | | |
| Philadelphia County (part) | | | | |
| City of Philadelphia—high traffic areas within the Central Business District and certain other high traffic density areas. | 3/15/96 | Attainment. | | |
| Pittsburgh Area | | | | |
| Allegheny County (part) | | | | |
| high traffic density areas within the Central Business District and certain other high traffic density areas. | 1/13/03 | Attainment. | | |
| Rest of State ............................................... | ................... | Unclassifiable/Attainment. | | |
| Adams County | | | | |
| Allegheny County (part) | | | | |
| Remainder of Allegheny County | | | | |
| Armstrong County | | | | |
| Beaver County | | | | |
| Bedford County | | | | |
| Berks County | | | | |
| Blair County | | | | |
| Bradford County | | | | |
| Bucks County | | | | |
| Butler County | | | | |
| Cambria County | | | | |
| Cameron County | | | | |
| Carbon County | | | | |
| Centre County | | | | |
| Chester County | | | | |
| Clarion County | | | | |
| Clearfield County | | | | |
| Clinton County | | | | |
| Columbia County | | | | |
| Crawford County | | | | |
| Cumberland County | | | | |
| Dauphin County | | | | |
| Delaware County | | | | |
| Elk County | | | | |
| Erie County | | | | |
| Fayette County | | | | |
| Forest County | | | | |
| Franklin County | | | | |
| Fulton County | | | | |
| Greene County | | | | |
| Huntingdon County | | | | |
| Indiana County | | | | |
| Jefferson County | | | | |
| Juniata County | | | | |
| Lackawanna County | | | | |

711

PENNSYLVANIA—CARBON MONOXIDE—Continued

| Designated Area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Lancaster County | | | | |
| Lawrence County | | | | |
| Lebanon County | | | | |
| Lehigh County | | | | |
| Luzerne County | | | | |
| Lycoming County | | | | |
| McKean County | | | | |
| Mercer County | | | | |
| Mifflin County | | | | |
| Monroe County | | | | |
| Montgomery County | | | | |
| Montour County | | | | |
| Northampton County | | | | |
| Northumberland County | | | | |
| Perry County | | | | |
| Philadelphia County (part) | | | | |
| Remainder of Philadelphia county | | | | |
| Pike County | | | | |
| Potter County | | | | |
| Schuylkill County | | | | |
| Snyder County | | | | |
| Somerset County | | | | |
| Sullivan County | | | | |
| Susquehanna County | | | | |
| Tioga County | | | | |
| Union County | | | | |
| Venango County | | | | |
| Warren County | | | | |
| Washington County | | | | |
| Wayne County | | | | |
| Westmoreland County | | | | |
| Wyoming County | | | | |
| York County | | | | |

[1] This date is November 15, 1990, unless otherwise noted.

PENNSYLVANIA—OZONE (1-HOUR STANDARD)[4]

| Designated area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Allentown-Bethlehem-Easton Area: | | | | |
| Carbon County | [3] | Nonattainment | [3] | Marginal. |
| Lehigh County | [3] | Nonattainment | [3] | Marginal. |
| Northampton County | [3] | Nonattainment | [3] | Marginal. |
| Altoona Area: | | | | |
| Blair County | [3] | Nonattainment | [3] | Marginal. |
| Crawford County Area: | | | | |
| Crawford County | [3] | Nonattainment | [3] | Incomplete Data. |
| Erie Area: | | | | |
| Erie County | [3] | Nonattainment | [3] | Marginal. |
| Franklin County Area: | | | | |
| Franklin County | [3] | Nonattainment | [3] | Incomplete Data. |
| Greene County Area: | | | | |
| Greene County | [3] | Nonattainment | [3] | Incomplete Data. |
| Harrisburg-Lebanon-Carlisle Area: | | | | |
| Cumberland County | [3] | Nonattainment | [3] | Marginal. |
| Dauphin County | [3] | Nonattainment | [3] | Marginal. |
| Lebanon County | [3] | Nonattainment | [3] | Marginal. |
| Perry County | [3] | Nonattainment | [3] | Marginal. |
| Johnstown Area: | | | | |
| Cambria County | [3] | Nonattainment | [3] | Marginal. |
| Somerset County | [3] | Nonattainment | [3] | Marginal. |
| Juniata County Area: | | | | |
| Juniata County | [3] | Nonattainment | [3] | Incomplete Data. |
| Lancaster Area: | | | | |
| Lancaster County | 11/15/90 | Nonattainment | 11/15/90 | Marginal. |
| Lawrence County Area: | | | | |
| Lawrence County | [3] | Nonattainment | [3] | Incomplete Data. |
| Northumberland County Area: | | | | |
| Northumberland County | [3] | Nonattainment | [3] | Incomplete Data. |

**Environmental Protection Agency**                                               **§ 81.339**

PENNSYLVANIA—OZONE (1-HOUR STANDARD)[4]—Continued

| Designated area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Philadelphia-Wilmington-Trenton Area: | | | | |
| Bucks County ........................................ | 11/15/90 | Nonattainment ........................ | 11/15/90 | Severe-15. |
| Chester County ..................................... | 11/15/90 | Nonattainment ........................ | 11/15/90 | Severe-15. |
| Delaware County ................................... | 11/15/90 | Nonattainment ........................ | 11/15/90 | Severe-15. |
| Montgomery County .............................. | 11/15/90 | Nonattainment ........................ | 11/15/90 | Severe-15. |
| Philadelphia County ............................. | 11/15/90 | Nonattainment ........................ | 11/15/90 | Severe-15. |
| Pike County Area: | | | | |
| Pike County .......................................... | ([3]) | Nonattainment ........................ | ([3]) | Incomplete Data. |
| Pittsburgh-Beaver Valley Area: | | | | |
| Allegheny County .................................. | 10/19/01 | Attainment. | | |
| Armstrong County ................................. | 10/19/01 | Attainment. | | |
| Beaver County ...................................... | 10/19/01 | Attainment. | | |
| Butler County ........................................ | 10/19/01 | Attainment. | | |
| Fayette County ...................................... | 10/19/01 | Attainment. | | |
| Washington County ............................... | 10/19/01 | Attainment. | | |
| Westmoreland County .......................... | 10/19/01 | Attainment. | | |
| Reading Area: | | | | |
| Berks County ........................................ | ................. | Unclassifiable/Attainment | | |
| Schuylkill County Area: | | | | |
| Schuylkill County .................................. | ([3]) | Nonattainment ........................ | ([3]) | Incomplete Data. |
| Scranton-Wilkes-Barre Area: | | | | |
| Columbia County ................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| Lackawanna County .............................. | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| Luzerne County ..................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| Monroe County ...................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| Wyoming County ................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| Snyder County Area: | | | | |
| Snyder County ...................................... | ([3]) | Nonattainment ........................ | ([3]) | Incomplete Data. |
| Susquehanna County Area: | | | | |
| Susquehanna County ............................ | ([3]) | Nonattainment ........................ | ([3]) | Incomplete Data. |
| Warren County Area: | | | | |
| Warren County ...................................... | ([3]) | Nonattainment ........................ | ([3]) | Incomplete Data. |
| Wayne County Area: | | | | |
| Wayne County ....................................... | ([3]) | Nonattainment ........................ | ([3]) | Incomplete Data. |
| York Area: | | | | |
| Adams County ....................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| York County .......................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| Youngstown-Warren-Sharon Area: | | | | |
| Mercer County ...................................... | ([3]) | Nonattainment ........................ | ([3]) | Marginal. |
| AQCR 151 NE Pennsylvania Intrastate (Remainder of): | | | | |
| Bradford County .................................... | ................. | Unclassifiable/Attainment | | |
| Sullivan County ..................................... | ................. | Unclassifiable/Attainment | | |
| Tioga County ......................................... | ................. | Unclassifiable/Attainment | | |
| AQCR 178 NW Pennsylvania Interstate (Remainder of): | | | | |
| Cameron County .................................... | ................. | Unclassifiable/Attainment | | |
| Clarion County ...................................... | ................. | Unclassifiable/Attainment | | |
| Clearfield County .................................. | ................. | Unclassifiable/Attainment | | |
| Elk County ............................................. | ................. | Unclassifiable/Attainment | | |
| Forest County ....................................... | ................. | Unclassifiable/Attainment | | |
| Jefferson County ................................... | ................. | Unclassifiable/Attainment | | |
| McKean County ..................................... | ................. | Unclassifiable/Attainment | | |
| Potter County ........................................ | ................. | Unclassifiable/Attainment | | |
| Venango County .................................... | ................. | Unclassifiable/Attainment | | |
| AQCR 195 Central Pennsylvania Intrastate (Remainder of): | | | | |
| Bedford County ..................................... | ................. | Unclassifiable/Attainment | | |
| Centre County ....................................... | ................. | Unclassifiable/Attainment | | |
| Clinton County ...................................... | ................. | Unclassifiable/Attainment | | |
| Fulton County ........................................ | ................. | Unclassifiable/Attainment | | |
| Huntingdon County ................................ | ................. | Unclassifiable/Attainment | | |
| Lycoming County ................................... | ................. | Unclassifiable/Attainment | | |
| Mifflin County ........................................ | ................. | Unclassifiable/Attainment | | |
| Montour County ..................................... | ................. | Unclassifiable/Attainment | | |
| Union County ........................................ | ................. | Unclassifiable/Attainment | | |
| AQCR 197 SW Pennsylvania Intrastate (Remainder of): | | | | |
| Indiana County ...................................... | ................. | Unclassifiable/Attainment | | |

[1] This date is October 18, 2000, unless otherwise noted.

713

§ 81.339    40 CFR Ch. I (7–1–19 Edition)

[2] Attainment date extended to 11/15/97.
[3] This date is January 16, 2001.
[4] The 1-hour ozone standard is revoked effective June 15, 2005 for all areas in Pennsylvania. The Pittsburgh-Beaver Valley and Reading areas are maintenance areas for the 1-hour NAAQS for purposes of 40 CFR part 51 subpart X.

PENNSYLVANIA—PM–10

| Designated Area | Designation | | Classification | |
|---|---|---|---|---|
| | Date | Type | Date | Type |
| Allegheny County | | | | |
| The area including Liberty, Lincoln, Port Vue, and Glassport Boroughs and the City of Clairton. | 10/14/03 | Attainment ............................. | ................... | |
| Rest of State ................................................ | 11/15/90 | Unclassifiable. | | |

PENNSYLVANIA—1997 ANNUAL PM$_{2.5}$ NAAQS
[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [2] | Type |
| Harrisburg-Lebanon-Carlisle, PA: | | | | |
| Cumberland County ............................. | 12/08/14 | Attainment. | | |
| Dauphin County ..................................... | 12/08/14 | Attainment. | | |
| Lebanon County ..................................... | 12/08/14 | Attainment. | | |
| Johnstown, PA: | | | | |
| Cambria County ..................................... | 7/16/15 | Attainment. | | |
| Indiana County (part) ........................... | 7/16/15 | Attainment. | | |
| Townships of West Wheatfield, Center, East Wheatfield, and Armagh Borough and Homer City Borough.. | | | | |
| Lancaster, PA: | | | | |
| Lancaster County ................................... | 7/16/15 | Attainment. | | |
| Liberty-Clairton, PA: | | | | |
| Allegheny County (part) ....................... | ................... | Nonattainment ....................... | ................... | Moderate. |
| Lincoln Borough, Clairton City, Glassport Borough, Liberty Borough, Port Vue Borough | | | | |
| Philadelphia-Wilmington, PA-NJ-DE: | | | | |
| Bucks County ......................................... | 4/21/15 | Attainment. | | |
| Chester County ..................................... | 4/21/15 | Attainment. | | |
| Delaware County ................................... | 4/21/15 | Attainment. | | |
| Montgomery County .............................. | 4/21/15 | Attainment. | | |
| Philadelphia County .............................. | 4/21/15 | Attainment. | | |
| Pittsburgh-Beaver Valley, PA: | | | | |
| Allegheny County (remainder) ............. | 10/2/15 | Attainment. | | |
| Armstrong County (part) ...................... | 10/2/15 | Attainment. | | |
| Elderton Borough and Plumcreek and Washington Townships: | | | | |
| Beaver County ....................................... | 10/2/15 | Attainment. | | |
| Butler County ........................................ | 10/2/15 | Attainment. | | |
| Greene County (part) ........................... | 10/2/15 | Attainment. | | |
| Monongahela Township: | | | | |
| Lawrence County (part) ........................ | 10/2/15 | Attainment. | | |
| Township of Taylor south of New Castle City: | | | | |
| Washington County ............................... | 10/2/15 | Attainment. | | |
| Westmoreland County .......................... | 10/2/15 | Attainment. | | |
| Reading, PA: | | | | |
| Berks County ......................................... | 3/4/15 | Attainment. | | |
| York, PA: | | | | |
| York County ........................................... | 12/08/14 | Attainment. | | |
| Youngstown-Warren-Sharon, OH–PA: | | | | |
| Mercer County ....................................... | ................... | Unclassifiable/Attainment. | | |
| AQCR 151 Northeast Pennsylvania-Upper Delaware Valley Interstate: | | | | |
| Bradford County .................................... | ................... | Unclassifiable/Attainment. | | |
| Carbon County ...................................... | ................... | Unclassifiable/Attainment. | | |
| Lackawanna County .............................. | ................... | Unclassifiable/Attainment. | | |
| Lehigh County ....................................... | ................... | Unclassifiable/Attainment. | | |
| Luzerne County ..................................... | ................... | Unclassifiable/Attainment. | | |
| Monroe County ...................................... | ................... | Unclassifiable/Attainment. | | |

714

**Environmental Protection Agency**                              **§ 81.339**

PENNSYLVANIA—1997 ANNUAL PM$_{2.5}$ NAAQS—Continued

[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [2] | Type |
| Northampton County ............................ | ................. | Unclassifiable/Attainment. | | |
| Pike County ......................................... | ................. | Unclassifiable/Attainment. | | |
| Schuylkill County ................................. | ................. | Unclassifiable/Attainment. | | |
| Sullivan County .................................... | ................. | Unclassifiable/Attainment. | | |
| Susquehanna County ........................... | ................. | Unclassifiable/Attainment. | | |
| Tioga County ........................................ | ................. | Unclassifiable/Attainment. | | |
| Wayne County ...................................... | ................. | Unclassifiable/Attainment. | | |
| Wyoming County .................................. | ................. | Unclassifiable/Attainment. | | |
| AQCR 178 Northwest Pennsylvania-Youngstown Interstate: | | | | |
| Cameron County .................................. | ................. | Unclassifiable/Attainment. | | |
| Clarion County ..................................... | ................. | Unclassifiable/Attainment. | | |
| Clearfield County ................................. | ................. | Unclassifiable/Attainment. | | |
| Crawford County .................................. | ................. | Unclassifiable/Attainment. | | |
| Elk County ............................................ | ................. | Unclassifiable/Attainment. | | |
| Erie County .......................................... | ................. | Unclassifiable/Attainment. | | |
| Forest County ...................................... | ................. | Unclassifiable/Attainment. | | |
| Jefferson County .................................. | ................. | Unclassifiable/Attainment. | | |
| Lawrence County (remainder) ............. | ................. | Unclassifiable/Attainment. | | |
| McKean County .................................... | ................. | Unclassifiable/Attainment. | | |
| Potter County ....................................... | ................. | Unclassifiable/Attainment. | | |
| Venango County ................................... | ................. | Unclassifiable/Attainment. | | |
| Warren County ..................................... | ................. | Unclassifiable/Attainment. | | |
| AQCR 195 Central Pennsylvania Intrastate: | | | | |
| Bedford County .................................... | ................. | Unclassifiable/Attainment. | | |
| Blair County ......................................... | ................. | Unclassifiable/Attainment. | | |
| Centre County ...................................... | ................. | Unclassifiable/Attainment. | | |
| Clinton County ..................................... | ................. | Unclassifiable/Attainment. | | |
| Columbia County .................................. | ................. | Unclassifiable/Attainment. | | |
| Fulton County ....................................... | ................. | Unclassifiable/Attainment. | | |
| Huntingdon County ............................... | ................. | Unclassifiable/Attainment. | | |
| Juniata County ..................................... | ................. | Unclassifiable/Attainment. | | |
| Lycoming County .................................. | ................. | Unclassifiable/Attainment. | | |
| Mifflin County ....................................... | ................. | Unclassifiable/Attainment. | | |
| Montour County .................................... | ................. | Unclassifiable/Attainment. | | |
| Northumberland County ........................ | ................. | Unclassifiable/Attainment. | | |
| Snyder County ..................................... | ................. | Unclassifiable/Attainment. | | |
| Somerset County .................................. | ................. | Unclassifiable/Attainment. | | |
| Union County ....................................... | ................. | Unclassifiable/Attainment. | | |
| AQCR 196 South Central Pennsylvania Intrastate: | | | | |
| Adams County ...................................... | ................. | Unclassifiable/Attainment. | | |
| Franklin County .................................... | ................. | Unclassifiable/Attainment. | | |
| Perry County ........................................ | ................. | Unclassifiable/Attainment. | | |
| AQCR 197 Southwest Pennsylvania Intrastate: | | | | |
| Armstrong County (remainder) ............. | ................. | Unclassifiable/Attainment. | | |
| Fayette County ..................................... | ................. | Unclassifiable/Attainment. | | |
| Greene County (remainder) ................. | ................. | Unclassifiable/Attainment. | | |
| Indiana County (remainder) ................. | ................. | Unclassifiable/Attainment. | | |

[a] Includes Indian Country located in each county or area, except as otherwise specified.
[1] This date is 90 days after January 5, 2005, unless otherwise noted.
[2] This date is July 2, 2014, unless otherwise noted.

PENNSYLVANIA—2012 ANNUAL PM$_{2.5}$ NAAQS

[Primary]

| Designated area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| Allegheny County, PA: | | | | |
| Allegheny County ................................. | ................. | Nonattainment ...................... | ................. | Moderate. |
| Delaware County, PA: | | | | |
| Delaware County .................................. | ................. | Nonattainment ...................... | ................. | Moderate. |
| Lebanon County, PA: | | | | |
| Lebanon County ................................... | ................. | Nonattainment ...................... | ................. | Moderate. |
| Rest of State: | | | | |

715

§ 81.339                                          40 CFR Ch. I (7–1–19 Edition)

PENNSYLVANIA—2012 ANNUAL PM$_{2.5}$ NAAQS—Continued

[Primary]

| Designated area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| AQCR 151 Northeast Pennsylvania-Upper Delaware Valley Interstate: | | | | |
| Berks County ......................................... | .................. | Unclassifiable/Attainment. | | |
| Bradford County .................................... | .................. | Unclassifiable/Attainment. | | |
| Carbon County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Lackawanna County ............................... | .................. | Unclassifiable/Attainment. | | |
| Lehigh County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Luzerne County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Monroe County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Northampton County .............................. | .................. | Unclassifiable/Attainment. | | |
| Pike County ........................................... | .................. | Unclassifiable/Attainment. | | |
| Schuylkill County ................................... | .................. | Unclassifiable/Attainment. | | |
| Sullivan County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Susquehanna County ............................. | .................. | Unclassifiable/Attainment. | | |
| Tioga County ......................................... | .................. | Unclassifiable/Attainment. | | |
| Wayne County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Wyoming County .................................... | .................. | Unclassifiable/Attainment. | | |
| AQCR 178 Northwest Pennsylvania-Youngstown Interstate: | | | | |
| Cameron County .................................... | .................. | Unclassifiable/Attainment. | | |
| Clarion County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Clearfield County ................................... | .................. | Unclassifiable/Attainment. | | |
| Crawford County .................................... | .................. | Unclassifiable/Attainment. | | |
| Elk County ............................................. | .................. | Unclassifiable/Attainment. | | |
| Erie County ........................................... | .................. | Unclassifiable/Attainment. | | |
| Forest County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Jefferson County ................................... | .................. | Unclassifiable/Attainment. | | |
| Lawrence County ................................... | .................. | Unclassifiable/Attainment. | | |
| McKean County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Mercer County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Potter County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Venango County .................................... | .................. | Unclassifiable/Attainment. | | |
| Warren County ...................................... | .................. | Unclassifiable/Attainment. | | |
| AQCR 45 Metropolitan Philadelphia Intrastate: | | | | |
| Bucks County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Chester County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Montgomery County ............................... | .................. | Unclassifiable/Attainment. | | |
| Philadelphia County .............................. | .................. | Unclassifiable/Attainment. | | |
| AQCR 195 Central Pennsylvania Intra-state: | | | | |
| Bedford County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Blair County .......................................... | .................. | Unclassifiable/Attainment. | | |
| Cambria County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Centre County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Clinton County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Columbia County ................................... | .................. | Unclassifiable/Attainment. | | |
| Fulton County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Huntingdon County ................................ | .................. | Unclassifiable/Attainment. | | |
| Juniata County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Lycoming County ................................... | .................. | Unclassifiable/Attainment. | | |
| Mifflin County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Montour County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Northumberland County ......................... | .................. | Unclassifiable/Attainment. | | |
| Snyder County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Somerset County ................................... | .................. | Unclassifiable/Attainment. | | |
| Union County ........................................ | .................. | Unclassifiable/Attainment. | | |
| AQCR 196 South Central Pennsyl-vania Intrastate: | | | | |
| Adams County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Cumberland County ............................... | .................. | Unclassifiable/Attainment. | | |
| Dauphin County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Franklin County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Lancaster County ................................... | .................. | Unclassifiable/Attainment. | | |
| Perry County ......................................... | .................. | Unclassifiable/Attainment. | | |
| York County ........................................... | .................. | Unclassifiable/Attainment. | | |
| AQCR 197 Southwest Pennsylvania Intrastate: | | | | |
| Armstrong County .................................. | .................. | Unclassifiable/Attainment. | | |

716

**Environmental Protection Agency** §81.339

PENNSYLVANIA—2012 ANNUAL PM$_{2.5}$ NAAQS—Continued

[Primary]

| Designated area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| Beaver County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Butler County ......................................... | .................. | Unclassifiable/Attainment. | | |
| Fayette County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Greene County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Indiana County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Washington County ............................... | .................. | Unclassifiable/Attainment. | | |
| Westmoreland County ........................... | .................. | Unclassifiable/Attainment. | | |

[1] Includes areas of Indian country located in each county or area, except as otherwise specified.
[2] This date is April 15, 2015, unless otherwise noted.

PENNSYLVANIA—1997 24-HOUR PM$_{2.5}$ NAAQS

[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date | Type |
| Allentown, PA: | | | | |
| Lehigh County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Northampton County .............................. | .................. | Unclassifiable/Attainment. | | |
| Harrisburg-Lebanon-Carlisle, PA: | | | | |
| Cumberland County ............................... | 12/08/14 | Attainment ........................... | .................. | Moderate. |
| Dauphin County .................................... | 12/08/14 | Attainment ........................... | .................. | Moderate. |
| Lebanon County .................................... | 12/08/14 | Attainment ........................... | .................. | Moderate. |
| York County .......................................... | .................. | Unclassifiable/Attainment. | | |
| Johnstown, PA: | | | | |
| Cambria County .................................... | .................. | Unclassifiable/Attainment. | | |
| Indiana County (part) ............................ | .................. | Unclassifiable/Attainment. | | |
| Townships of West Wheatfield, Center, East Wheatfield, and Armagh Borough and Homer City Borough | | | | |
| Lancaster, PA: | | | | |
| Lancaster County .................................. | .................. | Unclassifiable/Attainment. | | |
| Liberty-Clairton, PA: | | | | |
| Allegheny County (part) ........................ | .................. | Unclassifiable/Attainment. | | |
| Lincoln Borough, Clairton City, Glassport Borough, Liberty Borough, Port Vue Borough. | | | | |
| Philadelphia-Wilmington, PA–NJ–DE: | | | | |
| Bucks County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Chester County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Delaware County ................................... | .................. | Unclassifiable/Attainment. | | |
| Montgomery County ............................... | .................. | Unclassifiable/Attainment. | | |
| Philadelphia County ............................... | .................. | Unclassifiable/Attainment. | | |
| Pittsburgh-Beaver Valley, PA: | | | | |
| Allegheny County (remainder) ............... | .................. | Unclassifiable/Attainment. | | |
| Armstrong County (part) ....................... | .................. | Unclassifiable/Attainment. | | |
| Elderton Borough and Plumcreek and Washington Townships. | | | | |
| Beaver County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Butler County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Greene County (part) ............................ | .................. | Unclassifiable/Attainment. | | |
| Monongahela Township. | | | | |
| Lawrence County (part) ......................... | .................. | Unclassifiable/Attainment. | | |
| Township of Taylor south of New Castle City. | | | | |
| Washington County ............................... | .................. | Unclassifiable/Attainment. | | |
| Westmoreland County ........................... | .................. | Unclassifiable/Attainment. | | |
| Youngstown-Warren-Sharon, OH–PA: | | | | |
| Mercer County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Rest of State: | | | | |
| AQCR 151 Northeast Pennsylvania-Upper Delaware Valley Interstate: | | | | |
| Berks County ........................................ | .................. | Unclassifiable/Attainment. | | |
| Bradford County .................................... | .................. | Unclassifiable/Attainment. | | |
| Carbon County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Lackawanna County .............................. | .................. | Unclassifiable/Attainment. | | |

717

§ 81.339                                                40 CFR Ch. I (7–1–19 Edition)

PENNSYLVANIA—1997 24-HOUR PM$_{2.5}$ NAAQS—Continued

[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date | Type |
| Luzerne County | | Unclassifiable/Attainment. | | |
| Monroe County | | Unclassifiable/Attainment. | | |
| Pike County | | Unclassifiable/Attainment. | | |
| Schuylkill County | | Unclassifiable/Attainment. | | |
| Sullivan County | | Unclassifiable/Attainment. | | |
| Susquehanna County | | Unclassifiable/Attainment. | | |
| Tioga County | | Unclassifiable/Attainment. | | |
| Wayne County | | Unclassifiable/Attainment. | | |
| Wyoming County | | Unclassifiable/Attainment. | | |
| AQCR 178 Northwest Pennsylvania-Youngstown Interstate: | | | | |
| Cameron County | | Unclassifiable/Attainment. | | |
| Clarion County | | Unclassifiable/Attainment. | | |
| Clearfield County | | Unclassifiable/Attainment. | | |
| Crawford County | | Unclassifiable/Attainment. | | |
| Elk County | | Unclassifiable/Attainment. | | |
| Erie County | | Unclassifiable/Attainment. | | |
| Forest County | | Unclassifiable/Attainment. | | |
| Jefferson County | | Unclassifiable/Attainment. | | |
| Lawrence County (remainder) | | Unclassifiable/Attainment. | | |
| McKean County | | Unclassifiable/Attainment. | | |
| Potter County | | Unclassifiable/Attainment. | | |
| Venango County | | Unclassifiable/Attainment. | | |
| Warren County | | Unclassifiable/Attainment. | | |
| AQCR 195 Central Pennsylvania Intra-state: | | | | |
| Bedford County | | Unclassifiable/Attainment. | | |
| Blair County | | Unclassifiable/Attainment. | | |
| Centre County | | Unclassifiable/Attainment. | | |
| Clinton County | | Unclassifiable/Attainment. | | |
| Columbia County | | Unclassifiable/Attainment. | | |
| Fulton County | | Unclassifiable/Attainment. | | |
| Huntingdon County | | Unclassifiable/Attainment. | | |
| Juniata County | | Unclassifiable/Attainment. | | |
| Lycoming County | | Unclassifiable/Attainment. | | |
| Mifflin County | | Unclassifiable/Attainment. | | |
| Montour County | | Unclassifiable/Attainment. | | |
| Northumberland County | | Unclassifiable/Attainment. | | |
| Snyder County | | Unclassifiable/Attainment. | | |
| Somerset County | | Unclassifiable/Attainment. | | |
| Union County | | Unclassifiable/Attainment. | | |
| AQCR 196 South Central Pennsylvania Intrastate: | | | | |
| Adams County | | Unclassifiable/Attainment. | | |
| Franklin County | | Unclassifiable/Attainment. | | |
| Perry County | | Unclassifiable/Attainment. | | |
| AQCR 197 Southwest Pennsylvania Intra-state: | | | | |
| Armstrong County (remainder) | | Unclassifiable/Attainment. | | |
| Fayette County | | Unclassifiable/Attainment. | | |
| Greene County (remainder) | | Unclassifiable/Attainment. | | |
| Indiana County (remainder) | | Unclassifiable/Attainment. | | |

[a] Includes Indian Country located in each county or area, except as otherwise specified.
[1] This date is 90 days after January 5, 2005, unless otherwise noted.

PENNSYLVANIA—2006 24-HOUR PM$_{2.5}$ NAAQS

[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [2] | Type |
| Allentown, PA: | | | | |
| Lehigh County | 4/13/15 | Attainment. | | |
| Northampton County | 4/13/15 | Attainment. | | |
| Harrisburg-Lebanon-Carlisle-York, PA: | | | | |
| Cumberland County | 12/08/14 | Attainment. | | |

718

**Environmental Protection Agency**                                    **§ 81.339**

PENNSYLVANIA—2006 24-HOUR PM$_{2.5}$ NAAQS—Continued

[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [2] | Type |
| Dauphin County ........................ | 12/08/14 | Attainment. | | |
| Lebanon County ....................... | 12/08/14 | Attainment. | | |
| York County .............................. | 12/08/14 | Attainment. | | |
| Johnstown, PA: | | | | |
| Cambria County ....................... | 7/16/15 | Attainment. | | |
| Indiana County (part) .............. | 7/16/15 | Attainment. | | |
| Townships of West Wheat-field, Center, East Wheatfield, and Armagh Borough and Homer City Borough. | | | | |
| Lancaster, PA: | | | | |
| Lancaster County ..................... | *7/16/15* | Attainment. | | |
| Liberty-Clairton, PA: | | | | |
| Allegheny County (part) .......... | ............... | Nonattainment ................... | ............................................... | Moderate. |
| Lincoln Borough, Clairton City, Glassport Borough, Liberty Borough, Port Vue Borough. | | | | |
| Philadelphia-Wilmington, PA-NJ-DE: | | | | |
| Bucks County ........................... | 4/21/15 | Attainment. | | |
| Chester County ........................ | 4/21/15 | Attainment. | | |
| Delaware County ...................... | 4/21/15 | Attainment. | | |
| Montgomery County ................. | 4/21/15 | Attainment. | | |
| Philadelphia County ................. | 4/21/15 | Attainment. | | |
| Pittsburgh-Beaver Valley, PA: | | | | |
| Allegheny County (remainder) .. | 10/2/15 | Attainment. | | |
| Armstrong County (part) .......... | 10/2/15 | Attainment. | | |
| Elderton Borough and Plumcreek and Washington Townships: | | | | |
| Beaver County .......................... | 10/2/15 | Attainment. | | |
| Butler County ............................ | 10/2/15 | Attainment. | | |
| Green County (part) ................. | 10/2/15 | Attainment. | | |
| Monongahela Township: | | | | |
| Lawrence County (part) ............ | 10/2/15 | Attainment. | | |
| Township of Taylor south of New Castle City: | | | | |
| Washington County .................. | 10/2/15 | Attainment. | | |
| Westmoreland County .............. | 10/2/15 | Attainment. | | |
| Youngstown-Warren-Sharon, OH–PA: | | | | |
| Mercer County .......................... | ............... | UnclassifiableAttainment. | | |
| Rest of State: | | | | |
| AQCR 151 Northeast Pennsylvania-Upper Delaware Valley Interstate: | | | | |
| Berks County ............................ | ............... | .......................................... | UnclassifiableAttainment. | |
| Bradford County ....................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Carbon County .......................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Lackawanna County ................. | ............... | .......................................... | UnclassifiableAttainment. | |
| Luzerne County ........................ | ............... | .......................................... | UnclassifiableAttainment. | |
| Monroe County ......................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Pike County .............................. | ............... | .......................................... | UnclassifiableAttainment. | |
| Schuylkill County ..................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Sullivan County ........................ | ............... | .......................................... | UnclassifiableAttainment. | |
| Susquehanna County ............... | ............... | .......................................... | UnclassifiableAttainment. | |
| Tioga County ............................ | ............... | .......................................... | UnclassifiableAttainment. | |
| Wayne County .......................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Wyoming County ...................... | ............... | .......................................... | UnclassifiableAttainment. | |
| AQCR 178 Northwest Pennsyl-vania-Youngstown Interstate: | | | | |
| Cameron County ....................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Clarion County ......................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Clearfield County ..................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Crawford County ...................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Elk County ................................ | ............... | .......................................... | UnclassifiableAttainment. | |
| Erie County ............................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Forest County .......................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Jefferson County ...................... | ............... | .......................................... | UnclassifiableAttainment. | |
| Lawrence County (remainder) .. | ............... | .......................................... | UnclassifiableAttainment. | |

719

§ 81.339                                    40 CFR Ch. I (7–1–19 Edition)

PENNSYLVANIA—2006 24-HOUR PM$_{2.5}$ NAAQS—Continued

[Primary and secondary]

| Designated area | Designation [a] | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [2] | Type |
| McKean County | .......... | .......... | UnclassifiableAttainment. | |
| Potter County | .......... | .......... | UnclassifiableAttainment. | |
| Venango County | .......... | .......... | UnclassifiableAttainment. | |
| Warren County | .......... | .......... | UnclassifiableAttainment. | |
| AQCR 195 Central Pennsylvania Intrastate: | | | | |
| Bedford County | .......... | .......... | UnclassifiableAttainment. | |
| Blair County | .......... | .......... | UnclassifiableAttainment. | |
| Centre County | .......... | .......... | UnclassifiableAttainment. | |
| Clinton County | .......... | .......... | UnclassifiableAttainment. | |
| Columbia County | .......... | .......... | UnclassifiableAttainment. | |
| Fulton County | .......... | .......... | UnclassifiableAttainment. | |
| Huntingdon County | .......... | .......... | UnclassifiableAttainment. | |
| Juniata County | .......... | .......... | UnclassifiableAttainment. | |
| Lycoming County | .......... | .......... | UnclassifiableAttainment. | |
| Mifflin County | .......... | .......... | UnclassifiableAttainment. | |
| Montour County | .......... | .......... | UnclassifiableAttainment. | |
| Northumberland County | .......... | .......... | UnclassifiableAttainment. | |
| Snyder County | .......... | .......... | UnclassifiableAttainment. | |
| Somerset County | .......... | .......... | UnclassifiableAttainment. | |
| Union County | .......... | .......... | UnclassifiableAttainment. | |
| AQCR 196 South Central Pennsylvania Intrastate: | | | | |
| Adams County | .......... | .......... | UnclassifiableAttainment. | |
| Franklin County | .......... | .......... | UnclassifiableAttainment. | |
| Perry County | .......... | .......... | UnclassifiableAttainment. | |
| AQCR 197 Southwest Pennsylvania Intrastate: | | | | |
| Armstrong County (remainder) | .......... | .......... | UnclassifiableAttainment. | |
| Fayette County | .......... | .......... | UnclassifiableAttainment. | |
| Greene County (remainder) | .......... | .......... | UnclassifiableAttainment. | |
| Indiana County (remainder) | .......... | .......... | UnclassifiableAttainment. | |

[a] Includes Indian Country located in each county or area, except as otherwise specified.
[1] This date is 30 days after November 13, 2009, unless otherwise noted.
[2] This date is July 2, 2014, unless otherwise noted.

PENNSYLVANIA—NO$_2$ (1971 ANNUAL STANDARD)

| Designated area | Does not meet primary standards | Cannot be classified or better than national standards |
|---|---|---|
| Entire State | .......... | X |

PENNSYLVANIA—NO$_2$ (2010 1-HOUR STANDARD)

| Designated area | Designation [a] | |
|---|---|---|
| | Date [1] | Type |
| Adams County | .......... | Unclassifiable/Attainment. |
| Allegheny County | .......... | Unclassifiable/Attainment. |
| Armstrong County | .......... | Unclassifiable/Attainment. |
| Beaver County | .......... | Unclassifiable/Attainment. |
| Bedford County | .......... | Unclassifiable/Attainment. |
| Berks County | .......... | Unclassifiable/Attainment. |
| Blair County | .......... | Unclassifiable/Attainment. |
| Bradford County | .......... | Unclassifiable/Attainment. |
| Bucks County | .......... | Unclassifiable/Attainment. |
| Butler County | .......... | Unclassifiable/Attainment. |
| Cambria County | .......... | Unclassifiable/Attainment. |
| Cameron County | .......... | Unclassifiable/Attainment. |
| Carbon County | .......... | Unclassifiable/Attainment. |
| Centre County | .......... | Unclassifiable/Attainment. |
| Chester County | .......... | Unclassifiable/Attainment. |
| Clarion County | .......... | Unclassifiable/Attainment. |
| Clearfield County | .......... | Unclassifiable/Attainment. |

720

**Environmental Protection Agency**                                         **§ 81.339**

PENNSYLVANIA—NO₂ (2010 1-HOUR STANDARD)—Continued

| Designated area | Designation [a] | |
| --- | --- | --- |
| | Date [1] | Type |
| Clinton County ............................................................... | .................. | Unclassifiable/Attainment. |
| Columbia County ............................................................ | .................. | Unclassifiable/Attainment. |
| Crawford County ............................................................ | .................. | Unclassifiable/Attainment. |
| Cumberland County ........................................................ | .................. | Unclassifiable/Attainment. |
| Dauphin County .............................................................. | .................. | Unclassifiable/Attainment. |
| Delaware County ............................................................ | .................. | Unclassifiable/Attainment. |
| Elk County ...................................................................... | .................. | Unclassifiable/Attainment. |
| Erie County ..................................................................... | .................. | Unclassifiable/Attainment. |
| Fayette County ............................................................... | .................. | Unclassifiable/Attainment. |
| Forest County ................................................................. | .................. | Unclassifiable/Attainment. |
| Franklin County .............................................................. | .................. | Unclassifiable/Attainment. |
| Fulton County ................................................................. | .................. | Unclassifiable/Attainment. |
| Greene County ............................................................... | .................. | Unclassifiable/Attainment. |
| Huntingdon County ......................................................... | .................. | Unclassifiable/Attainment. |
| Indiana County ............................................................... | .................. | Unclassifiable/Attainment. |
| Jefferson County ............................................................ | .................. | Unclassifiable/Attainment. |
| Juniata County ............................................................... | .................. | Unclassifiable/Attainment. |
| Lackawanna County ....................................................... | .................. | Unclassifiable/Attainment. |
| Lancaster County ........................................................... | .................. | Unclassifiable/Attainment. |
| Lawrence County ............................................................ | .................. | Unclassifiable/Attainment. |
| Lebanon County ............................................................. | .................. | Unclassifiable/Attainment. |
| Lehigh County ................................................................ | .................. | Unclassifiable/Attainment. |
| Luzerne County .............................................................. | .................. | Unclassifiable/Attainment. |
| Lycoming County ............................................................ | .................. | Unclassifiable/Attainment. |
| McKean County .............................................................. | .................. | Unclassifiable/Attainment. |
| Mercer County ................................................................ | .................. | Unclassifiable/Attainment. |
| Mifflin County ................................................................. | .................. | Unclassifiable/Attainment. |
| Monroe County ............................................................... | .................. | Unclassifiable/Attainment. |
| Montgomery County ........................................................ | .................. | Unclassifiable/Attainment. |
| Montour County .............................................................. | .................. | Unclassifiable/Attainment. |
| Northampton County ....................................................... | .................. | Unclassifiable/Attainment. |
| Northumberland County .................................................. | .................. | Unclassifiable/Attainment. |
| Perry County .................................................................. | .................. | Unclassifiable/Attainment. |
| Philadelphia County ....................................................... | .................. | Unclassifiable/Attainment. |
| Pike County .................................................................... | .................. | Unclassifiable/Attainment. |
| Potter County ................................................................. | .................. | Unclassifiable/Attainment. |
| Schuylkill County ............................................................ | .................. | Unclassifiable/Attainment. |
| Snyder County ............................................................... | .................. | Unclassifiable/Attainment. |
| Somerset County ............................................................ | .................. | Unclassifiable/Attainment. |
| Sullivan County .............................................................. | .................. | Unclassifiable/Attainment. |
| Susquehanna County ..................................................... | .................. | Unclassifiable/Attainment. |
| Tioga County .................................................................. | .................. | Unclassifiable/Attainment. |
| Union County .................................................................. | .................. | Unclassifiable/Attainment. |
| Venango County ............................................................. | .................. | Unclassifiable/Attainment. |
| Warren County ............................................................... | .................. | Unclassifiable/Attainment. |
| Washington County ........................................................ | .................. | Unclassifiable/Attainment. |
| Wayne County ................................................................ | .................. | Unclassifiable/Attainment. |
| Westmoreland County .................................................... | .................. | Unclassifiable/Attainment. |
| Wyoming County ............................................................ | .................. | Unclassifiable/Attainment. |
| York County .................................................................... | .................. | Unclassifiable/Attainment. |

[a] Includes Indian Country located in each county or area, except as otherwise specified.
[1] This date is 90 days after October 31, 2011, unless otherwise noted.

PENNSYLVANIA—1997 8-HOUR OZONE NAAQS (PRIMARY AND SECONDARY)

| Designated area | Designation [a] | | Category/classification | |
| --- | --- | --- | --- | --- |
| | Date [1] | Type | Date [1] | Type |
| Allentown-Bethlehem-Easton, PA: Carbon County Lehigh County Northampton County. | 4/3/08 | Attainment. | | |
| Altoona, PA: Blair County ............................ | 8/1/07 | Attainment. | | |
| Clearfield and Indiana, PA: Clearfield County, Indiana County, Northampton County. | 4/20/09 | Attainment. | | |
| Erie, PA: Erie County ................................... | 11/8/2007 | Attainment. | | |
| Franklin Co., PA: Franklin County .............. | 7/27/07 | Attainment. | | |
| Greene County, PA: Greene County .......... | 04/20/09 | Attainment. | | |
| Harrisburg-Lebanon-Carlisle PA: | | | | |

721

**§ 81.339**

**40 CFR Ch. I (7–1–19 Edition)**

PENNSYLVANIA—1997 8-HOUR OZONE NAAQS (PRIMARY AND SECONDARY)—Continued

| Designated area | Designation [a] | | Category/classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Cumberland County | 7/25/07 | Attainment. | | |
| Dauphin County | 7/25/07 | Attainment. | | |
| Lebanon County | 7/25/07 | Attainment. | | |
| Perry County | 7/25/07 | Attainment. | | |
| Johnstown, PA: Cambria County | 8/1/07 | Attainment. | | |
| Lancaster, PA: Lancaster County | 7/6/07 | Attainment | | |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE: | | | | |
| Bucks County | ............. | Nonattainment | ............. | Subpart 2/Moderate.[3] |
| Chester County | ............. | Nonattainment | ............. | Subpart 2/Moderate.[3] |
| Delaware County | ............. | Nonattainment | ............. | Subpart 2/Moderate.[3] |
| Montgomery County | ............. | Nonattainment | ............. | Subpart 2/Moderate.[3] |
| Philadelphia County | ............. | Nonattainment | ............. | Subpart 2/Moderate.[3] |
| Pittsburgh-Beaver Valley, PA: | | | | |
| Allegheny County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Armstrong County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Beaver County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Butler County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Fayette County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Washington County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Westmoreland County | ............. | Nonattainment | 6/13/12 | Subpart 2/Moderate. |
| Reading, PA: Berks County | 9/10/07 | Attainment. | | |
| Scranton-Wilkes-Barre, PA: Lackawanna County, Luzerne County, Monroe County, Wyoming County. | 12/19/07 | Attainment. | | |
| State College, PA: Centre County | 12/14/07 | Attainment.. | | |
| Tioga Co., PA: Tioga County | 07/06/07 | Attainment.. | | |
| Williamsport, PA: Lycoming County | ............. | Unclassifiable/Attainment. | | |
| York, PA: | | | | |
| Adams County | 2/13/08 | Attainment | ............. | |
| York County | 2/13/08 | Attainment | ............. | |
| Youngstown-Warren-Sharon, OH–PA Area: Mercer County | 11/19/07 | Attainment. | | |
| AQCR 151 NE Pennsylvania Intrastate (remainder of): | | | | |
| Bradford County | ............. | Unclassifiable/Attainment. | | |
| Sullivan County | ............. | Unclassifiable/Attainment. | | |
| AQCR 178 NW Pennsylvania Interstate (remainder of): | | | | |
| Cameron County | ............. | Unclassifiable/Attainment. | | |
| Clarion County | ............. | Unclassifiable/Attainment. | | |
| Elk County | ............. | Unclassifiable/Attainment. | | |
| Forest County | ............. | Unclassifiable/Attainment. | | |
| Jefferson County | ............. | Unclassifiable/Attainment. | | |
| McKean County | ............. | Unclassifiable/Attainment. | | |
| Potter County | ............. | Unclassifiable/Attainment. | | |
| Venango County | ............. | Unclassifiable/Attainment. | | |
| AQCR 195 Central Pennsylvania Intrastate (remainder of): | | | | |
| Bedford County | ............. | Unclassifiable/Attainment. | | |
| Clinton County | ............. | Unclassifiable/Attainment. | | |
| Fulton County | ............. | Unclassifiable/Attainment. | | |
| Huntingdon County | ............. | Unclassifiable/Attainment. | | |
| Mifflin County | ............. | Unclassifiable/Attainment. | | |
| Montour County | ............. | Unclassifiable/Attainment. | | |
| Union County | ............. | Unclassifiable/Attainment. | | |
| Rest of State | ............. | Unclassifiable/Attainment. | | |
| Columbia County | ............. | Unclassifiable/Attainment. | | |
| Crawford County | ............. | Unclassifiable/Attainment. | | |
| Juniata County | ............. | Unclassifiable/Attainment. | | |
| Lawrence County | ............. | Unclassifiable/Attainment. | | |
| Northumberland County | ............. | Unclassifiable/Attainment. | | |
| Pike County | ............. | Unclassifiable/Attainment. | | |
| Schuylkill County | ............. | Unclassifiable/Attainment. | | |
| Snyder County | ............. | Unclassifiable/Attainment. | | |

722

**Environmental Protection Agency** §81.339

PENNSYLVANIA—1997 8-HOUR OZONE NAAQS (PRIMARY AND SECONDARY)—Continued

| Designated area | Designation [a] | | Category/classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Somerset County ............................ | ................ | Unclassifiable/Attainment. | | |
| Susquehanna County ...................... | ................ | Unclassifiable/Attainment. | | |
| Warren County ................................ | ................ | Unclassifiable/Attainment. | | |
| Wayne County ................................ | ................ | Unclassifiable/Attainment. | | |

[a] Includes Indian Country located in each county or area, except as otherwise specified.
[1] This date is June 15, 2004, unless otherwise noted.
[2] November 22, 2004.

PENNSYLVANIA—2008 8-HOUR OZONE NAAQS (PRIMARY AND SECONDARY)

| Designated area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Allentown-Bethlehem-Easton, PA [2] ............ | ................ | Nonattainment ........................ | ................ | Marginal. |
|    Carbon County | | | | |
|    Lehigh County | | | | |
|    Northampton County | | | | |
| Lancaster, PA [2] ......................................... | ................ | Nonattainment ........................ | ................ | Marginal. |
|    Lancaster County | | | | |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE [2]. | ................ | Nonattainment ........................ | 6/3/16 | Marginal.[4] |
|    Bucks County. | | | | |
|    Chester County. | | | | |
|    Delaware County. | | | | |
|    Montgomery County. | | | | |
|    Philadelphia County. | | | | |
| Pittsburgh-Beaver Valley, PA [2] .................. | ................ | Nonattainment ........................ | 6/3/16 | Marginal.[4] |
|    Allegheny County. | | | | |
|    Armstrong County. | | | | |
|    Beaver County. | | | | |
|    Butler County. | | | | |
|    Fayette County. | | | | |
|    Washington County. | | | | |
|    Westmoreland County. | | | | |
| Reading, PA [2] ............................................ | ................ | Nonattainment ........................ | ................ | Marginal. |
|    Berks County | | | | |
| AQCR 151 NE Pennsylvania Intrastate (remainder) [3] | | | | |
|    Bradford County ............................. | ................ | Unclassifiable/Attainment. | | |
|    Lackawanna County ........................ | ................ | Unclassifiable/Attainment. | | |
|    Luzerne County .............................. | ................ | Unclassifiable/Attainment. | | |
|    Monroe County ............................... | ................ | Unclassifiable/Attainment. | | |
|    Pike County ................................... | ................ | Unclassifiable/Attainment. | | |
|    Schuylkill County ............................ | ................ | Unclassifiable/Attainment. | | |
|    Sullivan County .............................. | ................ | Unclassifiable/Attainment. | | |
|    Susquehanna County ...................... | ................ | Unclassifiable/Attainment. | | |
|    Tioga County ................................. | ................ | Unclassifiable/Attainment. | | |
|    Wayne County ............................... | ................ | Unclassifiable/Attainment. | | |
|    Wyoming ........................................ | ................ | Unclassifiable/Attainment. | | |
| AQCR 178 NW Pennsylvania Intrastate [3] | | | | |
|    Cameron County ............................ | ................ | Unclassifiable/Attainment. | | |
|    Clarion County ............................... | ................ | Unclassifiable/Attainment. | | |
|    Clearfield County ............................ | ................ | Unclassifiable/Attainment. | | |
|    Crawford County ............................ | ................ | Unclassifiable/Attainment. | | |
|    Elk County ..................................... | ................ | Unclassifiable/Attainment. | | |
|    Erie County ................................... | ................ | Unclassifiable/Attainment. | | |
|    Forest County ................................ | ................ | Unclassifiable/Attainment. | | |
|    Jefferson County ........................... | ................ | Unclassifiable/Attainment. | | |
|    Lawrence County ........................... | ................ | Unclassifiable/Attainment. | | |
|    McKean County .............................. | ................ | Unclassifiable/Attainment. | | |
|    Mercer County ............................... | ................ | Unclassifiable/Attainment. | | |
|    Potter County ................................ | ................ | Unclassifiable/Attainment. | | |
|    Venango County ............................ | ................ | Unclassifiable/Attainment. | | |
|    Warren County ............................... | ................ | Unclassifiable/Attainment. | | |
| AQCR 195 Central Pennsylvania Intrastate [3] | | | | |
|    Bedford County .............................. | ................ | Unclassifiable/Attainment. | | |
|    Blair County ................................... | ................ | Unclassifiable/Attainment. | | |
|    Cambria County ............................. | ................ | Unclassifiable/Attainment. | | |

723

§ 81.339                                                        40 CFR Ch. I (7–1–19 Edition)

PENNSYLVANIA—2008 8-HOUR OZONE NAAQS (PRIMARY AND SECONDARY)—Continued

| Designated area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Centre County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Clinton County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Columbia County .................................. | .................. | Unclassifiable/Attainment. | | |
| Fulton County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Huntingdon County ............................... | .................. | Unclassifiable/Attainment. | | |
| Juniata County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Lycoming County .................................. | .................. | Unclassifiable/Attainment. | | |
| Mifflin County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Montour County .................................... | .................. | Unclassifiable/Attainment. | | |
| Northumberland County ........................ | .................. | Unclassifiable/Attainment. | | |
| Snyder County ..................................... | .................. | Unclassifiable/Attainment. | | |
| Somerset County .................................. | .................. | Unclassifiable/Attainment. | | |
| Union County ....................................... | .................. | Unclassifiable/Attainment. | | |
| AQCR 196 South Central Pennsylvania (remainder) [3] | | | | |
| Adams County ...................................... | .................. | Unclassifiable/Attainment. | | |
| Cumberland County .............................. | .................. | Unclassifiable/Attainment. | | |
| Dauphin County .................................... | .................. | Unclassifiable/Attainment. | | |
| Franklin County .................................... | .................. | Unclassifiable/Attainment. | | |
| Lebanon County ................................... | .................. | Unclassifiable/Attainment. | | |
| Perry County ........................................ | .................. | Unclassifiable/Attainment. | | |
| York County ......................................... | .................. | Unclassifiable/Attainment. | | |
| AQCR 197 Southwest Pennsylvania (remainder) [3] | | | | |
| Green County ....................................... | .................. | Unclassifiable/Attainment. | | |
| Indiana County ..................................... | .................. | Unclassifiable/Attainment. | | |

[1] This date is July 20, 2012, unless otherwise noted.
[2] Excludes Indian country located in each area, unless otherwise noted.
[3] Includes any Indian country in each county or area, unless otherwise specified.
[4] Attainment date is extended to July 20, 2016.

PENNSYLVANIA—2015 8-HOUR OZONE NAAQS
[Primary and Secondary]

| Designated area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE. | .................. | Nonattainment ...................... | .................. | Marginal. |
| Bucks County. | | | | |
| Chester County. | | | | |
| Delaware County. | | | | |
| Montgomery County. | | | | |
| Philadelphia County. | | | | |
| Adams County ...................................... | .................. | Attainment/Unclassifiable. | | |
| Allegheny County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Armstrong County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Beaver County ..................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Bedford County .................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Berks County ........................................ | .................. | Attainment/Unclassifiable. | | |
| Blair County ......................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Bradford County ................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Butler County ....................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Cambria County .................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Cameron County ................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Carbon County ..................................... | .................. | Attainment/Unclassifiable. | | |
| Centre County ...................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Clarion County ..................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Clearfield County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Clinton County ..................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Columbia County .................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Crawford County ................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Cumberland County .............................. | .................. | Attainment/Unclassifiable. | | |
| Dauphin County .................................... | .................. | Attainment/Unclassifiable. | | |
| Elk County ............................................ | 1/16/18 | Attainment/Unclassifiable. | | |
| Erie County .......................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Fayette County ..................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Forest County ....................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Franklin County .................................... | .................. | Attainment/Unclassifiable. | | |

724

**Environmental Protection Agency** §81.339

PENNSYLVANIA—2015 8-HOUR OZONE NAAQS—Continued

[Primary and Secondary]

| Designated area [1] | Designation | | Classification | |
|---|---|---|---|---|
| | Date [2] | Type | Date [2] | Type |
| Fulton County .................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Greene County .................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Huntingdon County ........................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Indiana County .................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Jefferson County ............................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Juniata County .................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Lackawanna County .......................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Lancaster County .............................. | ................. | Attainment/Unclassifiable. | | |
| Lawrence County ............................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Lebanon County ................................ | ................. | Attainment/Unclassifiable. | | |
| Lehigh County ................................... | ................. | Attainment/Unclassifiable. | | |
| Luzerne County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Lycoming County ............................... | 1/16/18 | Attainment/Unclassifiable. | | |
| McKean County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Mercer County .................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Mifflin County .................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Monroe County .................................. | ................. | Attainment/Unclassifiable. | | |
| Montour County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Northampton County .......................... | ................. | Attainment/Unclassifiable. | | |
| Northumberland County ..................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Perry County ..................................... | ................. | Attainment/Unclassifiable. | | |
| Pike County ....................................... | ................. | Attainment/Unclassifiable. | | |
| Potter County .................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Schuylkill County ............................... | ................. | Attainment/Unclassifiable. | | |
| Snyder County ................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Somerset County ............................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Sullivan County ................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Susquehanna County ........................ | 1/16/18 | Attainment/Unclassifiable. | | |
| Tioga County ..................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Union County ..................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Venango County ................................ | 1/16/18 | Attainment/Unclassifiable. | | |
| Warren County .................................. | 1/16/18 | Attainment/Unclassifiable. | | |
| Washington County ........................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Wayne County ................................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Westmoreland County ....................... | 1/16/18 | Attainment/Unclassifiable. | | |
| Wyoming County ............................... | 1/16/18 | Attainment/Unclassifiable. | | |
| York County ...................................... | ................. | Attainment/Unclassifiable. | | |

[1] Includes any Indian country in each county or area, unless otherwise specified. EPA is not determining the boundaries of any area of Indian country in this table, including any area of Indian country located in the larger designation area. The inclusion of any Indian country in the designation area is not a determination that the state has regulatory authority under the Clean Air Act for such Indian country.

[2] This date is August 3, 2018, unless otherwise noted.

PENNSYLVANIA—2008 LEAD NAAQS

| Designated area | Designation for the 2008 NAAQS[a] | |
|---|---|---|
| | Date [1] | Type |
| Lower Beaver Valley, PA: | | |
|   Beaver County (part) ......................................................... | [2] 12/31/10 | Nonattainment. |
|     Area is bounded by Potter Township, Vanport Township, and Center Township. | | |
| Lyons, PA: | | |
|   Berks County (part) ........................................................... | 12/31/10 | Nonattainment. |
|     Area is bounded by Kutztown Borough, Lyons Borough, Maxatawny Township and Richmond Township. | | |
| North Reading, PA: | | |
|   Berks County (part) ........................................................... | 12/31/10 | Nonattainment. |
|     Area is bounded by Alsace Township, Laureldale Borough, and Muhlenberg Township. | | |
| Rest of State ....................................................................... | ................. | Unclassifiable/Attainment. |

[a] Includes Indian Country located in each county or area, except as otherwise specified.

[1] December 31, 2011 unless otherwise noted.

[2] Center Township was included in the nonattainment area as of 12/31/11.

[43 FR 40513, Sept. 12, 1978]

725

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting §81.339, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and at *www.govinfo.gov*.

### § 81.340  Rhode Island.

RHODE ISLAND—TSP

| Designated area | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|
| Providence ......................................................... | ...................... | X | | |
| East Providence, Warwick, North Providence, Pawtucket, and Central Falls ................................................... | ...................... | ...................... | X | |
| Remainder of Rhode Island portion of AQCR 120 ...................... | ...................... | ...................... | ...................... | X |

RHODE ISLAND—1971 SULFUR DIOXIDE NAAQS (PRIMARY AND SECONDARY)

| Designated area | Does not meet primary standards | Does not meet secondary standards | Cannot be classified | Better than national standards |
|---|---|---|---|---|
| Rhode Island portion of AQCR 120 .......................... | ...................... | ...................... | ...................... | X |

RHODE ISLAND—2010 SULFUR DIOXIDE NAAQS (PRIMARY)

| Designated area [1] | Designation | |
|---|---|---|
| | Date [2] | Type |
| State of Rhode Island ....................................................... | ...................... | Attainment/Unclassifiable. |

[1] Includes any Indian country in each county or area, unless otherwise specified. EPA is not determining the boundaries of any area of Indian country in this table, including any area of Indian country located in the larger designation area. The inclusion of any Indian country in the designation area is not a determination that the state has regulatory authority under the Clean Air Act for such Indian country.
[2] This date is April 9, 2018, unless otherwise noted.

RHODE ISLAND—CARBON MONOXIDE

| Designated Area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Statewide ...................................................... | ...................... | Unclassifiable/Attainment. | | |
|    Bristol County | | | | |
|    Kent County | | | | |
|    Newport County | | | | |
|    Providence County | | | | |
|    Washington County | | | | |

[1] This date is November 15, 1990, unless otherwise noted.

RHODE ISLAND—OZONE (1-HOUR STANDARD)[2]

| Designated area | Designation | | Classification | |
|---|---|---|---|---|
| | Date [1] | Type | Date [1] | Type |
| Providence (all of RI) Area: | | | | |
|    Bristol County ........................................ | ...................... | Nonattainment ...................... | ...................... | Serious. |
|    Kent County ........................................... | ...................... | Nonattainment ...................... | ...................... | Serious. |
|    Newport County ...................................... | ...................... | Nonattainment ...................... | ...................... | Serious. |
|    Providence County .................................. | ...................... | Nonattainment ...................... | ...................... | Serious. |
|    Washington County ................................. | ...................... | Nonattainment ...................... | ...................... | Serious. |

[1] This date is January 16, 2001, unless otherwise noted.
[2] The 1-hour ozone standard is revoked effective June 15, 2005 for all areas in Rhode Island.

726

6 CRR-NY 227-2.6

OFFICIAL COMPILATION OF CODES, RULES AND REGULATIONS OF THE STATE OF NEW YORK

TITLE 6. DEPARTMENT OF ENVIRONMENTAL CONSERVATION

CHAPTER III. AIR RESOURCES

SUBCHAPTER A. PREVENTION AND CONTROL OF AIR CONTAMINATION AND AIR POLLUTION

PART 227. STATIONARY COMBUSTION INSTALLATIONS

SUBPART 227-2. REASONABLY AVAILABLE CONTROL TECHNOLOGY
(RACT) FOR MAJOR FACILITIES OF OXIDES OF NITROGEN (NO$_X$)

Current through October 31, 2019

227-2.6 Testing, monitoring, and reporting requirements.

(a) The owner or operator of each emission source must verify NO$_x$ emissions by performing the applicable testing or monitoring procedure detailed below:

(1) For any very large boiler, NO$_x$ emissions must be measured with a CEMS as described in subdivision (b) of this section or with an equivalent monitoring system approved by the department.

(2) For any large boiler, NO$_x$ emissions must be:
(i) measured in accordance with emission test requirements described in subdivision (c) of this section; or

(ii) monitored with a CEMS as described in subdivision (b) of this section or with an equivalent monitoring system approved by the department.

(3) For any mid-size boiler, NO$_x$ emissions must be:
(i) measured in accordance with the emission test requirements described in subdivision (c) of this section; or

(ii) monitored with a CEMS as described in subdivision (b) of this section or with an equivalent monitoring system approved by the department.

(4) For any combined cycle combustion turbine having a maximum heat input rate greater than 250 million Btu per hour, NO$_x$ emissions must be measured with a CEMS as described in subdivision (b) of this section.

(5) For any simple cycle, regenerative combustion turbine and any combined cycle combustion turbine having a maximum heat input rate of 250 million Btu per hour or less, NO$_x$ emissions must be:
(i) measured in accordance with the emission test requirements described in subdivision (c) of this section; or

(ii) monitored with a CEMS as described in subdivision (b) of this section or with an equivalent monitoring system approved by the department.

(6) For any stationary internal combustion engine, $NO_x$ emissions must be:

    (i) measured in accordance with the emission test requirements as described in subdivision (c) of this section; or

    (ii) monitored with a CEMS as described in subdivision (b) of this section or with an equivalent monitoring system approved by the department.

(7) For any emission source subject to section 227-2.4(g) of this Subpart, $NO_x$ emissions must be measured pursuant to a testing, monitoring, and reporting protocol that the department has determined is consistent with the applicable requirements for emission sources regulated under this Subpart that have comparable heat input ratings.

### (b) CEMS requirements.

(1) The owner or operator of an emission source that monitors $NO_x$ emissions with a CEMS or equivalent monitoring system must submit for department approval:

    (i) a CEMS plan as part of its application for a permit or permit modification if a CEMS has already been installed, or if a CEMS is in the process of being procured or installed;

    (ii) a CEMS plan at least 180 days prior to equipment installation. The department will notify the owner or operator of the acceptability of the plan, at least 60 days prior to equipment installation if it is not covered under subparagraph (i) of this paragraph; or

    (iii) a proposed plan for a monitoring system that is equivalent to a CEMS.

(2) The owner or operator of an emission source that monitors $NO_x$ emissions with a CEMS must submit for department approval a CEMS certification protocol at least 60 days prior to compliance testing. The certification protocol must include the location of and specifications for each instrument or device, as well as procedures for calibration, operation, data evaluation, and data reporting.

(3) The owner or operator of an emission source that monitors $NO_x$ emissions with a CEMS must install, calibrate, maintain, and operate a CEMS for measuring $NO_x$ at locations approved in the CEMS certification protocol under paragraph (2) of this subdivision, and must record the output of each such system. The following procedures and test methods must be used for determining compliance with the relevant $NO_x$ emission limit under section 227-2.4 of this Subpart:

    (i) With the exception of emission sources subject to paragraph (a)(4) of this section, the owner or operator of an emission source must:

        (a) calculate all 24-hour daily heat input-weighted average $NO_x$ emission rates from block hourly arithmetic emission rate averages calculated by the CEMS and expressed in terms of pounds of $NO_x$ per million Btu;

        (b) demonstrate compliance with the appropriate emission limit under section 227-2.4 of this Subpart by using a CEMS for measuring $NO_x$ and calculating a 24-hour daily heat input-weighted average $NO_x$ emission rate. Facilities that are subject to 40 CFR part 75 will calculate their $NO_x$ emission rate using part 75 monitoring requirements. Facilities that are not subject to 40 CFR part 75 may calculate their $NO_x$ emission rate using either 40 CFR part 60, appendix A, method 19 or 40 CFR part 75. A 30-day rolling heat input-weighted average emission rate may be used to demonstrate compliance with the appropriate emission limit under section 227-2.4 of this Subpart from October 1st to April 30th for emission sources other than combustion turbines; and

(c) determine the 24-hour daily heat input-weighted average $NO_x$ emission rate based on the heat input-weighted average of the block hourly arithmetic average emission rates during each 24-hour daily period from 12:00 AM to 12:00 AM the following day using CEMS data. The block hourly heat input-weighted average emission rate must be calculated for each one-hour period starting with the period 12:00 AM to 1:00 AM and continuing through until the last period 11:00 PM to 12:00 AM; or, starting with the period 12:00 PM to 1:00 PM and continuing through the last period 11:00 AM to 12:00 PM. The 30-day rolling heat input-weighted average must be the average of the 24-hour daily heat input-weighted $NO_x$ emission rate.

(ii) The owner or operator of an emission source subject to paragraph (a)(4) of this section must calculate:
    (a) block hourly arithmetic average emission rates using data points generated by CEMS and expressed in terms of parts per million on a dry volume basis, corrected to 15 percent oxygen; and

    (b) block hourly arithmetic average emission rates for the periods starting 12:00 AM to 1:00 AM, 1:00 AM to 2:00 AM, and so on.

(iii) At a minimum, valid CEMS data must be obtained for 90 percent of the operating hours in each calendar quarter that the subject facility is operating.

(iv) All valid CEMS data must be used in calculating emission rates even if the minimum data requirements of subparagraph (iii) of this paragraph are not met.

(v) The procedures under 40 CFR part 60, appendix B, Performance Specification 2; and any additional criteria specified by the department must be followed for the installation, evaluation, and operation of the CEMS.

(vi) Along with any specific additional data requirements mandated by the department for a particular emission source, annual recertifications, quarterly accuracy, and daily calibration drift tests must be performed in accordance with 40 CFR part 60, appendix F or 40 CFR part 75, as applicable.

(vii) When $NO_x$ emissions data are not obtained because of CEMS downtime, emission data shall be obtained by using the 90th percentile value of all CEMS $NO_x$ emission data collected over the last 180 days. Alternatively the owner or operator of a facility subject to part 75 may use 40 CFR part 75 data substitution procedures for periods when no valid CEMS data is available.

(4) CEMS recordkeeping and reporting requirements.
    (i) The owner or operator of an emission source must notify the department of the planned initial start-up date of any new CEMS.

    (ii) Protocols, reports, summaries, schedules, and any other information required to be submitted to the department under provisions of this Subpart must be sent (in either hardcopy or electronically) as follows:
        (a) one copy to the Division of Air Resources, New York State Department of Environmental Conservation, 625 Broadway, Albany, NY 12233; and

        (b) one copy to the regional air pollution control engineer at the appropriate regional office of the department.

(iii) Emissions, monitoring, and operating parameter records or measurements required by this Subpart, quarterly and annual summaries, and any additional parameters required by the department must be maintained for at least five years and made available to the department upon request.

(iv) Following each calendar quarter, the owner or operator must tabulate and summarize applicable emissions, monitoring, and operating parameter measurements recorded during the preceding three months (including but not limited to type and amount of fuel burned on a daily basis, heat content of the fuel, total heating value of the fuel consumed on a daily basis, the actual $NO_x$ emission rate, the allowable $NO_x$ emission rate, and the summation of the emission sources included in a system averaging plan). These records must be submitted to the department within 30 days following the end of each calendar quarter in a format acceptable to the department and must include:

(a) the average $NO_x$ emission rates as specified under paragraph (3) of this subdivision. (With the exception of emission sources subject to paragraph (a)(4) of this section, emission sources are to record and tabulate block hourly average emission rates, but do not need to included the block hourly average emission rates in the quarterly summaries);

(b) identification of the operating hours when $NO_x$ emissions data are not included in the calculation of the average emission rate and the reasons for not including that data; and

(c) the results of accuracy assessments as required by 40 CFR part 60, appendix F and any additional data quality information required by the department.

(v) The owner or operator of an emission source must submit the initial compliance test data, the performance evaluation of the CEMS found in 40 CFR part 60, appendix B, and the maximum heat input capacity.

### (c) Emission test requirements.

The owner or operator of an emission source required to conduct an emission test under subdivision (a) of this section must:

(1) submit a compliance test protocol to the department for approval at least 30 days prior to emission testing. The conditions of the testing and the locations of the sampling devices must be acceptable to the department; and

(2) follow the procedures set forth in Part 202 of this Title and use the following procedures set forth in 40 CFR part 60, appendix A, or any other method acceptable to the department and the administrator for determining compliance with the appropriate $NO_x$ limit in section 227-2.4 of this Subpart:

(i) for large and mid-size boilers, use method 7, 7E, or 19 from 40 CFR part 60, appendix A;

(ii) for simple cycle combustion turbines or regenerative combustion turbines, use method 20 from 40 CFR part 60, appendix A;

(iii) for combined cycle combustion turbines, use method 7, 7E, 19 or 20 from 40 CFR part 60, appendix A;

(iv) for stationary internal combustion engines, use method 7, 7E, or 19 from 40 CFR part 60, appendix A;

(3) submit a compliance test report containing the results of the emission test to the department for approval no later than 60 days after completion of the emission test.

### HISTORICAL NOTE

Sec. filed Jan. 19, 1994; amds. filed: Feb. 3, 1999; Jan. 26, 2000; June 19, 2001; Jan. 12, 2004; June 8, 2010 eff. 30 days after filing. Amended (a), (c).

6 CRR-NY 227-2.6

**End of Document**                                                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.                    5